DEC  6  2018

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

HERBERT H. MULLINEX, JR.,
And PATRICIA E. MULLINEX,

Plaintiffs,

v.                                                                          Action No.  4:18cv33

AIR & LIQUID SYSTEMS CORPORATION,
Successor by merger to BUFFALO PUMPS, INC., et al.,

Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Herbert H. Mullinex, Jr. ("Mr. Mullinex"), and Patricia E. Mullinex ("Mrs. Mullinex")

(collectively "plaintiffs") originally brought this action in the Circuit Court of the City of Newport

News ("the circuit court").  ECF No. 1-1.  Plaintiffs asserted three counts against a variety of

defendants based on the defendants' alleged failure to warn Mr. Mullinex about the hazards of

asbestos exposure during his career as a machinist in the United States Navy and Mr. Mullinex's

subsequent development of malignant mesothelioma.  *Id.* at 4–6, 12–19.

Defendant John Crane, Inc. ("JCI") removed the case to this Court pursuant to 28 U.S.C.

§§ 1442(a)(1) and 1446(b) under the "government contractor defense."  It asserted that it was

acting at the direction of federal officers when it supplied asbestos-containing products to the Navy

according to government specifications.[1]  ECF No. 1 at 5–10.  Specifically, JCI asserted that

---

[1] At the time it removed the case to this Court, JCI was the only defendant remaining in the case, as the plaintiffs had reached settlements with the other named defendants.  ECF No. 1 at 2 n.1; ECF No. 18 at 1–2.

plaintiffs had recently clarified that their claims included the failure to place warnings on the face of asbestos-containing gasket material, and that such claims implicated the federal contractor defense. *Id.* at 3–5.

Plaintiffs filed a motion to remand to state court and a memorandum in support of the same. ECF Nos. 19–20. JCI filed its opposition to the motion to remand, and plaintiffs filed their reply. ECF Nos. 29–30.

An order of reference assigned the motion to the undersigned. ECF No. 33. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby **RECOMMENDED** that plaintiffs' motion to remand be **DENIED**.

## I.  FACTUAL AND PROCEDURAL HISTORY

This case was removed only days before a scheduled trial, having proceeded through two complaints, discovery, and pretrial motions and hearings in the circuit court. The specific allegations and arguments at each stage are described below in detail to determine, among other considerations, whether JCI's conduct and representations in the circuit court waived the federal contractor defense JCI now asserts as the basis for removal and whether removal was untimely because that defense was known to JCI more than 30 days before removal. The core of JCI's removal argument is that plaintiffs did not reveal until shortly before the scheduled trial that their claims included a failure to place warnings on the face of JCI's asbestos-containing products. JCI asserts that such warnings would not have been permitted under JCI's contracts with the Navy, thus giving rise to JCI's federal contractor defense.

2

**A.** **Plaintiffs' initial and amended complaints disclaimed theories of liability arising from acts performed by JCI at the direction of federal officers and did not specifically allege claims based on a failure to place warnings on asbestos products.**

On November 14, 2016, plaintiffs filed their initial complaint in the circuit court against JCI and 11 other defendants. ECF No. 1-1 at 1–3. JCI filed its demurrer, answer, and affirmative defenses on December 7, 2016. ECF No. 1-3.

On February 20, 2017, the circuit court entered an order accepting plaintiffs' amended complaint, in which they corrected misnomers, and added two defendants and two new claims focused solely on one of those new defendants, but did not change their allegations against JCI.[2] ECF No. 1 at 2, n.2; ECF No. 1-4; ECF No. 20-3. The circuit court's order further stated: "Any Defendant who has previously filed an Answer to the original Complain[t] in this matter will be deemed to have adopted that Answer to the Amended Complaint, without being required to file any further pleading; such Defendants are also deemed to deny any new allegations in the Amended Complaint; any such Defendant, however, may file a new Answer if it desires to do so." ECF No. 20-3 at 1. JCI did not file a new answer or affirmative defenses in response to this order, so its December 7, 2016 response to the original complaint (described below) was deemed adopted as its response to the amended complaint.

The complaint alleges that Mr. Mullinex, who served as a machinist in the United States Navy from May 1969 to February 1989, "was exposed to asbestos dust, fibers, and/or particles without controls, warnings, or protection," and was diagnosed with malignant mesothelioma on or about August 10, 2016, as a result of his asbestos exposure. ECF No. 1-4 at 4–5.

---

[2] Because the allegations against JCI were the same in both versions of the complaint, and the amended complaint is the operative pleading, reference and citations are made herein to the amended complaint only unless otherwise noted.

The complaint alleges that the defendants, including JCI, manufactured and distributed asbestos products, including sheet gaskets and packing, that were "defective and inherently dangerous in the manner in which they were marketed for their failure to contain or include adequate warnings regarding potential asbestos health hazards associated with the use, removal or maintenance of, or the exposure to the products." *Id.* at 5. Regarding JCI specifically, the complaint alleges that JCI "manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, asbestos-containing products including, without limitation, asbestos-containing packing materials and asbestos-containing gasket materials." *Id.* at 8.

The complaint includes a provision, sometimes referred to as a "disclaimer" by the parties, which states:

> As more specifically detailed below, these Defendants are only being sued for their failure to warn of the hazards of asbestos exposure, and are not being sued on any other theory, including any design defect *or any theory arising from the Defendant's acts, if any, at the direction of a Federal Officer* and such *other theories are expressly waived.*

*Id.* at 6 (emphases added).

Count I alleges that the defendants were negligent for a variety of reasons, including:

> Defendants knew, had reason to know, or should have known that the Plaintiff would inhale asbestos dust, fibers and/or particles during or as a consequence of the intended, ordinary and foreseeable use of their asbestos-containing products. Despite this knowledge, Defendants, individually, jointly, and severally were negligent pursuant to maritime negligence law in one or more of the following respects:
>
> . . . .
>
> (2). Defendants failed to take reasonable precautions or to exercise reasonable care to adequately or sufficiently warn the Plaintiff, of the dangers and harm to which he was exposed as a consequence of the inhalation of asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

4

(3). Defendants failed and omitted to provide the Plaintiff with the knowledge of reasonably safe and sufficient safeguards, wearing apparel, proper safety equipment and appliances needed to protect him from being injured, disabled, killed, or otherwise harmed by working with, using, handling, coming into contact with, and inhaling the asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(4). Defendants failed to place any warnings or adequate and sufficient warnings *on or inside the containers* of their asbestos-containing products and to suitably apprise the Plaintiff of the risks and dangers inherent to the intended, ordinary and foreseeable use of their asbestos-containing products and the precautions necessary to make their asbestos-containing products safe for their intended, ordinary and foreseeable uses;

(5). Defendants failed to place any warnings or adequate and sufficient warnings *on or inside the packaging* of their asbestos-containing products, *or otherwise*, to inform the Plaintiff or any foreseeable user, of the dangers inherent in the repair and replacement of such asbestos-containing products, which repair and replacement foreseeably required the removal of friable and inherently dangerous asbestos-containing packing and/or insulation materials.

(6). Defendants *failed to place warnings*, or adequate and sufficient warnings *on or inside the containers* of their asbestos-containing products, *or in technical manuals, drawings or specifications supplied with their asbestos-containing products* to inform the Plaintiff of the enhanced risk and dangers inherent in the intended, ordinary and foreseeable use of their asbestos-containing products in the environment of military shipbuilding and/or ship repair where the Defendants knew, should have known and/or had reason to know that many other asbestos-containing products were also being dangerously and simultaneously used without controls of safety procedures.

*Id.* at 14–15 (emphases added).

Count I concludes that the defendants' "negligent and deliberate acts . . . proximately resulted in [Mr. Mullinex's] long-term inhalation of asbestos dust, fibers and/or particles," and this "exposure directly and proximately caused [Mr. Mullinex] to contract malignant mesothelioma." *Id.* at 16.

Count II alleges a claim under traditional maritime strict liability standards for several reasons, including:

> That the Defendants' asbestos-containing products were defective in that they were incapable of being made safe for their intended, ordinary and foreseeable use, and the Defendants failed to give adequate or sufficient warnings or instructions about the risks and dangers inherent in the products.

*Id.* at 17–18.

Count III asserts a claim for "spousal pre-death loss of society and consortium," claiming that "[a]s a proximate result of the Defendant's failure to warn, which was a substantial contributing factor in the development of [Mr. Mullinex's] disease," Mrs. Mullinex was deprived of her husband's society and consortium.[3] *Id.* at 19.

**B.  JCI's responsive pleadings challenged plaintiffs' disclaimer and raised a possible federal contractor defense, if supported by the evidence as it developed.**

JCI's demurrer asserted, among the grounds to dismiss the complaint, that "Plaintiff[s'] attempt to disclaim 'any theory arising from the Defendants' acts, if any, at the direction of a Federal Officer' is invalid. Plaintiffs cannot deprive JCI of its federal defense." ECF No. 1-3 at 2. JCI repeated this assertion in its answer, responding to plaintiffs' claim that JCI was only being sued for its failure to warn by stating: "Plaintiffs' attempt to disclaim 'any theory arising from the Defendant's acts, if any, at the direction of a Federal Officer,' is likewise an invalid attempt to deprive JCI of a federal defense." *Id.* at 5. Finally, JCI asserted as one of its affirmative defenses:

> If it is shown that plaintiff used any product manufactured, sold or supplied by JCI and/or any entity for which JCI may be held responsible, which is specifically denied, and it is shown that such product was supplied to, by or on behalf of the United States government, then JCI raises any immunity from suit or liability conferred upon the United States government and/or JCI which may arise under the circumstances.

*Id.* at 10–11.

---

[3] Counts IV and V are claims against defendant 3M related to its facemasks, and are no longer relevant after the dismissal of 3M. ECF No. 1-4 at 20–26.

JCI also stated that its defenses "were pled based upon the meager allegations" in the complaint, and that it "reserves the right to assert any additional defenses that may be applicable to plaintiffs' claims and/or to withdraw any defenses asserted herein" as more information became available through investigation and discovery. *Id.* at 10 n.1.

### C. The discovery from both parties contained general references to a notice and/or warning on asbestos products.

During the depositions of Mr. Mullinex and seven of his coworkers between May and October 2017, plaintiffs' counsel asked those witnesses questions about warnings on packing and sheet gasket materials.

In his May 10, 2017 deposition, Mr. Mullinex was asked:

> So when you were in the Navy and working as a Machinist's Mate and you saw these numbers for asbestos packing and asbestos gaskets, when you got the material, was there any warning on any of those materials that the material was hazardous or that any safety precautions should be taken when using it?

ECF No. 20-4 at 2.

Mr. Mullinex responded, "Not that I know of," and JCI objected to the form.[4] *Id.*

The depositions of the seven coworkers in October 2017 contained similar exchanges. For example, Allan Kaulback was asked in his October 16, 2017 deposition if there were "ever any warnings on any of those asbestos gaskets on the [vessel] that indicated to you there was any danger or any safety procedures that should be followed?" ECF No. 20-5 at 2. He answered, "No." *Id.* He also answered that he did not see "[o]n any of the asbestos products . . . any warning of any kind whatsoever that suggested that asbestos dust was harmful or could cause [] any illness," and did not see "any warning on any asbestos-containing product . . . that indicated there were any safety procedures" to be followed. *Id.* at 3. *See also* ECF No. 20-6 at 2 (excerpts from Steven

---

[4] Defense counsel also objected as to form during several of the other depositions described below.

Ibosh's October 18, 2017 deposition); ECF No. 20-7 at 2 (excerpts from David Skrbin's October 20, 2017 deposition); ECF No. 20-8 at 2 (excerpt from Randolph Getz's October 23, 2017 deposition); ECF No. 20-9 at 2–3 (excerpts from Dale Wells' October 25, 2017 deposition); ECF No. 20-10 at 2 (excerpts from Russell Metzger's October 27, 2017 deposition); ECF No. 20-11 at 2–3 (excerpts from Dave Rodda's October 30, 2017 deposition).

Plaintiffs' discovery requests also included questions about warnings "with or on any product" sold or supplied by JCI. For example, plaintiffs asked JCI to admit "that the U.S. Navy never expressly rejected, prohibited or forbade you from including any warning with or on any product that you sold or supplied to the U.S. Navy, Department of Defense, or United States Government." ECF No. 20-1 at 5 (request for admission, "RFA," no. 4).

In its December 8, 2017 responses, JCI objected to RFA no. 4 for various reasons, including that the request was "not limited to warnings associated with exposure to asbestos" and was vague and ambiguous. *Id.* Taking its objections into account, JCI responded that "beginning in or about 1983, at the request of the U.S. Navy, written warnings accompanied asbestos-containing products sold or supplied by JCI to the U.S. Navy." *Id.* at 6. JCI stated it was "presently unaware of any other communication between JCI and the U.S. Navy, Department of Defense, or United States Government on the subject matter of this Request" during the relevant time period, "and, accordingly, admits this Request on reasonable information and belief." *Id.* JCI responded similarly to two other requests for admission about whether the Navy "expressly rejected, prohibited or forbade you from including an asbestos-related warning with or on any product" and whether the Navy "altered, revised, or edited any asbestos-related warning, if any, that you provided with or on any product that you sold." *Id.* at 7–9 (RFA nos. 6, 7).

Plaintiffs also asked JCI to admit "that the U.S. Navy never altered, revised, or edited any warning, if any, that you provided with or on any product that you sold or supplied to the U.S. Navy, Department of Defense, or United States Government." *Id.* at 6 (RFA no. 5). JCI objected on various grounds, including that the request was vague and ambiguous, not limited to the relevant time period or "warnings associated with exposure to asbestos," and to the extent it implied a duty on the part of JCI to provide a warning. *Id.* at 6–7. Considering those objections, JCI "admits this Request as it relates to the time period relevant to plaintiffs' claims in this lawsuit." *Id.* at 7.

JCI's discovery requests also included questions about plaintiffs' claims related to warnings on its products. For example, its interrogatory number six asked:

> *If* it is your contention the United States Navy required or permitted warning labels *on compressed asbestos sheet gasket material* at any time before 1980, explain in complete detail the basis for such contention, and identify any and all documents you believe support such contention, any witness with personal knowledge of facts supporting such contention, and/or any expert witness whom you intend to call at trial to offer opinion testimony in support of such contention.

ECF No. 20-12 at 4 (emphasis added).[5]

In their January 10, 2018 response, plaintiffs stated:

> Objection. Plaintiffs object to this interrogatory to the extent that it *seeks irrelevant and immaterial information.* Plaintiffs have only brought failure to warn claims; they have not brought design defect or manufacturing claims. *Plaintiffs' failure to warn claims do not require proof of conformity or nonconformity with Navy commodity or procurement specifications.* Without waiving these objections, Plaintiffs state that John Crane failed to provide any warnings concerning the hazards of asbestos with its asbestos-containing gaskets and packing at any time

---

[5] JCI's Interrogatory number 5 similarly asked if plaintiffs "contend JCI-branded gasket and/or packing failed to conform to Navy standards and specifications in any respect" and the basis for such contention. ECF No. 20-12 at 3–4. Plaintiffs objected for relevance and that their "failure to warn claims do not require proof of conformity or nonconformity with Navy" specifications, but stated that JCI "failed to *provide any warnings* concerning the hazards of asbestos *with* its asbestos-containing gaskets and products," military standards required JCI to provide warnings, and JCI "never included a *warning on its products* during the relevant time period. Accordingly, [JCI's] gaskets and packing failed to conform to these standards and specifications." *Id.* at 4 (emphases added).

prior to 1983. Military standards and specifications in force at the time of Herbert H. Mullinex, Jr.'s exposure required John Crane to provide warnings in accordance with, among others, MIL-STD-129 . . . . However, John Crane never included a *warning on its products* during the relevant time period. Accordingly, John Crane's gaskets and packing failed to conform to these standards and specifications. Discovery is ongoing.

*Id.* at 4–5 (emphases added).

Similarly, JCI's request for production number 54 asked plaintiffs to "[p]roduce any and all documents that you believe support your contentions that JCI-branded gaskets and packing were required to contain[] a warning concerning the health hazards of asbestos and that such products were defective in the absence of a warning." *Id.* at 6. Plaintiffs responded, in part, as follows:

Objection. Plaintiffs object to this request to the extent that it is overly broad and vague. Plaintiffs state that this request is imprecise and is not a complete statement of Plaintiffs' claims for failure to warn against John Crane. Without waiving these objections, Plaintiffs state that this is not a complete statement of their claims for failure to warn against John Crane. John Crane failed not only to include warnings or safety instructions pertaining to asbestos-health hazards *on its products*, but also failed to include warnings or safety instructions relating to asbestos-health hazards on its brochures, catalogs, and packing. John Crane's products were defective because they failed not only to include warnings or safety instructions pertaining to asbestos-health hazards, but also *failed to include warnings* or safety instructions pertaining to asbestos-health hazards *on its brochures, catalogs and packaging* and never provided a warning concerning the health hazards of its products during Plaintiff's work with and around JCI's asbestos gaskets and packing. However, John Crane failed to provide warnings in accordance with the U.S. Government warning and packaging specifications . . . . However, John Crane *never included a warning on its products* during the relevant time period. Accordingly, John Crane's gaskets and packing failed to conform to these standards and specifications.[6]

---

[6] Plaintiffs' response then directed JCI to "[s]ee prior testimony and exhibits" in a series of 14 other cases listed by plaintiffs. ECF No. 20-12 at 6. Plaintiffs argue that "[i]n each case, Plaintiffs contended that John Crane failed to put warnings on its asbestos sheet gasket material," and that each referenced case included jury instructions that an adequate warning "may be on a label, it may be on the packaging, it may be on the product itself, or it may take any such form that, in your judgment, is necessary to adequately warn." ECF No. 20 at 8–9 (quoting ECF No. 20-13 at 1–5). However, the jury instructions exhibit, ECF No. 20-13, does not identify the case associated with each instruction. Plaintiffs' reply brief contains examples of arguments and exhibits in several of these prior trials that refer to warnings on the face of asbestos products. ECF No. 30 at 2–6.

*Id.* (emphases added).

JCI's request for production number 55 also asked about plaintiffs' contentions concerning the warnings: "*If* you contend that the United States Navy required or permitted the use of warning labels *on* compressed asbestos-containing sheet gasket material, produce any and all documents that you believe support such contention." *Id.* at 7 (emphases added). Plaintiffs responded, in part:

> Objection. Plaintiffs object to this request to the extent that it is an incomplete statement of the Plaintiffs' claims and the Plaintiffs' *Complaint speaks for itself.* Plaintiffs state that this request is imprecise and is not a complete statement of Plaintiffs' claims for failure to warn against John Crane. John Crane *failed not only to include warnings* or safety instructions pertaining to asbestos-health hazards *on its products,* but also failed to include warnings or safety instructions pertaining to asbestos-health hazards on its brochures, catalogs and packaging. To the extent that Plaintiffs' claims include that a defective condition of John Crane's products was John Crane's failure to contain or include adequate warnings or safety instructions regarding health hazards associated with the use, removal, or maintenance of, or the exposure to John Crane's asbestos-containing products. John Crane failed to provide any warning concerning any hazards associated with

---

Plaintiffs acknowledge that these arguments "do[] not trigger the removal date in this case," although they contend that this history of litigation put JCI on notice that plaintiffs "would pursue the same litigation here." *Id.* at 5–6. The reference to other cases involving different plaintiffs does not clarify the nature of plaintiffs' claims in this case or inform JCI about the type of warning plaintiffs alleged it failed to provide here.

Although the Court appreciates that there is a lengthy history between counsel in this case, allegations and experience in prior, unrelated cases do not suffice to clarify claims for removal purposes in this case. *See, e.g., Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 851 (S.D.W. Va. 2008) (denying a motion to remand one of two sets of parallel, related cases based on the allegations supporting a government contractor defense in the other case, and noting that "neither party has presented any authority stating that a 'paper' received in one litigation can serve notice of grounds for removal in a separate litigation"); *see also Allison v. Brown*, 801 S.E.2d 761, 766 (Va. 2017) (concluding that the court erred in instructing the jury on a battery theory when the plaintiff's complaint only alleged negligence, notwithstanding the defendant's actual notice of the battery claim, because "[t]he fact that a theory was mentioned over the telephone, whispered in the hallways of the courthouse, or even presented in a prior trial does not satisfy the bedrock requirement that a defendant must be notified in a complaint regarding what claim is being made against him").

asbestos-containing gaskets or packing at any time relevant to Mr. Mullinex's exposure. . . . .

John Crane failed to provide warnings in accordance with the U.S. Government warning and packaging specifications . . . . However, John Crane *never included a warning on its products* during the relevant time period. Accordingly, John Crane's gaskets and packing failed to conform to these standards and specifications.

*Id.* at 7 (emphases added).

**D.    JCI did not oppose plaintiffs' motion *in limine* to strike the government contractor defense.**

On February 6, 2018, plaintiffs filed a motion *in limine* in the circuit court "to strike defendant's government contractor defense."[7]   ECF No. 20-14 at 1.  Plaintiffs explained their

---

[7] On the same date, JCI filed a motion *in limine* to exclude certain opinion testimony by plaintiffs' industrial hygienist, Terry M. Spear, Ph.D. ("Dr. Spear").   ECF No. 30-8.   During Dr. Spear's January 8, 2018 deposition, JCI's counsel asked him: "If it's your opinion that [MIL-STD-129] stands for the proposition that product manufacturers were required to provide warnings to the Navy, does that document require warning labels to be placed on the product itself?" ECF No. 30-7 at 4.  Dr. Spear responded: "I believe it does, yes.  It talks about method and size of markings, interior package marking and . . . special markings on containers or unboxed supplies and equipment, location of markings on interior packages, unpackaged.  So I'm assuming that it's referring to the way the products were received."  *Id.*  Dr. Spear's lengthy expert disclosure included the statement that "[i]t has been admitted by [JCI's] representative that [JCI] could have put warnings of whatever number, size and content it chose, anywhere it wanted on its 4 foot by 4 foot asbestos sheet gasket material." ECF No. 30-6 at 40.

JCI's motion *in limine* then sought to exclude, among Dr. Spear's opinions, "any opinions regarding the necessity of a warning, the content and placement of a warning on JCI's product, or the probable effect of a warning on end users like Mr. Mullinex." ECF No. 30-8 at 2.  After challenging other bases for Dr. Spear's opinions, JCI argued that he "lacks the expertise to render opinion testimony regarding the necessity or content or placement of a product warning here," and that:

In spite of his lack of expertise or consideration of contemporaneous standards . . . Dr. Spear goes on to offer the *ipse dixit* opinion JCI's products sold to the Navy should have been labeled (on the product itself) with an appropriate signal word –

12

reason for filing the motion: "Defendants have identified a number of exhibits that *appear to be* geared toward proving a government contractor defense. Accordingly, the Plaintiff moves this Court in accordance with its objections to Defendants' Exhibit List to prohibit the introduction and/or use of these exhibits for purposes of proving the government contractor defense." *Id.* at 1 n.1 (emphasis added). Plaintiffs argued that "Virginia and Maritime courts . . . have rejected the government contractor defense as an affirmative defense in 'thousands of asbestos cases,'" that "[t]here were no government specifications that prohibited asbestos manufacturers or suppliers from placing warning labels on their asbestos products," and that JCI could not satisfy the elements to apply the government contractor defense. *Id.* at 2–3, 12–18.

On February 20, 2018, JCI filed its response to several of plaintiffs' pretrial motions, and stated that it "is not responding" to the motion *in limine* to strike the government contractor defense, "as JCI does not intend to raise the defense addressed therein in this case, but expressly reserves the right to do so in any future case." ECF No. 20-15 at 1. JCI further noted that it "disagrees with plaintiffs' motion, which is based on a misrepresentation of the applicable law and evidence in this case." *Id.*

At the March 13, 2018 pretrial hearing in the circuit court, JCI reiterated that it was not advancing the government contractor defense:

---

"DANGER," according to Dr. Spear – a description of the potential health consequences, including cancer; and [] a precautionary statement about how to avoid exposure ("avoid breathing dust").

*Id.* at 12–13.

Thus, although Dr. Spear's opinions appeared to include a failure to place a warning on the face of JCI's products, his deposition testimony about that opinion based on MIL-STD-129 was unclear, and his possible opinion on that subject does not resolve the other sources of uncertainty regarding plaintiffs' claims discussed herein.

JCI's Counsel: Your Honor, just as a housekeeping matter, a procedural matter, we're not challenging the sophisticated user issue – that is to say we're not advancing that argument – *nor the government contractor defense provided our understanding of the facts* as they've borne out in this case, which is Mr. Mullinex really isn't claiming any exposure after '78 when he got the training, when he started wearing the mask and the suit. . . . . If I'm wrong about that, let me know, but that was my sense from the facts . . . .

. . . .

Plaintiffs' counsel: Your Honor, on the next one I believe [JCI's counsel] said that they weren't opposing the government contractor motion.

JCI's counsel: No. That was our representation. Thank you, [plaintiffs' counsel].

ECF No. 20-2 at 2, 8 (53:7–17, 59:3–7) (emphasis added).

## E.     Plaintiffs' proposed jury instructions referenced warnings on the products.

On March 21, 2018, JCI received plaintiffs' proposed jury instructions. ECF No. 29 at 5 n.4; ECF No. 29-12 at 2. Instruction 10 regarding the failure to warn stated:

An adequate warning is a warning that is reasonably calculated to reach all persons for whom unreasonable danger exists from the intended or reasonably foreseeable use of the product. Such warning must be commensurate with all the risks, and it must be such that a reasonable person can understand the risk, understand the precautions necessary to avoid the risk, and also understand the consequences of failing to follow the warning. Such a warning may be on a label, it may be on the packaging, it *may be on the product itself*, or it may take any such form that is necessary to adequately warn.

ECF No. 29-12 at 2 (emphasis added).

## F.     Plaintiffs clarified their negligence claims to include warnings on the products during a pretrial hearing.

On March 22, 2018, the circuit court held a pretrial hearing. ECF No. 29-11. In a discussion about objections to the deposition testimony of Mr. Mullinex's coworkers, JCI raised an issue "with regards to warnings on the gasket material and packing material itself." *Id.* at 6 (31:20–22). JCI argued that plaintiffs' complaint "[n]oticeably" did not include "any claim for failing to put a warning on the face of the gasket material itself." *Id.* (32:18–20). It further asserted

that the "military specification itself does not allow for a warning to be put on the face of the gasket material itself," and that plaintiffs could not pursue a theory they had not pled. *Id.* at 6–7 (32:21–34:6). JCI stated:

> Your Honor, if it is plaintiffs' intention to now say, "Notwithstanding the fact that in our complaint we disclaimed any theory that falls under the federal officer defense, we are now going to assert against you a claim for negligence in failing to put a warning on the face of the product," it is very likely that John Crane will remove this case. But if it is going to stay in state court, and if that is the theory that they intend to pursue, then this complaint needs to be amended so that John Crane can pursue that defense. John Crane has a right to be put on notice of this claim.
>
> . . . .
>
> Any evidence of this type needs to be stricken to simply talking about warnings on the face of the gasket material, and any evidence that talks about warnings generally on asbestos products is why in the jury instructions we've submitted we've included a limiting instruction. This jury needs to understand that there is not going to be any claim for failure to put a warning on the face of the gasket material.[8]

*Id.* at 7 (34:7–18, 35:22–36:4).

Plaintiffs responded that JCI had not raised this issue with the complaint before in other cases, even though plaintiffs' counsel had used the same complaint since 2004, and that the allegations in the complaint were "broad enough to encompass warnings on the products." *Id.* at 7–8 (36:12–38:23). They argued that the military specifications were "very broad" and the Navy "wanted manufacturers to include warnings on their products, on their packaging or any other way that they could get the warning to the ultimate consumer." *Id.* at 8 (41:15–18). They claimed that JCI could not assert the government contractor defense because it did not comply with government

---

[8] JCI's counsel alluded to an earlier discussion with plaintiffs' counsel about this issue in the course of his argument, stating: "So if that's where we're going, if that's the claim [for negligence for failing to put a warning on the face of the product], and that's what [plaintiffs' counsel] told me that on the phone two days ago when we talked about this, there's a very good chance we remove this case." ECF No. 29-11 at 7 (35:17–20). The context and content of that telephone call are unclear from the materials provided.

requirements in the form of military specifications or federal law, and because JCI's discovery responses admitted that there was no difference between the product it sold to the Navy and the product it sold commercially. *Id.* at 9 (42:23–44:7).

JCI advised that it would remove the case if the circuit court did not limit the claim for failing to put a warning on the face of the products, because that claim was not pled. *Id.* at 10 (47:6–9). The circuit court then denied JCI's motion. *Id.* (47:15–18).

## G.    JCI removes the case from the circuit court based on the federal contractor defense.

On March 23, 2018, the Friday before the scheduled start of trial on Monday, March 26, JCI removed the case to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.[9] ECF No. 1. JCI claimed removal was proper under those statutes because plaintiffs had newly asserted a liability theory based on failure to place warnings on JCI's products, and the federal officer defense applied to that theory because JCI complied with reasonably precise government specifications about the branding on its products. *Id.* at 1, 3–5. JCI argued that plaintiffs' complaint asserted strict liability and negligence claims based on defendants' failure to warn, and alleged that defendants "'failed to place any warnings or adequate and sufficient warnings *on or inside the*

---

[9] 28 U.S.C. § 1442(a)(1) provides:

> A civil action or criminal prosecution that is commenced in a State court and that is *against or directed to any of the following may be removed* by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States *or any agency thereof or any officer (or any person acting under that officer)* of the United States or of any agency thereof, in an official or individual capacity, *for or relating to any act under color of such office* or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphases added).

packaging,' or 'on or inside the containers' of their asbestos-containing products," and excluded "any allegation of failing to warn on the face of the product." *Id.* at 3 (emphases added by JCI).

JCI claimed that at the March 22, 2018 hearing – the day before JCI filed the removal – plaintiffs "announced on the record for the first time their intent to abandon their disclaimer and pursue a theory of recovery based on JCI's failure to place a warning on the face of its products." *Id.* at 3–4. In response to this allegedly new theory, JCI asserted that its asbestos-containing sheet gasket material sold to the Navy had to conform to military specifications about "the composition, appearance and technical performance requirements of the product." *Id.* at 4. Specifically, JCI claimed that, from 1969 to 1973, Military Specification MIL-A-17472B (the "Mil-Spec") governed its products and did not permit any writings or "warnings of any kind" other than the information listed in Paragraph 3.11, "Branding." *Id.* Paragraph 3.11 stated: "'Each square foot of the asbestos sheet shall be plainly marked with the manufacturer's name, brand identification, and symbol 2150.'" *Id.* JCI asserted that the Mil-Spec was replaced in 1974 by Federal Specification HH-P-46, which similarly "did not authorize warnings language." *Id.*

JCI argued that its removal was timely made under 28 U.S.C. § 1446(b)(3) within 30 days of plaintiffs "asserting a claim for which JCI is entitled to assert the federal officer defense," because prior to the March 22, 2018 hearing, "none of Plaintiffs' pleadings, motions, or other papers asserted this legal theory."[10] *Id.* at 5. It alleged that removal was proper under 28 U.S.C. § 1442(a)(1), because: (1) JCI is a "person" under that statute; (2) JCI performed the "complained

_____

[10] Generally, 28 U.S.C. § 1446(b)(1) requires that a defendant file a notice of removal within 30 days after receipt of the initial pleading, but 28 U.S.C. § 1446(b)(3) provides: "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

of action" – the supply of sheet gasket material – at the direction of a federal officer and "under color of federal office" pursuant to the design and labeling specifications in military procurement contracts; (3) there is a causal nexus between JCI's actions supplying the gasket products and the alleged injuries, because Mr. Mullinex alleges that his "mesothelioma was caused by JCI's alleged failure to warn"; and (4) JCI asserts a "colorable federal defense." *Id.* at 5–8.

JCI claimed that it met the requirements for the colorable federal contractor defense because: (1) it "designed, manufactured, and supplied the product at issue . . . according to 'reasonably precise specifications'" promulgated by the government; (2) the "equipment, markings, and manuals conformed with those specifications," because JCI complied with the specifications, including those for branding on the face of the materials; and (3) "at all relevant times, the United States Government had as much knowledge of the potential hazard as the defendant." *Id.* at 8–9. JCI further asserted that it was "entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 40 (1940)," which it claims "established that a government contractor acting at the direction and authorization of a government officer is immune from suit based on performance of the government contract." *Id.* at 10.

## II.   ANALYSIS

### A.   The parties' arguments concerning remand

Plaintiffs advance five reasons why removal was improper and the case should be remanded, all of which involve procedural or substantive flaws in JCI's federal contractor defense. First, plaintiffs contend that JCI's responses to their requests for admissions "admitted away" the government contractor defense when JCI admitted that the Navy "'never expressly rejected,

prohibited or forbade you from including any warning with or on any product.'" ECF No. 20 at 2, 7.

Second, they assert that JCI affirmatively waived the government contractor defense by failing to oppose plaintiffs' motion to strike that defense and stating that it was not pursuing that defense at a hearing only 10 days prior to removal. *Id.* at 2, 9–10, 13–14.

Third, they claim that JCI "waived its right to remove this case by engaging in substantial, ongoing defensive and offensive action in the state court." *Id.* at 2, 16–17.

Fourth, plaintiffs argue that JCI failed to timely file a notice of removal within 30 days of service of both the original and amended complaints, even though it asserted the government contractor defense as an affirmative defense at that time. *Id.* at 2–3, 15. JCI also failed to remove within 30 days of several other events which made it aware of that defense, including: the deposition of Mr. Mullinex in May 2017; the depositions of seven of his coworkers in October 2017, during which they were asked about warnings on the asbestos sheet material; Dr. Spear's expert disclosure and deposition and JCI's motion *in limine* regarding his opinions about warnings on the face of products; and plaintiffs' response in January 2018 to JCI's discovery request confirming that plaintiffs contended the Navy required warning labels on compressed asbestos gasket sheet material. *Id.* at 2–3, 6–8, 15–16; ECF No. 30 at 6–8.

Finally, plaintiffs assert that JCI cannot utilize the federal contractor defense. They claim that the Federal Hazardous Substances Act ("FHSA"), as incorporated into the Department of Defense's ("DOD") MIL-STD-129, "required warnings to be put 'directly upon the article involved,'" and the "branding" paragraph of the gasket sheet specification only stated a minimum marking requirement and "did not preclude warnings on the sheet gasket material itself." ECF No.

20 at 3, 20–27. Thus, JCI cannot prove a causal nexus between its failure to warn and any significant federal interest. *Id.* at 29–30.

In response, JCI argues that it has a "colorable government contractor defense under 28 U.S.C. § 1442(a)(1) to plaintiffs' new theory of recovery," and removal was timely "in light of the gamesmanship employed to obfuscate the true nature of plaintiffs' claim." ECF No. 29 at 1. It asserts that plaintiffs specifically limited the claims in their complaint, "expressly disclaim[ed] and waive[d] 'any other theory, including any design defect theory or any theory arising from the Defendant's acts, if any, at the direction of a Federal Officer.'" *Id.* at 2 (quoting ECF No. 1-1 at 6, Compl. ¶ 10). It claims that, "to avoid implicating the Federal Officer defense, plaintiffs allege with particularity" various places where a warning should have appeared, but "[c]onspicuously" omit an allegation based on the lack of a warning on the face of the material. *Id.* at 2–3. It contends that plaintiffs' responses to discovery "doubled down on the disclaimer," as they classified as irrelevant requests asking if plaintiffs contend that the government required or permitted warning labels on the sheet gasket material and the basis for that contention, and that the discovery responses, read in context, refer to warnings on packaging rather than the product itself. *Id.* at 3–5.

JCI argues that plaintiffs do not dispute two of three factors for the government contractor defense: that the government and the Navy approved reasonably precise specifications regarding the gasket products, and that the Navy had knowledge regarding asbestos health hazards. *Id.* at 9–10. Regarding the third factor and whether the product conformed to government regulations, JCI contends that the evidence it presented establishes that it was "not permitted to place asbestos warnings on the face of sheet gasket material it supplied to the Navy." *Id.* at 10–19. JCI further asserts that removal was timely, "particularly given the gamesmanship in which opposing counsel

engaged regarding the true nature of the claim in this case," and it did not waive its right to remove based on its actions in the circuit court, because it "could not waive a defense to a claim the plaintiffs did not allege." *Id.* at 20, 24.

**B.      The standard for a motion to remand based on the federal contractor defense**

Under 28 U.S.C. § 1442, Article III subject matter jurisdiction must be demonstrated through proof of a colorable federal defense, and the removing party bears the burden of establishing this subject matter jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010) ("The burden of persuasion for establishing . . . jurisdiction, of course, remains on the party asserting it.").

The statute governing removal based on the federal contractor defense, 28 U.S.C. § 1442(a)(1), provides:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, *for or relating to any act under color of such office* or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphases added).

Over the course of more than a century applying this statute and its predecessors, the Supreme Court of the United States has "not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 124, 129 (1989) (affirming a Ninth Circuit decision to remand criminal cases against postal workers to state court, because "'federal postal workers may not remove state criminal

prosecutions to federal court when they raise no colorable claim of federal immunity or other federal defense.'"). This statute is not an independent source of Article III jurisdiction, but it allows removal based on a federal defense that would ordinarily not support removal:

> Section 1442(a), in our view, is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant. Section 1442(a), therefore, cannot independently support Art. III "arising under" jurisdiction. Rather, it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes. The removal statute itself merely serves to overcome the "well-pleaded complaint" rule which would otherwise preclude removal even if a federal defense were alleged.

*Id.* at 136.

> Accordingly, the federal officer removal statute

> allows a defendant to remove a case from state to federal court if the defendant establishes (1) it is a federal officer or a "person acting under that officer," 28 U.S.C. § 1442(a)(1); (2) a "colorable federal defense"; and (3) the suit is "for a[n] act under color of office," which requires a causal nexus "between the charged conduct and asserted official authority."

*Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209–10 (4th Cir. 2016) (quoting *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999)).

Before turning to the merits of the removal based on the federal contractor defense, the Court first addresses potential procedural hurdles asserted by plaintiffs arising from JCI's purported waiver of this defense and the timeliness of removal.

## C.    JCI did not expressly waive its federal contractor defense through its responses to requests for admission or by not opposing the motion *in limine*.

Plaintiffs' argue that JCI's responses to requests for admission were judicial admissions that foreclose the federal contractor defense, and that JCI waived the government contractor defense by failing to oppose plaintiffs' motion to strike that defense.

A judicial admission includes both "affirmative statements that a fact exists" and "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004). "'Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. A statement made by counsel during the course of trial may be considered a judicial admission *if it was made intentionally as a waiver, releasing the opponent from proof of fact.*'" *Id.* at 265 (quoting *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477 (5th Cir. 2001)).

Regarding the responses to RFAs, as described above, JCI did not make unqualified admissions that the Navy "never expressly rejected, prohibited or forbade you from including an asbestos-related warning with or on any product." ECF No. 20-1 at 7 (RFA No. 6). Instead, JCI objected to plaintiffs' requests for admission regarding warnings "with or on" JCI's products sold to the Navy (RFAs nos. 4, 5, 6, and 7) on various grounds, including that the phrase "rejected, prohibited or forbade" was "overly broad, vague and ambiguous in that it fails to identify the information requested with reasonable particularity." *Id.* at 5–8. JCI also objected to the requests as "overly broad, vague and ambiguous" to the extent that they were "not limited to the time period relevant to the plaintiffs' claims." *Id.* After making these objections, JCI responded to, for example, RFA no. 6 as follows:

> As phrased and taking into consideration the foregoing objections, JCI responds that, beginning in or about 1983, at the request of the U.S. Navy, written warnings accompanied asbestos-containing products sold or supplied by JCI. JCI otherwise states that as it is presently unaware of any communication between JCI and the U.S. Navy, Department of Defense, or United States Government on the subject matter of this Request during the time period relevant to plaintiffs' claims in this lawsuit, and, accordingly, admits this Request on reasonable information and belief. By way of further response, JCI denies that its asbestos-containing gaskets and packing presented a health hazard to end-users during the normal and reasonably foreseeable use of these products.

ECF No. 20-1 at 8.

In light of these objections and qualifications, JCI's responses to the requests for admission are not affirmative, intentional and unambiguous statements about facts that constitute judicial admissions. The responses to the requests for admission did not waive the factual basis for JCI's federal contractor defense.[11]

Regarding the alleged waiver through failure to oppose plaintiffs' motion to strike the government contractor defense, as explained further below regarding the timeliness of removal, plaintiffs expressly disclaimed that their allegations implicated that defense in their complaint, and their discovery requests and responses did not clearly change that position. Thus, when plaintiffs preemptively filed their motion to strike the government contractor defense because JCI's exhibits "appear[ed] to be geared toward proving a government contractor defense," there was no need for JCI to oppose their motion, because plaintiffs had already expressly removed such a defense from the scope of their allegations. JCI's written notice that it did not oppose the motion to strike and its counsel's statement at the March 13, 2018 hearing that it did not intend to assert the government contractor defense are consistent with the understanding that plaintiffs had already removed this issue from trial through their complaint.

Indeed, JCI's counsel stated at the March 13, 2018 hearing that JCI did not intend to assert the government contractor defense.[12] This statement made clear that JCI understood that plaintiffs'

---

[11] In addition, JCI's expert affidavits contain conclusions that would be at odds with a reading of its responses to the RFAs that foreclose the federal contractor defense. Even if, for example, there was no discussion of the Navy expressly rejecting a proposed asbestos warning label, Admiral Sargent's affidavit asserts that the Navy would not accept materials printed with additional information not required by the applicable military specifications. ECF No. 29-16 at 24.

[12] JCI's counsel qualified that it held this position "provided our understanding of the facts as they've borne out in this case, which is Mr. Mullinex really isn't claiming any exposure after '78

24

allegations did not include facts that would support the government contractor defense. Plaintiffs, of course, were bound by their pleadings before the circuit court and their express disclaimer of claims that would implicate the government contractor defense. *See, e.g., Allison v. Brown*, 801 S.E.2d 761, 766–67 (Va. 2017) (noting that "[n]o court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed," because "[p]leadings are as essential as proof," and "[e]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence") (citation and quotation marks omitted). Thus, JCI could not waive a defense or legal conclusion that plaintiffs had already removed from the scope of the case.

Accordingly, neither statements by JCI's counsel at the March 13, 2018 hearing, nor JCI's decision not to oppose plaintiffs' motion to strike, waived its ability to assert the federal contractor defense once plaintiffs later made clear that such a defense was implicated by their claims.

**D.**     **JCI did not waive its right to remove by participating in the circuit court.**

Plaintiffs argue that JCI waived its ability to remove this case through its participation in the circuit court proceedings. The Fourth Circuit has described such a "participation waiver" as follows:

> After a case becomes removable, a party may waive its right to removal by demonstrating a clear and unequivocal intent to remain in state court. A defendant demonstrates this intent by engaging in substantial defensive action in state court before filing a notice of removal. However, a finding of waiver is appropriate only in extreme situations, when judicial economy, fairness, and comity demand it.

---

when he got the training, when he started wearing the mask and the suit." ECF No. 20-2 at 2 (53:11–15).

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017) (citations and quotation marks omitted).

In *Northrop Grumman*, a case involving the federal officer removal statute, the Fourth Circuit first concluded that Northrup Grumman's basis of removal was known months before it removed the case, so removal was untimely under the 30-day standard of 28 U.S.C. § 1446(b)(3). *Id.* at 186–88. The court next noted that Northrup Grumman "sought multiple, substantive rulings from the state court on DynCorp's counterclaims before filing the notice of removal," and that "[b]y actively engaging in defensive litigation in the state court for seven months before filing its removal notice, Northrop Grumman's conduct further showed a clear and unequivocal intent to remain in state court until that forum no longer served its purposes." *Id.* at 188 (citation and quotation marks omitted). The court concluded: "Under these circumstances, considerations of judicial economy, fairness, and comity strongly support a conclusion that Northrop Grumman repeatedly sought to use the state court proceedings to its advantage, and thereby waived its right to removal." *Id.*

Here, however, as described below, the grounds for removal were not sufficiently established until days before JCI removed the case to this Court. Unlike Northrup Grumman, JCI did not litigate in the circuit court for months after the grounds for removal were established. Nor is this case like *Albuquerque v. Soto Enters., Inc.*, relied upon by plaintiffs, because the court of appeals in that case expressly limited its analysis to whether filing a motion to dismiss in state court shortly before removal constituted a waiver, and plaintiffs do not assert that JCI filed a motion to dismiss here. 864 F.3d 1089, 1098–99 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 983 (2018).

Thus, JCI's participation in the circuit court before the grounds for removal were established did not waive its right to remove this case thereafter.

**E.    JCI's removal was timely.**

Under 28 U.S.C. § 1446(b)(1), a defendant generally must file a notice of removal within 30 days after receipt of the initial pleading.  However, the defendant can remove a case that later becomes removable:

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may *first be ascertained* that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3) (emphasis added).

The phrase "motion, order or other paper" has been interpreted "broadly to include any information received by the defendant, whether communicated in a formal or informal manner."[13]

---

[13] Neither party has presented any argument concerning whether the statements at the pretrial hearing constitute "other paper" for purposes of 28 U.S.C. § 1446(b)(3).  Nonetheless, the Court notes that plaintiffs' counsel's statements that plaintiffs' claims included a failure to provide a warning on the face of the products themselves would fall within the narrow exception for oral representations to qualify as "other paper" when made on the record during state court proceedings. *See, e.g.,* 14C Charles Alan Wright, et al., Fed. Prac. & Proc. Juris. § 3731 (4th ed. 2018) ("Courts ordinarily hold that oral statements do not trigger removability because those statements do not qualify as an 'other paper.'  A limited exception to this principle is that a renewed period of removability can be triggered by oral statements made in the courtroom during the course of the action."); *Estate of Davis v. DeKalb Cty.,* 952 F. Supp. 2d 1369, 1373 (N.D. Ga. 2013) (determining that removal was untimely based on when the defendants became aware of 42 U.S.C. § 1983 claims during oral arguments before the state court).

However, the Court need not decide whether these statements at the hearing alone are sufficient to trigger the 30-day removal deadline.  Proposed jury instruction number 10, exchanged only a day before the March 22, 2018 hearing, included a claim for a failure to warn on the face of the products.  ECF No. 29-12 at 2.  Considering that instruction as an "other paper," JCI's removal is timely. *See* 139 A.L.R. Fed. 331 § 19(A) (Originally published in 1997) ("'Other paper' that can signify the newfound removability of a case and initiate the 30–day removal period, pursuant to [the] removal statute, includes letters from opposing counsel, correspondence between parties, affidavits, proposed jury instructions, answers to interrogatories, motions for summary judgment,

*Northrop Grumman*, 865 F.3d at 186–87 (citation and quotation marks omitted). "The purpose of this [other paper] requirement is to ensure that a defendant receives adequate notice that a case is removable before being subject to the 30-day deadline to file its removal notice." *Id.* at 187.

The critical factor for the timeliness of removal is when a defendant ascertains that the case is removable. As the Fourth Circuit concluded:

> only where an initial pleading reveals a ground for removal will the defendant be bound to file a notice of removal within 30 days. Where, however, such details are obscured or omitted, or indeed misstated, that circumstance makes the case "*stated* by the initial pleading" not removable, and the defendant will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal.

*Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) (concluding that removal based on diversity was timely 88 days after service of the complaint, because plaintiff's citizenship could not be determined from the complaint, and removal was accomplished 28 days after receipt of a police report revealing plaintiff's citizenship).

In explaining its interpretation of 28 U.S.C. § 1446(b)(3), the Fourth Circuit noted that the statute "expressly encompasses the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers, revealing the grounds for removal for the first time." *Id.* at 162. Thus, a defendant could still remove a case when the defendant's "discovery of the grounds of federal jurisdiction is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint." *Id.* The court recognized that "the extension of the removal period in the case where the initial pleading does not state the factual or legal bases for removal should not be allowed to cover strategic delay interposed by a defendant in an effort to determine the state court's receptivity to

---

and documents produced in discovery.") (citing *Parker v. County of Oxford*, 224 F. Supp. 2d 292 (D. Me. 2002)).

his litigating position." *Id.* at 163.  Nonetheless, it concluded that an objective analysis of the

papers exchanged between the parties was proper to determine when a defendant ascertained that

a case was or had become removable.  The court stated:

> we will *not require courts to inquire into the subjective knowledge of the defendant*,
> an inquiry that could degenerate into a mini-trial regarding who knew what and
> when. Rather, we will allow the court to rely on the face of the initial pleading and
> on the documents exchanged in the case by the parties to determine when the
> defendant had notice of the grounds for removal, *requiring that those grounds be
> apparent within the four corners of the initial pleading or subsequent paper*.

*Id.* at 162 (emphases added).

> In other words,

> it is settled that the thirty-day removal period is not triggered at the instant the case
> becomes removable, or even when the defendant has enough evidence to surmise
> that the case might have become removable; rather, an amended pleading, motion,
> order, or other paper must be "'unequivocally clear and certain' to start the [thirty-
> day] time limit running for a notice of removal under the second paragraph of
> section 1446(b)." . . . . The purpose of this rule is to promote judicial economy by
> reducing "'protective removals' by defendants faced with an equivocal record."

*US Airways, Inc. v. PMA Capital Ins. Co.*, 340 F. Supp. 2d 699, 703–04 (E.D. Va. 2004) (quoting

*Bosky v. Kroger Tex., LP,* 288 F.3d 208, 211 (5th Cir. 2002)).

Courts have applied this or similar standards in federal contractor defense cases to conclude

that removal was timely based on a later pleading or other paper that clarified a connection between

the plaintiff's claims and the federal contractor defense, such as revealing a connection to a

particular product or job that implicated the federal contractor defense.

For example, in a multidistrict litigation asbestos case, the court concluded that removal

was timely when it occurred within 30 days of plaintiff's interrogatory answers that revealed a

"nexus" between the removing defendant's products and the federal contractor defense.  *In re

Asbestos Prod. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 740 (E.D. Pa. 2011).  The complaint in

that case simply alleged where and when the plaintiff worked and various potential sources of

asbestos exposure, which the court observed "could arguably implicate Defendant's turbines," although "there is no mention of turbines, specifically, and nothing in the Complaint connects Defendant's product to the Long Beach Naval Shipyard worksite." *Id.* The court concluded:

> Simply stating that Decedent was employed at the Long Beach Naval Shipyard is insufficient. Defendant *did not have a basis for removal until the nexus between Plaintiffs' claims and actions allegedly taken by Defendant under the direction of a federal officer was established.* This nexus was not revealed until Plaintiffs' Answers to Special Interrogatories stated that, "Plaintiffs contend that [Defendant] sold, supplied, marketed, and distributed asbestos containing products to which Decedent was exposed while in the U.S. Navy . . . including: . . . Marine Steam Turbines." . . . Therefore, Defendant's notice of removal was timely, as it was filed thirty days after Defendant received Plaintiffs' Answers to Special Interrogatories.

*Id.* (emphasis added).

In so ruling, the court rejected the plaintiff's attempted waiver of any claims "caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity." *Id.* at 740. Such a waiver was ineffective to prevent removal because the "only claims alleged against Defendant arise[] from exposure on U.S. Naval ships at U.S. Naval shipyards, for which Defendant has a 'colorable' federal defense," and giving effect to the disclaimer "would deprive the federal officer of the right to have the adequacy of the threshold determination, whether there is federal subject matter jurisdiction under the federal officer removal statute, made by a federal court." *Id.* at 742–43. The court also noted an important distinction between removal generally and removal on the basis of the federal contractor defense: "the presumption under the general removal statute favors remand, due to the limited jurisdiction of federal courts, while the presumption under the federal officer removal statute favors removal, for the benefit of the federal officer involved [in] the case." *Id.* at 741.

Here, plaintiffs attempted to disclaim in their complaint any claims that would implicate the federal contractor defense, stating:

> As more specifically detailed below, these Defendants are only being sued for their failure to warn of the hazards of asbestos exposure, and are not being sued on any other theory, including any design defect *or any theory arising from the Defendant's acts, if any, at the direction of a Federal Officer* and such *other theories are expressly waived.*

ECF No. 1-4 at 6.

Among the various allegations "specifically detailed below" in the complaint, there was no allegation that defendants, including JCI, failed to include a warning on their asbestos-containing products. The complaint "could arguably implicate" such a warning, but the fact that a warning on the products themselves was not listed among the numerous specific alleged failures to warn weighs against such a reading of the complaint. Thus, even if the disclaimer was ineffective to block JCI's ability to remove the case, it created uncertainty about the nature of plaintiffs' claims.

JCI attempted to address this ambiguity in its affirmative defenses, which it stated "were pled based upon the meager allegations" in the complaint, and upon a reservation of "the right to assert any additional defenses that may be applicable to plaintiffs' claims and/or to withdraw any defenses asserted herein" as more information became available through investigation and discovery. In connection with this caveat, JCI asserted that "[i]f it is shown that plaintiff used any product manufactured, sold or supplied by JCI . . . and it is shown that such product was supplied to, by or on behalf of the United States government, then JCI raises any immunity from suit or liability conferred upon the United States government and/or JCI which may arise under the circumstances."

Later discovery requests and responses also did not clarify whether plaintiffs' claims implicated a failure to warn on the products themselves. There were certainly questions and

responses that referenced "warnings on the products," but in context, these questions and responses did not make the grounds for removal "apparent within the four corners of the initial pleading or subsequent paper," *Lovern*, 121 F.3d at 162, or "unequivocally clear and certain." *US Airways, Inc.*, 340 F. Supp. 2d at 703–04 (citation and quotation marks omitted).

For example, JCI's interrogatory number six asked: "*If* it is your contention the United States Navy required or permitted warning labels *on compressed asbestos sheet gasket material* at any time before 1980, explain in complete detail the basis for such contention . . . ." ECF No. 20-12 at 4 (emphasis added). In response to this direct question about warnings on JCI's products, plaintiffs stated, in relevant part:

> Objection. Plaintiffs object to this interrogatory to the extent that it *seeks irrelevant and immaterial information*. Plaintiffs have only brought failure to warn claims; they have not brought design defect or manufacturing claims. Plaintiffs' failure to warn claims do not require proof of conformity or nonconformity with Navy commodity or procurement specifications. Without waiving these objections, Plaintiffs state that John Crane *failed to provide any warnings* concerning the hazards of asbestos *with* its asbestos-containing gaskets and packing at any time prior to 1983. Military standards and specifications in force at the time of [Mr. Mullinex's] exposure required John Crane to provide warnings in accordance with, among others, MIL-STD-129 . . . However, John Crane never included a warning *on* its products during the relevant time period.

*Id.* at 4–5 (emphases added).

As shown by this example, plaintiffs' responses to JCI's discovery vacillated between different theories of how JCI failed to place warnings, whether on or with its products. Plaintiffs' responses may have caused greater confusion regarding JCI's alleged failure to warn, because they first claimed that warnings did not require proof of conformity with military specifications, and then asserted that JCI failed to provide warnings required by military specifications.

Similarly, based on the excerpts of Dr. Spear's January 8, 2018 deposition, JCI attempted to use the discovery process to determine the nature of plaintiffs' claims and the basis for any

contention that JCI was required or permitted to place warnings on the face of its products. For

example, JCI asked Dr. Spear if MIL-STD-129 "require[d] warning labels to be placed on the

product itself," and he responded that it "talks about method and size of markings, interior package

marking . . . markings on containers or unboxed supplies . . . So I'm assuming that it's referring to

the way the products were received." ECF No. 30-7 at 4 (184:14–22). This response about Dr.

Spear's assumptions based on "interior package marking" does not clarify plaintiffs' claims about

warnings on the face of JCI's products, and neither did JCI's motion *in limine* to prevent Dr. Spear

from offering such opinions that were beyond the scope of his expertise.

In light of the disclaimer in the complaint, the lack of a specific reference to a failure to

place a warning on the products in the complaint, and discovery responses that did not clarify that

plaintiff's failure to warn claims included a failure to place a warning on the products, it was not

apparent to JCI that the federal contractor defense was available to it until plaintiffs and the court

made it "unequivocally clear and certain" at the March 22, 2018 hearing. Therefore, JCI's removal

within days of that hearing was not untimely.

**F.    JCI's removal was proper under 28 U.S.C. § 1442(a)(1) because it asserted a colorable federal contractor defense.**

As explained above, section 1442(a)(1)

> allows a defendant to remove a case from state to federal court if the defendant
> establishes (1) it is a federal officer or a "person acting under that officer," 28
> U.S.C. § 1442(a)(1); (2) a "colorable federal defense"; and (3) the suit is "for a[n]
> act under color of office," which requires a causal nexus "between the charged
> conduct and asserted official authority."

*Ripley*, 841 F.3d at 209–10 (quoting *Acker*, 527 U.S. at 431).

The federal government contractor defense is one such "colorable federal defense," based

on the recognition "that the selection of the appropriate design for military equipment to be used

by our Armed Forces is assuredly a discretionary function." *Boyle v. United Techs. Corp.*, 487

U.S. 500, 511 (1988). Thus, the Supreme Court determined that the contractor defense applies as follows:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512.

The Fourth Circuit recently clarified that this federal government contractor defense applies in cases based on an alleged failure to warn, rather than only an alleged design defect. *Ripley*, 841 F.3d at 211. In the failure-to-warn context, the federal contractor defense under *Boyle* "is established when (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 256 (4th Cir. 2017) (citation and quotation marks omitted). Under these criteria, "the government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided." *Id.*

The federal contractor defense, as noted above, is a means to establish jurisdiction in certain cases. *Mesa*, 489 U.S. at 136. "The burden of persuasion for establishing [] jurisdiction, of course, remains on the party asserting it." *Hertz Corp.*, 559 U.S. at 96. "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 96–97. However, that proof must be seen in light of the Supreme Court's observation that, "[i]n construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to

have the validity of the defense of official immunity tried in a federal court,'" and "[w]e therefore do not require the officer virtually to 'win his case before he can have it removed.'" *Acker*, 527 U.S. at 431 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

Thus, only a colorable defense is required, and not a "clearly sustainable defense." *Id.* at 432. In addition, the removing defendant need not present "an airtight case on the merits in order to show the required causal connection" that the suit is "'for a[n] act under color of office.'" *Id.* Indeed, under the current version of 28 U.S.C. § 1442(a)(1), which "cover[s] actions for *or relating to* any act under color of [federal] office, . . . there need be only a *connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (concluding that a "sufficient connection" was shown, because "the Navy dictated the content of warnings on Foster Wheeler's boilers, and Foster Wheeler complied with the Navy's requirements. That relationship was sufficient to connect the plaintiffs' claims, which fault warnings that were not specified by the Navy, to the warnings that the Navy specified and with which Foster Wheeler complied") (citations and quotation marks omitted, emphases in original). Finally, "removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case." *Id.* at 257.

Applying these principles and the three-factor test for a federal contractor "failure to warn" defense described in *Sawyer*, JCI's removal was proper.

### 1.     JCI sufficiently asserted that it was a person acting under a federal officer.

First, plaintiffs do not challenge that JCI was a person acting under a federal officer when it supplied the asbestos-containing products that allegedly injured Mr. Mullinex. The Supreme Court has concluded that "the phrase 'acting under' is 'broad' and is to be 'liberally construed' in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (quoting *Watson v. Philip Morris*

*Cos.*, 551 U.S. 142, 147 (2007)). Under this standard, the Fourth Circuit observed that "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*," and so concluded that the defendant's "status as a Navy contractor readily satisfies the requirement that it have acted under the Navy, as used in § 1442(a)(1)." *Id.* Likewise, JCI's undisputed status as a supplier and contractor for the Navy satisfies the requirement that it acted under a federal officer.

### 2.    JCI sufficiently asserted a colorable federal contractor defense.

Second, JCI has asserted a colorable federal contractor defense. As described in *Sawyer*, the federal contractor defense in failure to warn cases requires three elements: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Id.* at 256 (citation and quotation marks omitted).

#### a.    JCI sufficiently alleged that the Navy approved certain information and warnings for asbestos products.

JCI satisfied the first element of a colorable federal contractor defense by asserting that the Navy, in its discretion, determined the warnings and information placed on asbestos products. For a contractor to assert a colorable defense, "the government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided." *Id.* In so noting, the Fourth Circuit rejected the approach that had been taken by the district court in *Sawyer*, which was that "unless the government explicitly regulated all possible warnings, [the contractor] could not have a colorable federal defense of immunity." *Id.* at 257. The Fourth Circuit rejected this stricter standard because

36

"this reasoning overlooks the fact that, in specifying some warnings in response to the known dangers of asbestos, the government necessarily exercised discretion in not requiring additional warnings." *Id.* The Fourth Circuit looked to the affidavits provided in support of the defendant's removal to determine whether the defendant satisfied the three-factor test for a colorable federal contractor defense. *Id.* at 256.

Here, JCI provided the affidavit of retired Rear Admiral David P. Sargent, Jr. ("Admiral Sargent"), a licensed professional engineer (mechanical) who served in the Navy from 1967 to 1999, including holding a "variety of program and technical management positions" from 1967 through 1988 that involved the "operation and maintenance of Navy warships." ECF No. 29-16 at 1–2.

Admiral Sargent described the unique and demanding requirements of the Navy to design and build warships during his career, and stated that the "Navy had the most diverse and advanced engineering workforce in the nation" to meet those requirements. *Id.* at 5–7. Because the Navy had to source components and materials from outside suppliers, it developed "Military Specifications (MILSPECs) for use in the contract design package and acquisition process" that "presented very detailed descriptions" of government requirements, including "chemical composition, dimensions, required testing and performance demonstrations, required labeling, packaging and shipping requirements," all of which "were drafted, approved and maintained by the Navy." *Id.* at 10. "Manufacturers of components . . . procured by the Navy for use in warships were required to comply with technical specifications in all details in order for the Navy to accept the equipment being manufactured, tested, and shipped," and "Naval Machinery Inspectors" ensured compliance with the "standards and specifications." *Id.* at 11. For example, "[w]here

flange gaskets contained asbestos, it was because the Navy required it." *Id.* at 13.  Admiral Sargent

further explained:

> To achieve its objective of ensuring that, in form and content, the marking on equipment filled the specific informational role, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by [manufacturers] for ultimate use aboard Navy ships. [Manufacturers] *would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications* in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy.

*Id.* at 24 (emphasis added).

He stated that the Navy similarly exercised detailed control over review and approval of

written communication and technical manuals that accompanied equipment, including warning or

caution statements in such materials, to ensure consistency of information for all naval personnel.

*Id.* at 25–26.  As a result, the Navy "would not have permitted equipment suppliers to place

asbestos-related warnings on packaging or containers for valves and pumps or related parts or

items," or for "manufacturers of materials such as gasket and packing to place asbestos-related

warnings on the face of the materials in the 1940s, 1950s, 1960s, and 1970s," and the Navy "did

not specify asbestos-related warnings for gasket materials until late in the 1970s or early 1980s,"

at which point "the exact words were specified." *Id.* at 26–27.

Admiral Sargent discussed MIL-STD-129C, which specified "all aspects of marking

requirements for shipment and storage." *Id.* at 30.  He stated that Section 5.2.2.4 of that standard

"imposes a requirement that packages or containers of 'hazardous chemicals' must 'have affixed

thereto such warning labels as may be required by the Manufacturing Chemists Association

(MCA) Manual L-1,'" or appropriate DOD instructions, but that neither source "has any

applicability to equipment such as valves and pumps . . . or to asbestos-containing gaskets or packing that might have been supplied with such equipment." *Id.* at 30–31. He stated that MIL-STD-129 and the MCA Manual "by their terms apply to external marking of the shipping/storage containers and interior packages . . . of military supplies and equipment," and those exterior containers would be "opened and discarded . . . before the equipment or valve was taken aboard the ship." *Id.* at 31.

Another military specification, MIL-A-17472B, dated May 22, 1964, "covers symbol 2150 compressed asbestos sheet gasket material," and is "mandatory for use by all Departments and Agencies of the Department of Defense." *Id.* at 39. Section 3.11 of that specification, titled "Branding," states: "Each square foot of the asbestos sheet shall be plainly marked with the manufacturer's name, brand identification, and symbol 2150." *Id.* at 40. Section 5 contained requirements for packaging and shipping asbestos sheets, including section 5.3: "Marking. In addition to any special marking required by the contract or order, shipping containers shall be marked for shipment in accordance with MIL-STD-129."[14] *Id.* at 45.

MIL-STD-129D, "Military Standard: Marking for Shipment and Storage" dated January 5, 1967, provides in paragraph 5.2.2.4 of section 5.2, "Interior Package Marking":

> Hazardous chemicals. All package units of hazardous chemicals to be ultimately issued to the consumer who may be exposed to such chemicals under conditions of ordinary use, shall have affixed thereto such warning labels as may be required by the Manufacturing Chemists Association Manual L-1, Guide to Precautionary Labeling of Hazardous Chemicals, or by appropriate Department of Defense instructions, and Military specifications and standards, as published, which shall take precedence.

---

[14] MIL-A-17472B was replaced by HH-P-0046D, dated July 27, 1973. ECF No. 29 at 12 n.10; ECF No. 29-16 at 47. HH-P-0046D included similar marking requirements under section 3.11, "Identification of product," such as marking every square foot of asbestos sheet with the "symbol 2150," manufacturer's name, and product identification. ECF No. 29-16 at 49. Section 5.3 of that specification also refers to MIL-STD-129 for the marking of the containers for the asbestos products. *Id.* at 55.

39

ECF No. 20-19 at 170–71; ECF No. 20-20 at 12–13.

JCI also submitted the affidavit of Thomas F. McCaffery ("McCaffery"), a retired Navy Commander with nearly 20 years of experience researching government records for U.S. Navy ships built before the 1970s. ECF No. 29-27 at 2, 5. Like Admiral Sargent, McCaffery emphasized the need for manufacturers and suppliers to comply with government specifications, and cited the markings required under MIL-A-17472B and HH-P-0046, which he noted do "not include any qualifiers . . . that would indicate potential government acceptance of additional markings, such as a 'warning' on the product." *Id.* at 8–9. He further noted that "[m]arking is not as specified" was categorized as a "major defect" under HH-P-0046 "which would require the rejection of the sample." *Id.* at 9.

McCaffery disputed the claims by plaintiffs' expert, Francis J. Duffy ("Duffy"), that other manufacturers provided warnings on the face of their products during the period of Mr. Mullinex's exposure.[15] He noted that Duffy's example of a warning on a "Garlock Style 900" asbestos product

---

[15] Duffy submitted an affidavit based on his more than 40 years of service in the Navy and Military Sealift Command from 1972 to 2015. ECF No. 20-19 at 1. He opined that, "[b]ecause most [Navy] specifications and standards specify only the minimum requirements, manufacturers and suppliers are generally free to exceed those specifications so long as their product satisfies the minimum requirements." *Id.* at 6. Specifically, he stated that paragraph 3.11 of MIL-A-17472B "set forth the minimum language to be included on the gasket material," but opined that "nothing in this paragraph prohibited additional markings and that, if the specification writers had intended to prohibit all other markings on the gasket material, they would have included clear language to that effect." *Id.* at 7.

To support his interpretation, Duffy cited a 1950s JCI catalog that included a photograph of JCI's 2150 gasket material printed with the brand name, "2150," "Navy," "High Pressure," "Sheet Packing," and "New York – Chicago – Phila.," even though the military specification in effect at the time only required "'the manufacturer's brand name.'" *Id.* at 8–9. He cited the "Garlock Style 900" asbestos sheets of JCI's competitor, which included a printed warning label in 1977 even though the military specification only required the manufacturer's name, brand identification, and symbol. *Id.* at 9–10. He also cited "Palmetto" gasket material style 2900, which he described as an "alternative" to JCI's 2150 asbestos sheets produced by another competitor, and quoted a

40

was inapposite because Garlock did not sell that commercial product to the Navy, and could not have done so because it lacked the other information required by the military specifications. *Id.* at 9. He stated that Duffy did not identify whether any "Palmetto 2900" asbestos sheets were sold to the Navy, and noted that the manufacturer of that product attached "adhesive 'caution' labels" to the product, not a warning printed on the face of the material. *Id.* at 9–10.

McCaffery further disputed plaintiffs' argument that MIL-STD-129 required "warnings to be printed on individual sheets of product" because the products may be removed from their storage/shipping containers before delivery to a vessel, noting that, at that stage, the government would have ownership of the product and the manufacturer would no longer have control over the product under the contract. *Id.* at 10. He opined that "had a manufacturer printed a warning or any other extraneous text not specifically required by either HH-P-46E or Mil-A-17472B directly on the surface of the compressed asbestos sheet gasket material, as suggested by plaintiff[s'] experts, that the material would have been rejected by the government for not meeting the requirements of the relevant specification." *Id.* at 13.

---

deposition from a corporate representative for that company who stated that they "put gummed label [warnings] on the sheet packing" in approximately 1972 or 1973. *Id.* at 10–11.

Duffy further stated that, although the military specification incorporated MIL-STD-129 in reference to the marking of "shipping containers," "in [his] experience the purchase orders for the actual materials almost always contained a broader instruction incorporating all of MIL-STD-129 without limitation." *Id.* at 12. He explained that MIL-STD-129D, paragraph 5.2.2.4 required "warning labels" on "[a]ll package units of hazardous chemicals to be ultimately issued to the consumer," and "package units" identified in paragraph 4.1 include rolls and sheets, the form in which sheet gasket material was delivered. *Id.* at 12–13; ECF No. 20-20 at 6. He further explained that MIL-STD-129, particularly MIL-STD-129E in 1970, incorporated the FHSA, which required labels on the face of products: "All package units of hazardous substances . . . to be ultimately issued to the consumer shall have affixed thereto such warning labels as may be required" by FHSA and amendments thereto. *Id.* at 14–15.

Based on the affidavits of Admiral Sargent and McCaffery, JCI has established the first element of a colorable government contractor defense. Both Admiral Sargent and McCaffery stated that the government exercised control over the markings and other characteristics of asbestos sheet material, and that JCI would not have been able to add anything to its products beyond the information stated in the military specifications. *See Sawyer*, 860 F.3d at 256 (finding the first factor was satisfied because the contractor "showed that the Navy 'exercised intense direction and control over all written documentation,'" and citing the contractor's affidavit stating that the contractor "'would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel beyond those required by the Navy'").

### b. JCI sufficiently alleged that it provided the warnings and information required by the Navy.

Regarding the second contractor defense factor, JCI marked its asbestos sheets with the "branding" information required by the military specifications. *See id.* at 256 (finding that the second factor was satisfied where the contractor "actually gave the warnings that were required by the Navy"). Plaintiffs do not contend that JCI did not include that "branding" information, only that additional warnings were also required by those same standards.

### c. JCI sufficiently alleged that the Navy had at least as much knowledge of the dangers of asbestos as did JCI.

Regarding the third factor for a colorable federal contractor defense, JCI submitted the declaration of Lawrence Stillwell Betts, M.D., Ph.D., regarding the Navy's superior knowledge of the health hazards of asbestos exposure since World War II. ECF No. 29-24 at 5, 9, 20, 29–30 ("The information possessed by the US Navy . . . with respect to the specification and use of

42

asbestos, and the health hazards associated with its use onboard US vessels, far exceeded any information that possibly could have been provided by an equipment manufacturer."). This affidavit sufficiently established that the government knew at least as much about the dangers of asbestos as did contractors such as JCI. *See Sawyer*, 860 F.3d at 256 (finding that the third factor was satisfied when the contractor "credibly demonstrated, with Lawrence Betts' affidavit, that the Navy's knowledge of asbestos-related hazards exceeded [the contractor's] during the relevant time period. Indeed, several other courts have cited the same affidavit as supporting a finding that the government contractor did not withhold risk-related information of which the military was unaware").

Accordingly, as in *Sawyer*, JCI has "made at least a colorable showing that the government exercised discretion in requiring [JCI] to provide certain notices and warnings, having full knowledge of the dangers involved." *Id.* at 256–57. Even assuming plaintiffs are correct that the military specifications discussed above did not prohibit JCI from printing warnings on the gasket material, "the fact that the government did not prohibit [JCI] from giving additional warnings— and may not even have considered requiring additional warnings—does not undermine the colorability of the immunity defense."[16] *Id.* at 257.

### 3.    JCI sufficiently alleged a causal nexus between JCI's supply of asbestos products and the Navy's authority over JCI.

Finally, the third factor for the federal officer removal is that the suit is "'for a[n] act under color of office,' which requires a causal nexus 'between the charged conduct and asserted official authority.'" *Ripley*, 841 F.3d at 209–10; *see also* 28 U.S.C. § 1442(a)(1) (providing for removal

---

[16] Because the Court finds that JCI has alleged a colorable federal contractor defense, it does not address JCI's alternative federal defense based on immunity under *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940).

of an action "for or relating to any act under color of such [federal] office"). This causal nexus is satisfied when there is "a *connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (citation and quotation marks omitted). As the Fourth Circuit concluded:

> Foster Wheeler [the defendant contractor] has amply shown a sufficient "connection or association" in this case. As Foster Wheeler explains, the Navy dictated the content of warnings on Foster Wheeler's boilers, and Foster Wheeler complied with the Navy's requirements. That relationship was sufficient to connect the plaintiffs' claims, which fault warnings that were not specified by the Navy, to the warnings that the Navy specified and with which Foster Wheeler complied. These claims undoubtedly "relat[e] to" all warnings, given or not, that the Navy determined in its discretion.

*Id.* at 258.

Here, like the defendant in *Sawyer*, JCI has satisfied the "causal nexus" requirement. Plaintiffs allege injury based on JCI's failure to include warnings on its products, and JCI has shown that it complied with the "branding" specifications established by the Navy that it contends do not permit such warnings. Plaintiffs' claims, therefore, relate to the information and warnings specified by the Navy that accompanied JCI's asbestos products.

Accordingly, the Court finds that JCI satisfied all three requirements of 28 U.S.C. § 1442(a)(1), namely: (1) JCI was acting under the Navy when it manufactured asbestos products; (2) it asserts a colorable federal contractor defense to plaintiffs' claims that it failed to provide warnings with those products; and (3) plaintiffs' claims are related to JCI's actions under its contracts with the Navy. *See id.* at 259 (finding the contractor satisfied the requirements for removal under 28 U.S.C. § 1442(a)(1) because the contractor "plausibly asserted that it was acting under the Navy when it manufactured boilers; that it possessed a colorable government-contractor defense to the plaintiffs' claims that it allegedly failed to give some warnings in connection with

its manufacture of those boilers; and that the plaintiffs' claims are related to Foster Wheeler's government-directed conduct").

## III.    **RECOMMENDATION**

For the reasons stated, the Court finds that the alleged procedural issues regarding the timeliness of removal and JCI's purported waivers do not bar JCI's ability to remove this case under the federal contractor defense provisions of 28 U.S.C. § 1442(a)(1). Regarding the merits of removal, the Court finds that JCI satisfied the requirements for removal under 28 U.S.C. § 1442(a)(1) based on its assertion of a colorable federal contractor defense. It is therefore **RECOMMENDED** that the plaintiffs' motion to remand be **DENIED**.

## IV.    **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____
Robert J. Krask
United States Magistrate Judge
_____
Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
December 6, 2018