IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**HERBERT H. MULLINEX, JR.,**

and

**PATRICIA E. MULLINEX**

    **Plaintiffs,**

v.                                                                     **CIVIL ACTION NO. 4:18-cv-33**

**JOHN CRANE, INC.,** *et al.*,

    **Defendants.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is John Crane, Inc.'s ("JCI") Motion to Dismiss Plaintiffs' Maritime Law Claims. ECF Nos. 124–125. For the following reasons, Defendants' Motion to Dismiss is **DENIED**. The Court finds that admiralty jurisdiction arises out of the allegations presented in this case.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Herbert H. Mullinex ("Mr. Mullinex") was a Machinist Mate in the United States Navy from May 20, 1969 to February 28, 1989. ECF No. 1-4 at ¶ 5. Mr. Mullinex worked aboard several different ships, which docked in Norfolk, Virginia and in other locations around the world. *Id.* at ¶ 12. Mr. Mullinex's duties included shipbuilding and repair and Plaintiffs allege that he was exposed to asbestos during his naval service, which led him to contract malignant mesothelioma in 2016. *Id.* Plaintiffs do not allege that this exposure occurred on the high seas, necessarily limiting Mr. Mullinex's actionable asbestos exposure to times when his

1

ship was docked on navigable waters or in the shipyard. *Id.* Plaintiffs filed their initial lawsuit in the Circuit Court for the City of Newport News on November 14, 2016 alleging that JCI failed to warn Mr. Mullinex about the dangers of its products that contain asbestos. *See generally* ECF No. 1-4 (attaching Plaintiffs' Amended Complaint). JCI removed the lawsuit to federal court on March 23, 2018, asserting the government contractor defense pursuant to 28 U.S.C. § 1442(a)(1). *See generally* ECF No. 1 (stating the grounds for removal).

On January 23, 2020, JCI filed its Motion to Dismiss Plaintiffs' Maritime Law Claims. ECF Nos. 124–125. On February 6, 2020, Plaintiffs filed their response to JCI's Motion to Dismiss. ECF No. 130. On February 12, 2020, JCI filed its reply to Plaintiffs' response. ECF No. 133. Accordingly, JCI's Motion to Dismiss Plaintiffs' Maritime Law Claims has been fully briefed and the matter is ripe for disposition.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is appropriate when the court in which a claim is filed does not have subject matter jurisdiction over the claim. FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "The burden of proving subject matter jurisdiction on a motion to dismiss is on the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## III. DISCUSSION

Plaintiffs' Amended Complaint asserts claims "arising under the law of Virginia and within the admiralty and maritime jurisdiction…of 28 U.S.C. § 1333(1) and 46 U.S.C. § 30101 and the general admiralty and maritime law of the United States." ECF No. 1-4 ¶ 7. JCI does not seek to dismiss any particular claim in the Amended Complaint and concedes that that this Court

has jurisdiction over Plaintiffs' claims, but argues that the absence of admiralty jurisdiction requires the application of Virginia law. *See* ECF No. 125; *see also* ECF No. 133 at 3 fn. 2 (noting that JCI's Motion to Dismiss "has no impact on the Court's jurisdiction to otherwise resolve this case"). Plaintiffs oppose the exclusive application of Virginia law, focusing on facts that show Mr. Mullinex's asbestos exposure occurred onboard ships in navigable waters to support their contention that this case implicates admiralty jurisdiction. *See* ECF No. 130. In addition to their generalized dispute on the existence of admiralty jurisdiction, the parties also disagree on the proper legal standard for determining the existence of admiralty jurisdiction. *Compare* ECF No. 130 ("[t]he Fourth Circuit…has abandoned [the *Oman*] multifactor test") *with* ECF No. 133 ("the binding precedent established in *Oman* [dictates] that asbestos work has no traditional maritime function"). Accordingly, the Court will state the proper legal standard for the existence of admiralty jurisdiction and apply that standard to determine whether admiralty jurisdiction exists in the instant case.

   A federal court's authority to hear cases in admiralty flows from the Constitution, which extends judicial power to "all Cases of admiralty and maritime jurisdiction." U.S. CONST., Art. III, § 2. Congress has given federal district courts original jurisdiction…of…[a]ny civil case of admiralty or maritime jurisdiction. 28 U.S.C. § 1333(1). After considerable evolution, the Supreme Court synthesized the doctrine for invoking admiralty jurisdiction in *Sisson v. Ruby*, 497 U.S. 358 (1990) and *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). A party seeking to invoke federal admiralty jurisdiction under 28 U.S.C. 1333(1) must satisfy the location and connection tests. *Grubart*, 513 U.S. at 534. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. *Id.* The connection test requires a court to address two

issues: (1) the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce; and (2) whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Id.*

### A. The Location Test

Mr. Mullinex was exposed to asbestos on navigable waters aboard several ships during his service in the Navy. ECF No. 1-4 at ¶ 12; *see also Dumas v. ABB Group, Inc.*, 46 F. Supp. 3d 477 (D. Del. 2014) ("the locality test is met because the vast majority of Plaintiff's alleged asbestos exposure occurred on vessels on navigable waters—regardless of whether the exposure was aboard ships at sea or docked at various shipyards"). Accordingly, the Court finds that the location test is easily satisfied.

### B. The Connection Test

JCI contends that the claims against it cannot satisfy the connection test. In support of its argument, JCI compares the Plaintiffs' allegations to the allegations lacking admiralty jurisdiction in *Gilstrap v. Huntington Ingalls, Inc.*, No. 4:19cv68, ECF No. 19 (E.D. Va. Dec. 9, 2019). For the following reasons, the Court finds that the connection test is satisfied. Additionally, the Court finds that the factual allegations advanced by Plaintiffs are distinguishable from the allegations propounded by the plaintiffs in *Gilstrap*.

#### 1. *Disruptive Impact on Maritime Commerce*

The first prong of the connection test requires a court to examine the potential effects, not the particular facts of the incident in order to determine whether the general features of the incident were likely to disrupt commercial activity. *Grubart*, 513 U.S. at 538 *citing Sisson*, 497 U.S. at 363; *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982); *Exec. Jet Aviation, Inc. v.*

*City of Cleveland*, 409 U.S. 493 (1972). After *Sisson*, the incident at issue should be described at an intermediate level of possible generality. *Grubart*, 513 U.S. at 539.

Here, the incident at issue is properly described as "one of 'injury to workers on Navy ships on navigable waters allegedly caused by defective parts' or 'exposure to allegedly defective products on or around Navy ships on navigable waters.'" *Dumas*, 46 F. Supp. 3d at 483 citing *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1188–89 (D. Haw. 2013); *Connor v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 467 (E.D. Pa. 2011) (concluding that exposure to asbestos-containing products creates unsafe working conditions that could lead to labor shortages, thus disrupting the Navy's ability to protect commercial ships); *see* ECF No. 1-4 at ¶ 11(f) ("[JCI]…sold and/or supplied…to the Plaintiff and/or Plaintiff's employer, asbestos-containing products"). Clearly, the sale of defective parts causing injury on Navy ships on navigable waters is likely to disrupt commercial activity. Therefore, the first prong of the connection test is satisfied.

2. *Substantial Relationship to Traditional Maritime Activity*

JCI uses portions of the *Gilstrap* opinion denying admiralty jurisdiction to contend that because "asbestos work has no traditional maritime function…[n]or is asbestos work a uniquely maritime issue or activity" that "maritime jurisdiction does not extend to asbestos claims brought by Navy sailors." ECF No. 125 at 3–5. This reading of *Gilstrap* is overly broad.

In applying the second prong of the connection test, a court asks "whether a tortfeasor's activity…on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539–40. Hypergeneralizations of the tortfeasor's activity so as to eliminate a hint of maritime connection should not be used as a vehicle for eliminating admiralty jurisdiction. *Id.* at 541–42.

The Supreme Court disapproves of multifactor tests in determining whether there is a substantial relationship to maritime activity. *Id.* at 544 (disapproving of the factors articulated in *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir. 1973)); *see also Sisson*, 497 U.S. at 365 n. 4 (discussing the Fourth Circuit's application of the *Kelly* factors in *Oman v. Johns-Manville Corp.*, 764 F.2d 224 (4th Cir. 1985)).[1] Additionally, the Supreme Court has determined that not "every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, [but] ordinarily that will be so." *Grubart*, 513 U.S. at 543.

In this case, JCI is accused of selling the Navy asbestos-containing products, which led to Mr. Mullinex's exposure to asbestos on navigable waters and subsequent development of mesothelioma. The record demonstrates that much of Mr. Mullinex's work in the Navy "involved replacing asbestos gaskets and packing." *See e.g.* ECF No. 1-4 at ¶ 11(f) (alleging that JCI sold the Navy "asbestos-containing gasket materials"). Gaskets are essential for the proper functioning of ships and made for that purpose. *Connor*, 799 F. Supp. 2d at 469 *citing John Crane, Inc. v. Jones*, 650 S.E.2d 851, 855 (Va. 2007) (holding the instant prong of the connection test to be satisfied when the defendant's products were produced and advertised for the marine industry). Further, the repairs that led to Mr. Mullinex's alleged exposure to JCI's asbestos-containing gaskets occurred on navigable waters. *See* ECF No. 1-4 at ¶ 12. Because JCI is accused of selling asbestos-containing gaskets to the Navy and Mr. Mullinex was exposed to those products while aboard ships on navigable waters, JCI's alleged conduct has a substantial relationship to maritime activity.

---

[1] In *Oman*, the Fourth Circuit stated "a thorough analysis of the nexus requirement should include a consideration of *at least* [the *Kelly* factors]." 764 F.2d 224, 230 (4th Cir. 1985). The Supreme Court expressly rejected the *Kelly* factors in *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 548 (1995) ("rejecting…the call to adopt a multifactor test for admiralty jurisdiction for the benefit of land-based parties to a tort action").

In seeking to avoid admiralty jurisdiction, JCI hypergeneralizes its alleged conduct at issue by framing it as "asbestos work," necessarily omitting two key details: (1) JCI sold gaskets—a product necessary for naval operations—specifically to the Navy; and (2) Mr. Mullinex was allegedly exposed to the asbestos in the gaskets aboard naval vessels on navigable waters. ECF No. 1-4 at ¶¶ 11(f), 12. While it is true that "asbestos work" in general is not inherently related to the traditional application of admiralty law, the sale of an asbestos-containing product geared toward the proper functioning of Navy ships places the Plaintiffs' allegations squarely in a context that interests admiralty law. Additionally, the plaintiff in *Gilstrap* is alleged to have been exposed to asbestos at a shipyard while the ship he was working on was under construction. *Gilstrap*, No. 4:19cv68, ECF No. 19 at 2–3 (E.D. Va. Dec. 9, 2019). Exclusively land-based asbestos exposure like the exposure alleged in *Gilstrap* cannot satisfy the *Sisson* test. *Connor*, 799 F. Supp. 2d at 467 ("the…test is not satisfied if the exposure alleged occurred exclusively on land"). In contrast, Mr. Mullinex's alleged exposure to JCI's asbestos-containing products came in part "on [] navigable waters." ECF No. 1-4 at ¶ 12. Based on the above reasoning, the second prong of the connection test is satisfied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**. The Court finds that admiralty jurisdiction arises out of the allegations presented in this case.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
April 27, 2020

_____
UNITED STATES DISTRICT JUDGE