IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| **HERBERT H. MULLINEX, JR.** ) | |
| and **PATRICIA E. MULLINEX,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No.: 4:18-cv-00033-RAJ-DEM |
| ) | |
| **JOHN CRANE INC., et al,** ) | |
| ) | |
| **Defendants.** ) | |

**JOHN CRANE INC.'S REPLY IN SUPPORT OF
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO
PLAINTIFFS' CLAIM FOR LOSS OF SOCIETY AND PUNITIVE DAMAGES**

John Crane Inc. ("JCI"), by counsel, submits the following *Reply in Support of its Motion in Limine to Exclude Evidence Relating to Plaintiffs' Claim for Loss of Society and Punitive Damages* [ECF Nos. 214, 215].

**I
Introduction**

Plaintiffs' 30-page brief is striking in its attempt to confuse and blur the issues. When the wheat and chaff are separated, however, Plaintiffs fail to establish – under the exacting standard set forth in *Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019) – that either punitive damages or loss of society are available remedies to them under general maritime law.  Specifically, Plaintiffs cannot prove that:

(1) Either punitive damages or loss of society was a remedy traditionally awarded to seamen (or anyone else) alleging claims of negligence against a non-employer defendant;

(2) Conformity with parallel statutory schemes, in particular the Jones Act in a personal injury case, "requires" recognition of either category of damages; and

(3) Policies expressed in federal legislation "compel" recognition of their right to seek either category of damages.

As discussed in more detail below, the relevant case law and statutes dictate under the *Batterton* test the opposite conclusion: neither punitive damages nor loss of society are available to Plaintiffs. For the foregoing reasons, as well as those stated in JCI's opening brief, Plaintiffs' evidence relating to those two categories of damages should be excluded.

## II
## Argument

### A. Plaintiff Cannot Demonstrate That Either Punitive Damages or Loss of Society Were Remedies Traditionally Allowed Under a General Maritime Law Negligence Claim.

Plaintiffs do not dispute that *Batterton* supplies the rule of decision governing the damages they seek here. [ECF No. 263 at 1-2.] JCI's opening brief describes how, under *Batterton's* first prong, Plaintiffs must show not merely that punitive damages were theoretically available during maritime law's "formative years" but rather a "clear historical pattern" of such awards being made under the theory of recovery advanced by Plaintiffs. *Batterton*, 139 S. Ct. at 2283 n.6, 2284. Plaintiffs' failure to identify any negligence case in which either punitive damages or loss of society was awarded to a seaman like Mr. Mullinex – much less a clear historical pattern of such awards – is "practically dispositive" of the issue. Accordingly, Plaintiffs' evidence as to these damages should be excluded.

    1. <u>Plaintiffs Establish No Clear Historical Pattern of Awarding Punitive Damages in Garden Variety Negligence Cases Such as This One Brought By a Seaman.</u>

JCI's opening brief describes at length how the first prong of *Batterton* requires Plaintiffs to identify decisions from before 1920 (when the Jones Act and DOHSA were enacted), in which punitive damages were awarded to a seaman in negligence cases such as this one. [ECF No. 215

at 5-6 n.3.][1] While Plaintiffs open their brief by asserting that both suits against non-employer defendants and punitive damages were "well established" during those formative years of the general maritime law, [ECF No. 263 at 2, 5], even a cursory review of the cases cited by Plaintiffs belies both contentions.

Taking these in order, Plaintiffs cite to only three cases for the proposition that negligence cases against non-employers were "well established" under maritime law. Hardly. Putting aside the paucity of case law cited, none involved claims by seamen like Mr. Mullinex. For example, *The Max Morris*, 137 U.S. 1 (1890), was *in rem* action brought by a longshoreman. In *Leathers v. Blessing*, 105 U.S. 626 (1881), the claimant was a non-seaman injured while retrieving consigned goods off a ship. Finally, *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001), which itself involved a non-seaman claimant, cited only *Blessing* and one other negligence case, *Robins Dry Dock & Repair Co. v. Dahl*, 266 U.S. 449 (1925), which also involved a non-seaman. *Id.* at 457. Thus, at the outset, Plaintiffs cite **no case** prior to 1920 in which a seaman sued – or was even permitted to sue – a non-employer defendant like JCI.

From there, Plaintiffs' argument regarding the availability of punitive damages in similar cases during the admiralty's formative years fares no better. They again offer no case where an award was actually made (much less a clear historical pattern of such awards). In fact, of the five cases they cite, four were not maritime cases. *See Lake Shore & M.S.R. Co. v. Prentice*, 147 U.S. 101, 106 (1893) (railroad case); *Boston Manuf'g Co. v. Fiske*, 3 F. Cas. 957 (Cir. Ct., D. Mass. 1820) (patent case); *The Jane Grey*, 95 F. 693, 697 (D. Wash. 1899) (Washington law); *Stewart v.*

---

[1] Plaintiffs concede that Mr. Mullinex is a seaman. [ECF No. 263 at 18.]

3

*Cary Lumber Co.*, 59 S.E. 545, 548 (N.C. 1907) (North Carolina law).[2] As for the fifth, *Fretz v. Bull*, 53 U.S. 466 (1851), Plaintiffs assert that the Court there "discussed in a collision case that 'vindictive damages' ought not be allowed only because there was no negligence, or at best, mutual negligence." [ECF No. 263 at 20-21.] But the only reference to such damages appears in the syllabus to the case and not in the text of the decision. "The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader." *Dunlop v. Bachowski*, 421 U.S. 560 n.\* (1975); *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337 (1906). Thus, Plaintiffs cite no maritime case supporting an award of punitive damages in a case such as this.

Far from helping Plaintiffs in their argument, *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009), makes JCI's point for it. Addressing *Townsend* a decade after it was decided, the Court recently explained that the decision was "based on the established history of awarding punitive damages" in maintenance and cure cases prior to 1920. *Batterton*, 139 S. Ct. at 2283. This is precisely what Plaintiffs have failed to do here, because unlike maintenance and cure cases, there is no such history of punitive damages awards in negligence cases against non-employer defendants. Thus, in sharp contrast to *Townsend*, Plaintiffs fail to cite any case – much less a "clear historical pattern" of such cases as required under *Batterton's* first prong – awarding

---

[2] With respect to *Fiske*, Justice Story (riding circuit) in a patent case criticized a Supreme Court decision striking an award of attorneys' fees in a capture and prize case. Although employing the phrase "exemplary damages" at one point, Justice Story also said such awards were "the usual course" where restitution to the owner of seized property is ordered but the capture was deemed justifiable. *Fiske*, 3 F. Cas. at 957. That is consistent with the cases cited by Justice Story. *See The London Packet*, 18 U.S. 132, 141-43 (1820); *The Venus*, 18 U.S. 127, 131(1820); *The Mary*, 13 U.S. 126, 151 (1815). If these decisions support an award for "punitive" damages at all, it is only: (i) in capture and prize cases; (ii) **against the plaintiff** and not the defendant; and (iii) for the costs incurred in having to litigate what was ultimately a justifiable seizure of a vessel. It suffices to say here that such a scheme has nothing whatsoever to do with the Plaintiffs' claim.

punitive damages to a seaman (or anyone else for that matter) in a negligence case against a non-employer defendant.

>   2. Plaintiffs Establish No Clear Historical Pattern of Awarding Loss of Society in Garden Variety Negligence Cases Such as This One Brought By a Seaman.

Equally unavailing under *Batterton's* first prong is Plaintiffs' assertion that maritime courts "routinely" recognized and upheld recovery for loss of society prior to 1920. [ECF No. 263 at 8.] First, this argument runs contrary to the Supreme Court's observation in *American Export Lines v. Alvez*, 446 U.S. 274 (1980), that as late as the second half of the twentieth century, "there was no clear decisional authority sustaining a general maritime law right of recovery for loss of society." *Id.* at 280.[3] Second, the six cases cited by Plaintiffs do not support their argument. To the contrary, those cases are consistent with the history summarized in *Alvez*.

For example, Plaintiffs cite to Chief Justice Chase's decision while on circuit in *The Sea Gull*, 21 F. Cas. 910 (Cir. Ct. D. Md. 1800). The opinion there notes only that there was an award of $1,000 in damages. It does not say what that amount was comprised of nor does the opinion use the phrase "loss of society" or "consortium" anywhere. *Id.* at 911. Likewise, in *Phelps v. Steamship City of Panama*, 1 Wash. Terr. 518 (1877), the territorial court – deciding issues of contract law, *id.* at 531 – included a discussion of loss of consortium damages under common law

---

[3] With respect to *Alvez* itself, JCI catalogs in its opening brief the subsequent treatment of *Alvez* by the Supreme Court and lower federal appellate courts. [ECF No. 215 at 7-8.] Plaintiffs respond with passing cites to the opinion in later Supreme Court decisions but cite to nothing from the Court discussing *Alvez's* continued viability regarding loss of society damages, nor do they cite any decision from the Court extending the decision to seamen. [ECF No. 263 at 2 n.2.] The reason for this omission is simple: the Court has done just the opposite. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 31 (1990) (holding that *Sea-Land Services v. Gaudet*, 414 U.S. 573 (1974) – on which *Alvez* is based – was limited to its facts).

5

(not maritime law).⁴ *Id.* at 533. As in *The Sea Gull*, there is no indication such damages were awarded, *id.* at 546-47, and the decision on appeal to the U.S. Supreme Court (also cited by Plaintiffs) likewise contains no reference to loss of society. *The City of Panama*, 101 U.S. 453, 464 (1879).

With respect to the other cases cited by Plaintiffs, *James v. Christy*, 18 Mo. 162 (1853), involved the application of state law by a state court, not maritime law. *Id.* at 164 ("By our law…"). In *Cutting v. Seabury*, 6 F. Cas. 1083 (D. Mass. 1860), the claim was one for wrongful death not personal injury. *Id.* at 1084. Thus, any discussion of the damages available in a personal injury case – which the court made a point of saying was "not controverted" by the defendant, *see id.* – was dictum. Even so, the suit for the same damages in the death case was dismissed by the court there. *Id.* at 1085. Lastly, Plaintiffs cite to the *The E.B. Ward,* 23 F. 900 (Cir. Ct. E.D. La. 1885), an *in rem* action in which loss of society was awarded. There is no indication that the defendant challenged their availability and the court's decision cites no authority for their award. Regardless, *The E.B. Ward* does not approach the sort of "clear historical pattern" of remedial availability that the Supreme Court requires under *Batterton's* first prong. To the contrary, it is precisely the sort of single "dust-covered case" on which the Court is "reluctant" to place any reliance. *See Batterton*, 139 S. Ct. at 2283 n.6.

As with their claim for punitive damages, Plaintiffs do not – and cannot – establish the necessary historical pedigree for the loss of society remedy they now seek under *Batterton's* first prong. Because Plaintiffs likewise cannot meet the exacting standard under *Batterton's* second

---

⁴ As Plaintiffs offer in their brief, "[m]aritime law had always, in this country as in England, been a thing apart from the common law." [ECF No. 263 at 2] (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 386 (1970)).

and third prongs (discussed below), their failure to meet the first prong is dispositive of the issue. Plaintiffs' evidence relating to loss of society and punitive damages must therefore be excluded.

**B. The Parallel Statutory Scheme to Which This Court Must Look, The Jones Act, Does Not Support an Award of Punitive Damages or Loss of Society.**

In response to *Batterton's* second prong and its stated focus on the importance of uniformity under *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), Plaintiffs assert only – albeit repeatedly throughout their brief – that maritime law's concern in this regard is cabined to the "employment related area." [ECF No. 263 at 15.] As such, Plaintiffs contend that JCI's reliance on *Miles* and its progeny is misplaced because that decision only dealt with a seaman's claim against his employer. [*Id.* at 22.] This is demonstrably incorrect based on the record in *Miles*.

Plaintiffs' brief includes a summary of the different charter arrangements applicable to vessels. Among those is a "demise" or "bareboat" charter, under which the charterer "takes complete control of the vessel, mans it with his crew, and is treated by law as its legal owner." [ECF No. 263 at 11-12] (quoting 2 Thomas J. Schoenbaum *Admiralty & Maritime Law* §11:1 at 3 (6th ed. 2018)). Under such a bareboat charter, the charterer becomes the employer. *See United States v. W.M Webb, Inc.*, 397 U.S. 179, 192 (1970).

In *Miles*, the vessel in question was owned by Aeron Marine Co., bareboat chartered to Archon Marine Co, and operated by Apex Marine Corp. ("Apex") and Westchester Marine Shipping Co. ("Westchester"). *See Miles v. Melrose*, 882 F.2d 976, 980 (5th Cir. 1989). Apex and Westchester, in turn, hired the assailant at issue there under a collective bargaining agreement the two companies had with a local union. *Miles v. Melrose*, 1987 U.S. Dist. LEXIS 8247 at *5 n.4 (E.D. La. Sept. 8, 1987). Because Aeron was not considered the assailant's employer under the bareboat charter, it was not included in the Jones Act claim submitted to the jury. Rather, the claim against Aeron was separate and only for seaworthiness (on which the jury found in Aeron's

7

favor). *See* Joint Appendix in *Miles v. Apex Marine Corp.*, 1990 U.S. S. Ct. Briefs LEXIS 1233 at *9. Federal appellate courts – cited in JCI's opening brief but ignored by Plaintiffs – have likewise observed that *Miles* included claims against non-employer defendants. *Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 n.5 (5th Cir. 2004); *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 430 (9th Cir. 1994).[5]

But the larger point made by those courts is in rejecting Plaintiffs' contention that the status of a defendant is in any way relevant to the analysis under *Miles*. [ECF No. 263 at 15.] To the contrary, "there is nothing in *Miles'* reasoning to suggest that the decision turned upon the identity of the defendant." *Scarborough*, 391 F.3d at 668 n.5; *Davis*, 27 F.3d at 430. Thus, Plaintiffs do not distinguish in any meaningful way the cases cited on pages 10-11 of JCI's opening brief. Moreover, Plaintiffs do not address (or distinguish) *Scarborough*, *Davis*, or other opinions applying the reasoning of *Miles* outside of the employment context – including in asbestos cases – and striking claims for both loss of society and punitive damages. *See, e.g., Spurlin v. Air & Liquid Sys. Corp.*, 2021 U.S. Dist. LEXIS 87994 at *36-40 (S.D. Cal. May 7, 2021); *Sebright v. GE*, 2021 U.S. Dist. LEXIS 46660 at *77-78, __ F. Supp. 3d __ (D. Mass. Mar. 11, 2021); *Kelly v. CBS Corp.*, 2015 U.S. Dist. LEXIS 60788 at *3 (N.D. Cal. May 8, 2015); *In re Goose Creek Trawlers*, 972 F. Supp. 946, 950 (E.D.N.C. 1997). Indeed, the case law on which Plaintiffs rely

---

[5] Plaintiffs' assertion that seaworthiness claims involve only claims against employers, [ECF No. 263 at 15], is directly contradicted by *Miles* as well as by the case law and treatises to which Plaintiffs cite. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 95 (1946) (holding unseaworthiness claims are "not confined to seamen who perform the ship's service under immediate hire to the owner…"); 1 Schoenbaum, § 6:15 at 500 ("A seaman may sue … non-employer third parties under the general maritime law. Such a claim may be filed against a vessel owner for unseaworthiness…"). Plaintiffs also describe unseaworthiness claims as "a very circumscribed area of law." [*Id.* at 2.] The Supreme Court has described unseaworthiness claims as "the essential basis" on which seamen seek recovery. *Batterton*, 139 S. Ct. at 2282.

8

also looked to *Miles* in an asbestos case involving a non-employer defendant. *See John Crane Inc. v. Hardick*, 732 S.E.2d 1, 4 (Va. 2012).[6]

Plaintiffs' assertion that the uniformity concerns of *Miles* do not apply outside of the employment context – the only argument they offer under *Batterton's* second prong – is baseless. Because Plaintiffs' claims for punitive damages and loss of society cannot satisfy the second prong of *Batterton*, their evidence relating to those damages should be excluded.

### C. Policy Considerations Do Not Support Recognition of Punitive Damages or Loss of Society in a General Maritime Law Personal Injury Case.

Plaintiffs advance a number of "policy" arguments as to why they feel they *should* be allowed to recover the damages they seek. [*See, e.g.,* ECF No. 263 at 20.] But under *Batterton's* third prong, the "overriding objective is to pursue the policy *expressed in congressional enactments*." *Batterton*, 139 S. Ct. at 2285 (emphasis added). Therefore, the issue under this prong is whether recognition of a novel maritime remedy is "compelled" by a "clearly expressed policy" found in federal legislation. *Id.* at 2283-84. Plaintiffs point to no such clearly expressed legislative policy. In fact, the only statutes referenced by Plaintiffs undermine any such argument on their part.

Plaintiffs first cite to the Jones Act, 46 U.S.C. § 30104, which does not permit recovery for either loss of society or punitive damages. *Miles*, 498 U.S. at 32; *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 391 (5th Cir. 2014) (en banc). Plaintiffs also cite to the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.* ("DOHSA"). Like the Jones Act, DOHSA prohibits recovery

---

[6] The decision in *Hardick* (which was on reconsideration from that court's initial decision found at 722 S.E.2d 610 (Va. 2012)), was a state court attempting to interpret maritime law without the benefit of the Supreme Court's guidance in *Batterton*. Application of *Batterton's* three-prong test likewise leads to the inexorable conclusion that pain-and-suffering damages are not available in a wrongful death case brought on behalf of a seaman. As this is not a wrongful death case, that issue is not before the Court in this case.

9

for loss of society and punitive damages to seamen like Mr. Mullinex. *Id.* § 30303; *Miles*, 498 U.S. at 31; *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1349 (9th Cir. 1987). It is therefore unclear what Plaintiffs mean when they assert that these two statutory schemes are "hopelessly inconsistent with each other." [ECF No. 263 at 25.][7] To the contrary, these two enactments reflect a "clearly expressed policy" against recovery of loss of society and pecuniary damages by Plaintiffs here.

Plaintiffs note that in 2000, DOHSA was amended to permit recovery for loss of society (but not punitive damages) in cases involving commercial aviation accidents. [*Id.*] While true, this in no way supports Plaintiffs' argument. Instead, such an amendment makes clear that Congress knows how to provide a remedy (and which ones) when it sees fit but has not provided Plaintiffs with the remedies they seek. This is the whole point of *Batterton's* third prong, reflecting Plaintiffs' inability to identify a legislative policy ground on which to base their recovery.

Plaintiffs cite alternatively to the "saving to suitors" clause of 28 U.S.C. § 1333, which they state, "expressly permits supplementation of state remedies in maritime third-party negligence cases." [*Id.* at 24.] At the outset, Plaintiffs have expended considerable energy in this case to see that maritime law is applied – in response to JCI's motion to apply Virginia law – asserting in a 30-page brief "that general maritime law is the *substantive law* applicable to this case." [ECF No. 130 at 1] (emphasis in original). It is therefore difficult to understand Plaintiffs' pivot now. Equally unclear is the benefit they hope to receive. Virginia law does not allow recovery for loss

---

[7] The Supreme Court likewise had no trouble looking to both statutes in recognizing a general maritime law wrongful death action in *Moragne* and again looking to them both in *Miles* to find non-pecuniary damages unavailable.

10

of society in a personal injury case. *See Carey v. Foster*, 345 F.2d 772, 776 (4th Cir. 1965).[8] In any event, Plaintiffs' reading of Section 1333 is incorrect. As the Fourth Circuit has explained:

> the effect of the saving-to-suitors clause is to permit maritime *in personam* claims to be pursued in federal court as maritime (and thus non-jury) claims, in state court as legal claims, or in federal court as legal claims (for which a jury trial is available) if an independent basis for federal court jurisdiction exists. If an admiralty claim is tried "at law," the claim nonetheless remains an admiralty claim, and **substantive admiralty law governs the disposition of the claim**.

*In re Lockheed Martin Corp.*, 503 F.3d 351, 356 (4th Cir. 2007) (second emphasis added). Instead, the supplementation on which Plaintiffs rely – as reflected in other arguments made throughout Plaintiffs' brief, [ECF No. 263 at 3-4, 6-8, 12-15, 23] – was instead the product of federal maritime courts accommodating state law remedies not otherwise available under maritime law.

But this has not been the case for seamen like Mr. Mullinex since at least 1970, when the Court decided *Moragne*. As the Court explained there, "[f]ederal law, rather than state, is the more appropriate source of a remedy for violation of the federally imposed duties of maritime law." *Id.* at 401 n.15. The entire motivation for recognizing a maritime wrongful death claim in that case was "to assure uniform vindication of federal policies, removing the tension and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts." *Moragne*, 398 U.S. at 401.

Because this requirement of uniformity in application finds its origins in the Constitution – as explained in JCI's opening brief, [ECF No. 215 at 8-9] – it has been held to apply not only to claims by seamen but to those on behalf of any person who was "engaged in a maritime trade." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 202 (1996). Therefore, only a very "narrow"

---

[8] Perhaps it is for punitive damages, though such damages are subject to an absolute cap of $350,000. *See* Va. Code Ann. § 8.01-38.1.

11

class of cases escapes that constitutional mandate, *Savoie v. Chevron Texaco*, No. 04-1302, 2005 U.S. Dist. LEXIS 17798 at *9-10 (E.D. La. Jul. 22, 2005); *In re Goose Creek Trawlers*, 972 F. Supp. at 950, such as those involving recreational boaters (like 12-year-old Natalie Calhoun) cited by Plaintiffs. *See Tucker v. Fearn*, 333 F.3d 1216 (11th Cir. 2003); *Am. Dredging Co. v. Lambert*, 81 F.3d 127 (11th Cir. 1996); *Sutton v. Earles*, 26 F.3d 903 (9th Cir. 1994); *Powers v. Bayliner Marine Corp.*, 855 F. Supp. 199 (W.D. Mich. 1994); *Emery v. Rock Island Boatworks, Inc.*, 847 F. Supp. 114 (C.D. Ill. 1994). As the Third Circuit observed, such cases are "at base, no different than a cause of action arising out of the average motor vehicle accident." *Calhoun*, 40 F.3d at 644.[9] They have no application to a seafarer like Mr. Mullinex. JCI's review of the case law cited by Plaintiffs does not reveal a case decided since 1970 in which a seaman was permitted to supplement a maritime claim by reference to state law.

Lastly, Plaintiffs again cite Chief Justice Chase in *The Sea Gull*, in which he wrote that "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." *The Sea Gull*, 21 F. Cas. at 910. But as the Supreme Court has explained in response to this very passage, "we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them." *Miles*, 498 U.S. at 36. The Court reiterated this point in *Batterton*, stating that the sentiment expressed in *The Sea Gull*:

> has never been a commandment that maritime law must favor seamen whenever possible. Indeed, the doctrine's apex coincided

---

[9] In this same section of their brief Plaintiffs charge JCI with "attempt[ing] to stretch *Miles* beyond its holding and rationale." [ECF No. 263 at 26.] In support of that contention, Plaintiffs cite a *dissenting* opinion from the Second Circuit, a property damage case, and two Michigan federal trial court decisions from the early 1990s that another court within the Fourth Circuit has described as "espous[ing] a minority view" because "the reasoning contained in those cases is inconsistent with the uniformity principle in admiralty law." *Goose Creek Trawlers*, 972 F. Supp. at 951.

> with many of the harsh common-law limitations on recovery that were not set aside until the passage of the Jones Act. And, while sailors today face hardships not encountered by those who work on land, neither are they as isolated nor as dependent on the master as their predecessors from the age of sail. In light of these changes and of the roles now played by the Judiciary and the political branches in protecting sailors, the special solicitude to sailors has only a small role to play in contemporary maritime law.

*Batterton*, 139 S. Ct. at 2287; *accord Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 636 (3d Cir. 1994) (citing *Miles* while observing, "[o]ne trend that cannot be ignored is that the Court seems to be cutting back on plaintiffs' rights in maritime actions").

Plaintiffs cannot point to any clearly expressed legislative policy favoring – much less compelling as required under *Batterton's* third prong – recognition of the remedies they seek under maritime law for loss of society and punitive damages. For the reasons articulated in JCI's opening brief, the relief Plaintiffs seek is uniquely within the province of Congress, not the courts. [ECF No. 215 at 13.] Accordingly, Plaintiffs' evidence relating to both categories of damages should be excluded.

### D. Plaintiffs Fail to Plead or Prove a Claim for Punitive Damages.

In response to JCI's invocation of *Iqbal* and *Twombly*, Plaintiffs offer no response to JCI's argument that Plaintiffs simply attach labels like "willful and wanton" and "conscious disregard" to their negligence allegations, hoping to repurpose those allegations as punitive damages claims. Other than these formulaic buzzwords – and something about JCI's ability to obtain liability insurance – Plaintiffs offer no further factual enhancement to support their punitive damages claim.[10] [ECF No. 263 at 24-25.] Plaintiffs do not dispute that the complaint fails to identify any piece of literature of which JCI was allegedly aware during Mr. Mullinex's time in the Navy that

---

[10] Plaintiffs' brief includes reference in the complaint to JCI as a "miner" of asbestos. [ECF No. 263 at 28.] JCI never mined asbestos.

13

put JCI on notice of the hazards Plaintiffs allege. Likewise, Plaintiffs do not dispute that the only witness they have identified on the "state of the art" issue, David Rosner, Ph.D., has admitted he has no information as to the state of JCI's knowledge at any time. Because Plaintiffs did not sufficiently plead punitive damages under Federal Rule of Civil Procedure 8, their claim for those damages should be dismissed.

Setting aside their defective pleading, Plaintiffs' brief makes clear they cannot satisfy the exacting standard for punitive damages under maritime law. Other than closing their brief with a paragraph that reads like something out of a closing argument, Plaintiffs cite no evidence in support of those baseless allegations. Furthermore, the case law they cite further supports JCI's argument. The only case cited by Plaintiffs is the First Circuit's decision in *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694 (1st Cir. 1995). The court of appeals' opinion there recounts a pre-existing animosity between the parties that led the defendant boat pilot to intentionally destroy hundreds of commercial lobster traps owned by the claimant and then try to cover it up. *Id.* at 697-98, 702. Such conduct is in line with that narrow band of punitive damages cases recognized under maritime law, [ECF No. 215 at 14-15], and reflects the sort of intentional destruction of property that was at issue is *Ralston v. The State Rights*, 20 F. Cas. 201, 205-09 (D.C.E.D. Pa. 1836). For the reasons detailed in JCI's opening brief, Plaintiffs' garden variety negligence suit comes nowhere close to satisfying the maritime standard for punitive damages.

## III
## Conclusion

For the foregoing reasons, JCI respectfully moves this Court for an Order excluding Plaintiffs' evidence relating to their claims for loss of society and punitive damages, and for such other relief as the Court deems just and proper.

Dated: September 10, 2021

        **Respectfully submitted,**
        **JOHN CRANE INC.,**
        **Defendant**

        By:   /s/ Eric G. Reeves
                Counsel

| | |
|---|---|
| Eric G. Reeves (VSB # 38149) | Brian J. Schneider (VSB #45841) |
| Laura May Hooe (VSB # 84170) | HAWKINS PARNELL & YOUNG, LLP |
| Mary Louise Roberts (VSB # 34305) | 303 Peachtree St., NE |
| Lisa Moran McMurdo (VSB # 44371) | Suite #4000 |
| MORAN REEVES & CONN PC | Atlanta, GA 30308 |
| 1211 E. Cary Street | Telephone: (804) 921-1306 |
| Richmond, Virginia 23219 | bschneider@hpylaw.com |
| Telephone: (804) 421-6250 | |
| Facsimile: (804) 421-6251 | |
| ereeves@moranreevesconn.com | |
| lmayhooe@moranreevesconn.com | |
| mroberts@moranreevesconn.com | |
| lmcmurdo@moranreevesconn.com | |
| *Counsel for John Crane Inc.* | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September, 2021, a true and accurate copy of the foregoing was filed electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ Eric G. Reeves
Eric G. Reeves (VSB # 38149)
Laura May Hooe (VSB # 84170)
Mary Louise Roberts (VSB # 34305)
Lisa Moran McMurdo (VSB # 44371)
MORAN REEVES & CONN PC
1211 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
ereeves@moranreevesconn.com
lmayhooe@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com