## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**HERBERT H. MULLINEX, JR.,**
**and PATRICIA E. MULLINEX,**

               **Plaintiffs,**

**v.**                                                **Civil Action No. 4:18-cv-33**

**JOHN CRANE, INC.,**

               **Defendant.**

## <u>REPORT AND RECOMMENDATION</u>

Plaintiffs in this maritime personal injury action moved the court *in limine* to prohibit the sole remaining Defendant from seeking to allocate fault to non-parties, or bankrupt entities which may have paid compensation under bankruptcy trust distribution procedures applicable to asbestos cases.   (ECF No. 248).  The remaining Defendant, John Crane, Inc. ("JCI"), a maker of asbestos-containing gasket and packing material, opposes the request in part.   While JCI concedes that maritime law precludes allocation of fault to parties who cannot be sued, either through bankruptcy or immunity, it argues that if it is found liable, the court should adopt a "divided damages" model and allow the jury to allocate damages, without evidence of fault, equally among JCI and all of the various asbestos manufacturers which have settled Plaintiffs' claims before trial.   Alternatively, it urges the court to permit dollar-for-dollar *pro tanto* setoff of any settlements received by the Plaintiffs from both settling defendants and any bankruptcy trust without requiring a jury finding regarding proportionate fault.

As explained in more detail below, JCI's opposition finds no support in existing caselaw. And its arguments supporting the need for a novel approach in asbestos cases overstate the burden of proving proportionate fault as required under existing maritime law. Moreover, adopting its "divided damages" theory would eviscerate joint and several liability in maritime asbestos injury claims. Accordingly, after reviewing the parties' briefing, and the procedural posture of this case, I recommend the court GRANT Plaintiffs' motion and limit any allocation of fault to those settling defendants which the jury is able to find from the evidence have contributed to Plaintiffs' illness.[1] This would preclude allocation of fault to immune Defendants such as the U.S. Navy, bankrupt Defendants, which the Plaintiffs were precluded from suing, and any Settling Defendants against which there is insufficient evidence to support a jury finding allocating a percentage of fault.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff Herbert H. Mullinex, Jr., ("Mullinex") served in the United States Navy as a machinist mate from May 1969 to February 1989. In this position, Mullinex worked onboard a number of vessels – in dry dock and at sea – performing various shipbuilding and ship repair duties. A significant portion of the parts and materials used by Mullinex in the course of his duties were supplied to the Navy by independent contractors, such as Defendant JCI pursuant to Navy specifications and standards. And many of those supplied materials contained asbestos. In 2016, Mullinex was diagnosed with malignant mesothelioma due to asbestos exposure. As relevant to this motion, Mullinex seeks to hold JCI liable for failing to warn of the hazards of asbestos exposure in connection with some of its asbestos-containing products – namely, compressed asbestos sheet gaskets and valve and pump packing – from 1969 to 1978.

---

[1] Although styled a Motion *in Limine*, Plaintiffs' motion goes directly to an issue of instructing the jury and as a result, I have prepared a recommended disposition consistent with Rule 72(b) of the Federal Rules of Civil Procedure.

This suit, which has been litigated for more than five years, was originally brought in state court against thirteen named Defendants. Am. Compl. (ECF No. 1-3). Prior to removal to this court, the Plaintiffs settled and/or dismissed all of the Defendants, except JCI. As part of its Answer to the Amended Complaint, JCI alleged entitlement to setoff – if it were found liable – of any sums recovered by way of settlement "with any party or nonparty to this action." Ans. to Am. Compl. 11 (ECF No. 291). Plaintiffs also allege that, based on discovery in the case, they believe JCI intends to try and show that Mullinex was exposed to products manufactured by companies other than JCI, including those never named as Defendants, those named and later nonsuited without settling, and entities currently going through bankruptcy proceedings. Plaintiffs bring this motion to preclude any allocation of fault to non-settling Defendants, and all non-parties, citing the Supreme Court's decision confirming the proportionate distribution method of setoff in comparative fault cases outlined in McDermott v. AmClyde, 511 U.S. 202 (1994).

## II.   LEGAL STANDARD IN McDERMOTT

The parties agree that JCI's contribution claims against settling parties are barred by the Supreme Court's adoption of the proportionate share model of apportioning liability to settling joint tortfeasors. McDermott, 511 U.S. at 209. They also agree that maritime law permits apportionment of fault to a plaintiff (such as Mullinex) shown by the evidence to have been comparatively negligent. United States v. Reliable Transfer, 421 U.S. 377 (1975). Comparative fault rules also permit allocation of damage, among a liable defendant and any co-defendant or third-party defendant whose negligence is found by the jury to have contributed to plaintiff's damages. Id. at 411. In this case, however, there are no co-defendants proceeding to trial. As a result, other than the issue of Mullinex's own comparative negligence the only apportionment issue

3

left to address is the issue of apportioning fault among any settling defendants alleged to be at fault as permitted by McDermott.

McDermott involved damage caused by a crane failure during the relocation of an oil and gas platform.  McDermott, 511 U.S. at 205-06.  The crane was owned by McDermott, and manufactured by AmClyde.  The accident happened when a hook and sling failed causing the crane to fall, damaging it and the platform.  According to the opinion, the failure may have been caused by McDermott's "negligent operation of the crane, by AmClyde's faulty design . . . by a defect in the hook supplied by River Don, or by one or more of three companies that supplied" the lifting slings.  Id. at 205.  McDermott brought suit against AmClyde, the hook manufacturer, River Don Castings, and the sling defendants, but settled with the sling defendants prior to trial for $1 million. At trial, the jury assessed damages of $2.1 million, and in answer to special interrogatories fixed the parties' proportionate liability at 37% to AmClyde, 38% to River Don, and 30% jointly to plaintiff McDermott and the settling sling defendants.  Id. at 206.  On appeal, the Supreme Court had to determine how to allocate credit for the $1 million settlement, which was substantially more than the proportionate share of the verdict assigned to the settling defendants at trial.

After examining three different theories of apportioning liability to settling defendants which were then recognized by the Restatement (Second) of Torts, the Court adopted the "proportionate share model."  As framed by the Restatement, this rule provides that in cases of joint liability the amount paid by the settling defendant "extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other (non-settling) tortfeasors by the amount of the equitable share of the obligations of the released tortfeasor."  Id. at 209 (quoting Restatement (Second) of Torts § 886A, pp. 343-44 (1977)).  Thus, on the facts before it, the Court held that the settling defendants' $1 million

payment extinguished all claims McDermott had against the settling sling defendants, but also diminished McDermott's recovery by the proportionate share of liability assigned to them – 30%.

In choosing among the three competing theories for allocating settlement proceeds, the Court primarily focused on three factors: (1) consistency with the proportionate fault approach to maritime liability adopted in Reliable Transfer; (2) promotion of settlement; and (3) judicial economy. 421 U.S. at 211. The Court recognized that no model was perfect because allocating credit for a settlement negotiated before liability was determined necessarily involved balancing the risk of overcompensating plaintiffs against the risk that non-settling defendants might receive a windfall if the settling defendant was ultimately responsible for a larger share of proportionate fault. The Court concluded, however, that the proportionate share approach struck the best balance because a non-settling defendant like JCI would pay no more than their fair share of the loss – the share determined by the jury based on the evidence. And if the plaintiff's recovery is diminished because he accepted too little from a settling defendant, it is a risk he voluntarily assumed.

No claims for contribution are permitted under McDermott because none are necessary. Id. at 209. Non-settling defendants are not punished for going to trial, because the jury (or judge) can still assess the proportionate fault attributable to the settling defendants. And the defendants proceeding to trial can "argue the 'empty chair' in hopes of convincing the jury that any settling party was exclusively responsible for the damage." Id. at 217. The Court recognized that this rule may result in a plaintiff being overcompensated after negotiating a favorable settlement which exceeded the value of the settling defendants' eventual share as determined at trial, but concluded that the plaintiff retaining these benefits was more equitable than the alternatives, noting that the settling plaintiff takes on the risk of his settlement by proportionately limiting his recovery against the other defendants who were not parties to the settlement. As a result, non-settling defendants

have no claim to offset settlement proceeds in excess of the settling defendants' proportionate share as found by the jury. But neither are they required to assume disproportionate liability when the plaintiff's settlement falls below the share of liability allocated to the settling tortfeasor. Id. at 221.

### III.   McDERMOTT'S APPLICATION TO THIS CASE

JCI does not dispute the reasoning underlying McDermott, which permits non-settling defendants to receive credit for the settlements proportionate to those defendants' responsibility for the harm, but argues its application here is "grossly unfair," as Mullinex alleges a single indivisible injury which may have resulted from several manufacturers of asbestos containing products. Because Plaintiff is only required to prove any Defendants' products were a "substantial contributing factor" to his illness, JCI claims it will be impossible for it to prove a case of proportionate fault against any of the settling defendants. As a result, it claims proportionate fault cannot be reasonably determined and argues McDermott should therefore permit a divided damages theory to apply. Def.s' Opp'n 13-14 (citing McDermott, 511 U.S. at 207).

These arguments fail for two reasons. First JCI has overstated the difficulty of proving a case of proportionate fault against a settling defendant. And second, even accepting JCI's argument that it would be unable to prove any other party's degree of fault, the result would not be uniform allocation of damages among entities which have never been proved liable. Rather joint and several liability would require any liable defendant to pay the entire amount of damages.

The company first complains that the proportionate fault burden of proof is too high in asbestos cases due to "the reality that Plaintiffs are in control of the development of product identification evidence," which it claims "comes solely from the recollections of Mr. Mullinex and his fact witnesses." Def.s' Opp'n at 7. But as Plaintiffs' counsel observes, there is nothing

preventing JCI, or any other Defendant, from undertaking its own investigation of potentially contributing manufacturers, or from relying on Plaintiffs' evidence of exposure to non-JCI materials manufactured by other Defendants.  Proving proportionate fault does not, as JCI argues, require evidence of any precise percentage of fault.  Instead, the company must prove only that an alleged joint tortfeasor was at fault, and that its fault was a "substantial contributing factor" to Mullinex's illness.  It would then be for the jury to assess, based on special interrogatories, the degree to which any settling defendant caused Plaintiff's illness.  And to the extent the jury assigned comparative fault to a settling defendant, <u>McDermott</u> provides clear rules for calculating contribution due JCI.

It is not surprising that witnesses Plaintiff locates and produces would support Plaintiffs' case.  And there is nothing unfair about requiring JCI to produce its own evidence on these topics. Moreover, JCI already has access to all of the discovery in this case, including any evidence tending to demonstrate that a settling defendant manufactured a product which substantially contributed to Plaintiff's illness.  Presumably, those settling defendants measured their risk of proceeding to trial based on that evidence, and the settlements paid reflect each company's assessment of risk based on that evidence.  In settling with these Defendants, Plaintiffs accepted the risk that JCI might use that evidence (and any it gathered independently) to "argue the empty chair," and persuade the jury that the settling defendant's products were more at fault than its own. But in settling, Plaintiffs did not agree to remove this burden altogether.  Any allocation of fault requires proof of fault, and the burden of marshaling that proof falls on JCI.  <u>See Bordelon v. Consol. Georex Geo. Physics</u>, 628 F. Supp. 810, 812 (W.D. La. 1986) ("It is the non-settling alleged to joint tortfeasor who must come forth and prove that the settling alleged joint tortfeasor was at fault and that this fault caused the injury sustained by the plaintiff."); Restatement (Third)

of Torts; Apportionment of Liability, Section 16, Comments C, F (1998) (noting that defendant has the burden of proving apportionment).

In fact, the "unfairness" that JCI complains of is not primarily rooted in the evidence, or the difficulty of proving fault in an asbestos case, which as shown is roughly equal for both sides. Rather, it lies in JCI's perception that joint and several liability for maritime asbestos claims is unfair generally due to the impact of intervening bankruptcies and resulting administrative settlement requirements which have rendered many formerly viable defendants no longer amenable to suit.

In a petition for certiorari to the United States Supreme Court following a verdict against it in another asbestos claim, JCI urged the Court to accept the case in part to consider a "limited joint and several liability approach, under which non-settling defendants, settling defendants, entities not named as party defendants and bankrupt defendants are placed on a jury's verdict form." Pet. for Writ of Cert., John Crane, Inc. v. Oney, 2008 WL 450093, at *i (2008). The Supreme Court declined the invitation, a decision of no precedential weight. Nevertheless, the request goes to the heart of JCI's argument here – namely that the ordinary joint and several liability rules, long a bedrock principal of maritime law, operate unfairly in the context of asbestos injuries because liable non-settling defendants may shoulder responsibility for a larger share of plaintiff's claim because certain potentially responsible defendants can no longer be sued.

But this "unfairness," if it exists, derives not from McDermott's allocation rules, but from the policy underlying joint and several liability in the first instance. It has nearly always been the case that joint and several liability vindicates the principle that the wrongdoing tortfeasor, and not the innocent plaintiff, should bear the risk of non-collection. Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1116 (5th Cir. 1995) (en banc); see also Norfolk & Western Ry. Co. v. Ayers, 538

U.S. 135, 163 (2003). Adopting JCI's "limited joint and several" model in which fault is allocated to non-parties or bankrupt defendants would completely undermine this longstanding protection for injured seamen.

And, contrary to JCI's arguments, existing Supreme Court precedent does not permit abandoning the rule due to perceived difficulties in proof. The company argues that language in Reliable Transfer stands for the proposition that an equal division of liability – or divided damages – is permitted when allocation of fault cannot be reasonably determined. 421 U.S. at 407 ("when it is impossible to allocate degrees of fault, the division of damages equally between wrongdoing parties is an equitable solution"). McDermott, 511 U.S. at 207 (noting that Reliable Transfer requires "damage be assessed on the basis of proportionate fault when such an allocation can reasonably be made"). While it is true that this language leaves open the possibility of dividing damages equally among at-fault parties – it does not permit an allocation of liability absent any proof of fault. The allocation rules addressed in both Reliable Transfer and McDermott do not affect the separate doctrine of joint and several liability in maritime negligence cases.

## IV.   RECOMMENDATION

For the foregoing reasons, this Report recommends that the district court GRANT Plaintiffs' Motion *in Limine* (ECF No. 248) and limit any allocation of fault, if necessary, to the parties and any settling defendants which the jury is able to find from the evidence have contributed to Plaintiffs' illness.

## V.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                        /s/
                                        Douglas E. Miller
                                        United States Magistrate Judge

                                        DOUGLAS E. MILLER,
                                        UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 5, 2021