**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**PATRICIA E. MULLINEX,
Individually and as Executor of the
Estate of Herbert H. Mullinex Jr.,**

      **Plaintiff,**

v.                                               **CIVIL ACTION NO.: 4:18-cv-0033**

**JOHN CRANE, INC.,** *et al.*

      **Defendants.**

### THIRD AMENDED COMPLAINT

NOW COMES PATRICIA E. MULLINEX Individually and as Executor of the Estate of HERBERT H. MULLINEX JR., a resident of the Commonwealth of Virginia, and alleges as follows:

1. As used hereafter, the term "asbestos-containing product" will be used to identify collectively: (i) raw asbestos fiber, (ii) end products directly incorporating asbestos fiber, and (iii) end products manufactured, assembled or supplied by a defendant who has specified and/or required raw asbestos and/or products incorporating asbestos manufactured or supplied by others, to be used, whether internally or externally, in conjunction with the end product for the routine maintenance, repair, and/or proper and intended use and operation of the end product.

2. As used hereafter, the term "asbestos-containing packing" shall include asbestos-containing sheet packing, gaskets, braided packing, extruded packing, and all other such products designed for use in sealing pipe flanges, valves, pumps, turbines, generators, bulkheads, and for other such applications.

3. Plaintiff's Decedent, HERBERT H. MULLINEX, JR., was born in 1947.

4. Plaintiff's Decedent, HERBERT H. MULLINEX, JR., served in the United States Navy from May 20, 1969 to February 28, 1989 as a Machinist Mate; ultimately reaching the rank of Machinist Mate Chief. HERBERT H. MULLINEX, JR., served onboard ships homeported, repaired, or overhauled at Navy Bases and shipyards in the Commonwealth of Virginia. As a result of the Naval service as set forth above, it is believed that HERBERT H. MULLINEX, JR. was exposed to asbestos dust, fibers, and particles without controls, warnings, or protection through 1978.

5. On or about August 10, 2016, HERBERT H. MULLINEX, JR. was diagnosed with malignant mesothelioma as a result of his exposure to asbestos dust, fibers and particles.

6. HERBERT H. MULLINEX, JR. departed this life as a direct and proximate consequence of his malignant mesothelioma on November 11, 2021.

7. PATRICIA E. MULLINEX was appointed Executor of the Estate of Herbert H. Mullinex, Jr. by the Circuit Court of Augusta County, Virginia on December 7, 2021.

8. On January 18, 2022, this Court granted Plaintiff's Motion to Substitute a Proper Party Pursuant to Fed. R. Civ. P. 25(a).

9. Defendants are corporations, companies or other business entities which, during all times material hereto, and for a long time prior thereto have been, or are now engaged, directly or indirectly, in the manufacturing, producing, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce, asbestos-containing products, including those uniquely and specifically designed for maritime use and marketed for installation aboard ships. This case arises under the law of Virginia and the general maritime law of the United States pursuant to the "Savings to Suitors" clause of 28 U.S.C. §1333(1) and 46 U.S.C. §30101. This Court has personal jurisdiction over all remaining Defendants.

10. At all times material hereto, Defendants acted through their agents, servants or employees who were acting within the scope of their employment on the business of the Defendants.

11. Plaintiff was exposed to asbestos-containing products that were manufactured, specified, or distributed by the Defendants. These asbestos-containing products were defective and inherently dangerous in the manner in which they were marketed for their failure to contain or include adequate warnings regarding potential asbestos health hazards associated with the use, removal or maintenance of, or the exposure to the products. The defective and inherently dangerous condition of these asbestos-containing products, coupled with the disabling and fatal diseases generated by the inhalation of asbestos dust, rendered such asbestos-containing products unreasonably and inherently dangerous and thereby abrogated any need for privity of contract between the Plaintiff and these Defendants as a prerequisite to liability.

12. As more specifically detailed below, these Defendants are only being sued for their failure to warn of the hazards of asbestos exposure, and are not being sued on any other theory, including any design defect. The Defendants' failure to warn renders them liable in negligence (as set forth in Count I), for strict liability in tort (as set forth in Count II), and for spousal pre-death loss of society and consortium (as set forth in Count III). Additionally, the Plaintiffs expressly disclaim any claim, if any, arising under the Death on the High Seas Act, 46 U.S.C. §30301 et seq.

13. At all times material hereto:

(a). Equipment Defendant, AIR & LIQUID SYSTEMS CORPORATION, a Pennsylvania corporation and Successor in Merger to BUFFALO PUMPS, INC., manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or

3

Plaintiff's employer, asbestos-containing products including, without limitation, pumps, condensate pumps, main sea water cooling pumps, low pressure brine pumps, auxiliary sea water pumps, distillate pumps, distilling plant distillate pumps, distilling plant low pressure brine pumps, distilling system high pressure brine pumps, low pressure brine and acid circulating pumps, and pump repair and/or replacement materials including, without limitation, asbestos-containing products, asbestos-containing packing materials and/or asbestos-containing gasket materials as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(b). Equipment Defendant, CRANE CO., a Delaware corporation, individually and as parent and/or successor in interest to CHAPMAN VALVE MANUFACTURING CO., manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or the Plaintiff's employer, asbestos-containing products including, without limitation, pumps, valves, insulating products, and pump and/or valve repair and/or replacement materials including, without limitation asbestos-containing packing materials and asbestos-containing gasket materials as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(c). Equipment Defendant, GARDNER DENVER, INC., a Delaware corporation, manufactured, produced, sold, distributed and/or supplied, either directly or indirectly, to the Plaintiff and/or the Plaintiff's employer, asbestos-containing products including, without limitation, pumps, compressors, blowers, condensate pumps, main sea water cooling pumps, low pressure brine pumps, auxiliary sea water pumps, distillate pumps, distilling plant distillate pumps, distilling plant low pressure brine pumps, distilling system high pressure brine

pumps, low pressure brine and acid circulating pumps, and pump repair and/or replacement material including, without limitation, asbestos-containing products, asbestos-containing packing material and/or asbestos-containing gasket material as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(d). Equipment Defendant, IMO INDUSTRIES, INC., a Delaware corporation, as successor in interest to DELAVAL PUMPS, manufactured, specified, produced, distributed and/or sold, either directly or indirectly, to the Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, which incorporated and/or specified asbestos-containing component parts for their proper functioning, as well as insulation and pump repair and/or replacement materials including, without limitation, asbestos-containing products, asbestos-containing packing materials and/or asbestos-containing gasket materials as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(e). Equipment Defendant, ITT LLC, a foreign corporation and formerly known as HAMMEL-DAHL COMPANY and formerly known as GENERAL CONTROLS CO., manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or the Plaintiff's employer, asbestos-containing products including, without limitation, valves, insulating products, and valve repair and/or replacement materials including, without limitation asbestos-containing products, asbestos-containing packing material and/or asbestos-containing gasket material as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

  (f). Defendant, JOHN CRANE, INC., a Delaware corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, asbestos-containing products including, without limitation, asbestos-containing packing materials and asbestos-containing gasket materials as defined above.

  (g). Defendant, NOLAND COMPANY, a Virginia corporation, sold, distributed and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, asbestos-containing products including, without limitation, pipecovering sections, block, cement, textiles, refractory products, gaskets, packing, valves, pumps, and/or related shipboard equipment, manufactured by different companies.

  (h). Equipment Defendant, SPIRAX SARCO, INC., a Delaware corporation, manufactured, produced, sold, distributed and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, asbestos-containing products including, without limitation, steam traps, which incorporated and/or specified asbestos-containing component parts for their proper functioning as well as insulating products and pump and valve repair and/or replacement materials including, without limitation asbestos-containing packing materials and asbestos-containing gasket materials as defined above.

  (I). Defendant, WACO, INC., a corporation incorporated under the rules of Virginia having its corporate offices at 814 Chapman Way, Newport News, Virginia, and a successor to WACO INSULATION, INC, sold, distributed and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, various asbestos-containing products including, without limitation, ship construction and/or repair products like pipecovering sections, block, cement and textiles manufactured by different companies.

  (j). Equipment Defendant, WARREN PUMPS LLC, a Massachusetts

6

corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or the Plaintiff's employer, asbestos-containing products including, without limitation, pumps, which incorporated and/or specified asbestos-containing component parts for their proper functioning, as well as pump repair and/or replacement materials including asbestos-containing products including, without limitation, asbestos-containing packing materials and/or asbestos-containing gasket materials as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(k). Equipment Defendant, WEIR VALVES & CONTROLS USA INC., d/b/a Atwood & Morrill Co Inc., a Massachusetts corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or the Plaintiff's employer, asbestos-containing products including, without limitation, valves, insulating products, and/or valve repair and/or replacement materials including, without limitation asbestos-containing packing materials and asbestos-containing gasket materials as defined above.

(m). Defendant, CLEAVER-BROOKS COMPANY INC., a corporation organized and existing under the laws of Wisconsin and a subsidiary of AQUA-CHEM, INC., a Delaware corporation, and also successor of the liabilities of DAVIS ENGINEERING INC., manufactured, produced, sold, distributed and/or supplied, either directly or indirectly, to the Plaintiff, to the Plaintiff's employer, and/or to others for use on the jobsite where Plaintiff performed his job duties, asbestos-containing products including, without limitation, burners, evaporators, water heaters and/or desalination equipment which contained asbestos and/or incorporated asbestos-containing component parts therein as well as repair and/or replacement material including asbestos-containing products including, without limitation, asbestos-containing

7

packing material and asbestos-containing gasket material as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

14. Throughout HERBERT H. MULLINEX, JR.'s service in the United States Navy, he worked aboard vessels, both in dry dock and on the navigable waters of the United States, including without limitation the territorial waters of the Commonwealth of Virginia, performing the traditional maritime activities from 1969 through 1978 of shipbuilding or ship repair. Plaintiffs are unaware of any actionable exposure on the high seas. During the performance of traditional maritime activities while serving in the United States Navy, HERBERT H. MULLINEX, JR. was continuously and daily required to install, remove, repair, alter, fabricate, work with, use, handle or otherwise come into contact with or to be exposed to asbestos-containing products that were manufactured, sold, supplied, distributed or otherwise placed in the stream of commerce by the Defendants, resulting in inhalation of asbestos dust, fibers and particles generated from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products. Plaintiff's clothes, his person, and his belongings were covered with and contaminated with asbestos dust, fibers and particles generated from the intended, ordinary and foreseeable use of the Defendants' asbestos-containing products. Plaintiff's aforesaid exposure to and inhalation of asbestos dust, fibers and particles proximately resulted in the Plaintiff's contracting malignant mesothelioma, which is permanent and fatal.

## COUNT I - NEGLIGENCE

15. Plaintiff hereby incorporates by reference Paragraphs ONE (1) through FOURTEEN (14), inclusive, as if the same were hereto set forth at length.

16. At all times material hereto from 1969 through 1978, the Plaintiff HERBERT H.

MULLINEX, JR. was not aware of the nature and extent of the danger to his respiratory system, heart, other bodily parts, and general health that would result from his contact with, exposure to and inhalation of the asbestos dust, fibers, and particles resulting from the intended, ordinary and foreseeable use of the Defendants' asbestos-containing products; whereas, each of the Defendants was negligent in the following respects:

 (a). Defendants knew, had reason to know, should have known or could have reasonably determined that the normal, foreseeable use of their asbestos-containing products posed an unreasonable danger without a warning for one or more of the following reasons:

  (1). Defendants knew, had reason to know, or should have known of historic state of the art literature and other information placing them on notice of the hazards of asbestos and products containing asbestos;

  (2). Defendants designed and intended their end products to incorporate asbestos or asbestos-containing component parts, including, without limitation, asbestos-containing gaskets and packing;

  (3). Defendants knew, had reason to know, or should have known, that their end products required asbestos or asbestos component parts to function properly and as designed for their normal, foreseeable uses during the relevant time period;

  (4). Equipment Defendants knew, expected, and intended that asbestos-containing components and substantially identical replacement asbestos-containing components would be used throughout the useful life of their end products;

  (5). Equipment Defendants knew, had reason to know or should have known that these asbestos-containing component parts were wear items that would have to be replaced many times during the useful life of their end products;

9

(6). Equipment Defendants affirmatively specified that asbestos components and replacement parts be used with their end products;

(7). Equipment Defendants knew, had reason to know or should have known that their customers would use asbestos-containing replacement parts with Equipment Defendants' end products;

(8). Equipment Defendants knew, had reason to know, or should have known, that the replacement asbestos-containing component parts would be substantially identical to the original asbestos-containing component parts supplied with their end products;

(9). Equipment Defendants knew, had reason to know, or should have known that replacement asbestos-containing component parts would give rise to hazards identical to those posed by the original asbestos-containing component parts during the normal, foreseeable use of Equipment Defendants' end products;

(10). Equipment Defendants profited from selling their asbestos-containing end products in that, by designing and manufacturing a durable end product that was able to operate for many years or decades because of the ability to routinely replace internal wear items such as asbestos-containing gaskets and packing, Equipment Defendants were able to charge more money and receive a greater profit than if the end product lasted only until the original asbestos-containing component parts wore out;

(11). Defendants were able to, and did, obtain liability insurance against the foreseeable asbestos health hazards inherent in the normal foreseeable use of their products.

(b). Because of this knowledge, Defendants knew, had reason to know, or should have known that the Plaintiff would inhale asbestos dust, fibers and particles during or as a consequence of the intended, ordinary and foreseeable use of their asbestos-containing products. Despite this

10

knowledge, Defendants, individually, jointly, and severally were negligent pursuant to maritime negligence law in one or more of the following respects:

(1). Defendants mined, manufactured, sold, distributed, or otherwise placed in the stream of commerce asbestos-containing products, which Defendants knew or in the exercise of ordinary care should have known, or had reason to know, were imminently and inherently dangerous, defective, and otherwise highly harmful to the Plaintiff and others exposed to asbestos dust, fibers and particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(2). Defendants failed to take reasonable precautions or to exercise reasonable care to adequately or sufficiently warn the Plaintiff, of the dangers and harm to which he was exposed as a consequence of the inhalation of asbestos dust, fibers and particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(3). Defendants failed and omitted to provide the Plaintiff with the knowledge of reasonably safe and sufficient safeguards, wearing apparel, proper safety equipment and appliances needed to protect him from being injured, disabled, killed, or otherwise harmed by working with, using, handling, coming into contact with, and inhaling the asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(4). Defendants failed to place any warnings or adequate and sufficient warnings on the face of their asbestos-containing products or on or inside the containers of their asbestos-containing products and to suitably apprise the Plaintiff of the risks and dangers inherent to the intended, ordinary and foreseeable use of their asbestos-containing products and the precautions necessary to make their asbestos-containing products safe for their intended, ordinary

11

and foreseeable uses;

(5). Defendants failed to place any warnings or adequate and sufficient warnings on the face of their asbestos-containing products or on or inside the packaging of their asbestos-containing products, or otherwise, to inform the Plaintiff or any foreseeable user, of the dangers inherent in the repair and replacement of such asbestos-containing products, which repair and replacement foreseeably required the removal of friable and inherently dangerous asbestos-containing packing or insulation materials.

(6). Defendants failed to place warnings, or adequate and sufficient warnings on the face of their asbestos-containing products or on or inside the containers of their asbestos-containing products, or in technical manuals, drawings or specifications supplied with their asbestos-containing products to inform the Plaintiff of the enhanced risk and dangers inherent in the intended, ordinary and foreseeable use of their asbestos-containing products in the environment of military shipbuilding or ship repair where the Defendants knew, should have known or had reason to know that many other asbestos-containing products were also being dangerously and simultaneously used without controls of safety procedures;

(7). Defendants failed to adequately test their asbestos-containing products to determine the nature and extent of the risk from the foreseeable use, maintenance, repair or removal of their products and the need for warnings and recommended safety instructions to eliminate or reduce that risk;

(8). Defendants failed to advise the Plaintiff, whom the Defendants knew, should have known, or had reason to know, was exposed to asbestos dust, fibers and particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products, to cease all future exposure to asbestos dust, fibers and particles, to be examined by a

lung specialist to determine the nature and extent of any and all asbestos diseases caused by such exposure, and to receive treatment for such diseases.

17. Such negligent and deliberate acts of the Defendants proximately resulted in the Plaintiff's long-term inhalation of asbestos dust, fibers and particles from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, including the routine, recommended and expected maintenance of the Defendants' asbestos-containing products, and this exposure directly and proximately caused the Plaintiff HERBERT H. MULLINEX, JR. to contract malignant mesothelioma, which is permanent and fatal.

18. The Defendants' foregoing acts, failures or omissions were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of the Plaintiff.

## **COUNT II – STRICT LIABILTY**

19. Plaintiff hereby incorporates by reference Paragraphs ONE (1) through EIGHTEEN (18), inclusive, as if the same were hereto set forth at length.

20. At all times from 1969 through 1978, Defendants knew, had reason to know or in the exercise of reasonable care should have known, that their asbestos-containing products would be sold to the public including Plaintiff or Plaintiff's employer as aforesaid and would be used by or around the Plaintiff HERBERT H. MULLINEX, JR. and other persons similarly employed, and would be relied on by such persons to be fit for the use and to accomplish the purpose for which they were mined, manufactured, produced, processed, sold, supplied, distributed, or otherwise placed in the stream of commerce. The Defendants, because of their positions as miners, manufacturers, producers, processors, sellers, suppliers, or distributors, are strictly liable to the

Plaintiff for the following reasons:

 (a). That Defendants, as manufacturers-sellers, are engaged in the business, inter alia, of selling asbestos-containing products;

 (b). That, at the time of the manufacture and sale of their asbestos-containing products by the Defendants to the Plaintiff or Plaintiff's employer, Defendant knew, had reason to know, or should have known, that their asbestos-containing products would be used by or around the Decedent HERBERT H. MULLINEX, JR. and other persons similarly employed, as the ultimate user or consumer or otherwise affected person;

 (c). That the Defendants' asbestos-containing products were sold in a defective condition, unreasonably dangerous to the Decedent HERBERT H. MULLINEX, JR. and other similarly employed, as users or consumers, and that, all throughout many years of the Plaintiff's exposure to and use of the Defendants' asbestos-containing products, the asbestos-containing products were expected to and did reach the user or consumer without substantial change in the condition in which they were sold;

 (d). That the Defendants' asbestos-containing products were defective in that they were incapable of being made safe for their intended, ordinary and foreseeable use, and the Defendants failed to give adequate or sufficient warnings or instructions about the risks and dangers inherent in the products; and

 (e). That the intended, ordinary and foreseeable use of the Defendants' asbestos-containing products is an intrinsically dangerous or ultrahazardous activity.

21. The Defendants' breaches of duty under traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, as described herein proximately caused or contributed to cause the Decedent HERBERT H.

MULLINEX, JR. to contract malignant mesothelioma, which is permanent and fatal.

22. The Defendants' breaches of duty under traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, as described herein were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of the Plaintiff.

## COUNT III: SPOUSAL PRE-DEATH LOSS OF SOCIETY AND CONSORTIUM

23. Plaintiff hereby incorporates by reference Paragraphs ONE (1) through TWENTY-TWO (22), inclusive, as if the same were hereto set forth at length.

24. The Decedent HERBERT H. MULLINEX, JR. and the Plaintiff PATRICIA E. MULLINEX were married on January 27, 1981 and have lived together as a married couple for more than 35 years. Throughout that time, HERBERT H. MULLINEX, JR. was available to comfort, protect, care for, aid, attend to, and support PATRICIA E. MULLINEX physically, mentally, and emotionally.

25. As set forth above, Decedent HERBERT H. MULLINEX, JR. suffered from malignant mesothelioma, a debilitating and terminal condition with an average life expectancy of six to eighteen months. Decedent's disease and its impact upon his bodily systems, along with the necessary and proper treatments for that disease have caused him extreme fatigue, pain, constipation, loss of appetite, repeated hospital treatments and surgery. As his disease progressed, he was largely confined to his home, with the exception of medical treatments, and he has been unable to participate in any of the normal recreational, social, or marital activities of life which are normal to a good marriage and to which HERBERT H. MULLINEX, JR. and PATRICIA E. MULLINEX have been accustomed.

26. As a proximate result of the Defendant's failure to warn, which was a substantial contributing factor in the development of Decedent HERBERT H. MULLINEX, JR.'s disease and condition as set forth above, Decedent's spouse PATRICIA E. MULLINEX has been deprived of the physical, mental, and emotional services, comfort, society, attentions, pleasure, solace, fellowship, marital life, companionship, and consortium of her husband.

## COUNT IV - CONCLUSION

27. The Plaintiffs hereby incorporate by reference Paragraphs ONE (1) through TWENTY-SIX (26) inclusive, as if the same were hereto set forth at length.

28. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, willful or wanton misconduct, strict liability, and willful omissions of the Defendants, Decedent HERBERT H. MULLINEX, JR. was caused to contract diseases and injuries to his body systems, lungs and heart, including malignant mesothelioma, which caused HERBERT H. MULLINEX, JR. pain, suffering, mental anguish and ultimately caused his death. In addition, HERBERT H. MULLINEX, JR.:

    (a). was obliged to spend various sums of money to treat his disease and injuries;

    (b). sustained a loss of earnings and earning capacity;

    (c). had his enjoyment of life impaired;

    (d). had his life expectancy shortened; and

    (e). was caused to suffer great physical pain and suffering and psychological and mental trauma.

29 Plaintiff's Decedent's pre-death pain and suffering and other losses as described in Paragraph 28, above, survived his death and constitute a separate and distinct survival claim pursuant to admiralty and general maritime law as set forth in *Wahlstrom v. Kawasaki Heavy*

*Indus., Ltd.,* 4 F.3d 1084 (2nd Cir. 1993), *John Crane, Inc. v. Hardick,* 284 Va. 329, 732 S.E.2d 1 (2012) *cert. denied*, 133 S. Ct. 1236 (2013), or in accordance with the Jones Act.

30. As a direct and proximate result of the injury and death of HERBERT H. MULLINEX, JR. as a result of the negligence, carelessness, gross negligence, willful misconduct, strict liability, and willful omissions of Defendants, his survivors were caused to suffer substantial mental anguish, sorrow and loss of solace, including loss of society, companionship, love and affection, comfort, guidance, kindly offices, and advice of Plaintiff's Decedent HERBERT H. MULLINEX, JR. before and after his death. His survivors were also caused to suffer substantial loss of the support, services, including loss of the benefit of the earnings HERBERT H. MULLINEX, JR. would have earned, loss of inheritable estate, loss of protection, and loss of the care and assistance Plaintiff's Decedent would have provided but for his untimely death. Moreover, Plaintiff's Decedent's survivors were caused to incur expenses for Plaintiff's Decedent's care, treatment, and hospitalization incident to the illness resulting in his death, and reasonable funeral expenses. All of the foregoing expenses, suffering and losses are compensable under maritime law pursuant to the Jones Act, *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199 (1996), or *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573 (1974).

31. Any delay in filing Plaintiff's causes of action is a direct and proximate result of the Defendants' failure to warn and the fraudulent concealment. For a long time Defendants have known of the hazards of asbestos inhalation and ingestion and had the duty to warn foreseeable users like HERBERT H. MULLINEX, JR., of the hazards of their asbestos-containing products. However, Defendants intentionally and fraudulently concealed said knowledge from Plaintiff and her decedent, resulting in the failure of Plaintiff and her decedent to discover the facts which are the basis of the causes of action despite the exercise of due diligence on behalf of Plaintiff.

Accordingly, any attempt on the part of any Defendant to complain about the timeliness of the commencement of Plaintiff's cause of action should be estopped.

50. By reason of the aforesaid injuries and death of her husband, HERBERT H. MULLINEX, JR., PATRICIA E. MULLINEX has suffered mental anguish by being forced to witness the suffering endured by HERBERT H. MULLINEX, JR., whereby PATRICIA E. MULLINEX's own nerves and health have been seriously and permanently shocked, weakened and impaired; and by reason of the physical and mental condition of HERBERT H. MULLINEX, JR., PATRICIA E. MULLINEX continues to suffer in mind and body, and has been denied the support, care, protection, consideration, companionship, services, income, aid, pleasure, assistance, and society of HERBERT H. MULLINEX, JR.

WHEREFORE, Plaintiff prays for judgment against Defendants, individually and jointly and severally, for compensatory damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00) and punitive damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00) together with interest from the date of diagnosis of asbestos-induced disease plus costs of this suit and such other and further relief as is just and proper.

PLAINTIFF DEMANDS A JURY WITH RESPECT TO ALL ISSUES
TO WHICH THEY ARE ENTITLED BY LAW TO A JURY.

          Respectfully submitted,

          PATTEN, WORNOM, HATTEN
          & DIAMONSTEIN, L.C.

          By: /s/ Hugh B. McCormick, III
          Of Counsel

Robert R. Hatten, Esquire (VSB No. 12854)
Hugh B. McCormick, III, Esquire (VSB No. 37513)
William W. C. Harty, Esquire (VSB No. 45447)
Erin E. Jewell, Esquire (VSB No. 71082)
Daniel R. O. Long, Esq. (VSB # 95873)
PATTEN, WORNOM, HATTEN
& DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone (757) 223-4500
Facsimile (757) 249-3242
pleadings@pwhd.com
hughmccormick@pwhd.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 24th day of March 2022, I electronically filed *Plaintiff's Third Amended Complaint*, with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Eric G. Reeves, Esq.
Laura May Hooe, Esq.
Mary Louise Roberts
Lisa Moran McMurdo
**MORAN, REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, VA 23219
Counsel for John Crane, Inc.

Brian James Schneider, Esq.
**SPOTTS FAIN, PC**
411 E. Franklin St., Suite 600
Richmond, VA 23219
Counsel for John Crane, Inc.

Christopher O. Massenburg, Esq. (admitted *pro hac vice*)
MANNING GROSS & MASSENBURG, LLP
365 Canal Street, Suite 3000
New Orleans, LA 70130
Counsel for John Crane, Inc.

By: /s/ Hugh B. McCormick, III
     Of Counsel