FILED
MAY 23 2022
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

PATRICIA E. MULLINEX,
Individually and as Executor of the
Estate of Herbert H. Mullinex, Jr.,

        Plaintiff,

v.                                          Case No. 4:18-cv-00033-RAJ-DEM

JOHN CRANE INC.,

        Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Patricia E. Mullinex's ("Plaintiff") motion/objection to United States Magistrate Judge Douglas E. Miller's order at ECF No. 389 ("Objection"). Pl.'s Mot./Obj. Order 389, ECF No. 419. For the reasons below, Plaintiff's Objection is **SUSTAINED IN PART**, and Judge Miller's order at ECF No. 389 is **VACATED IN PART**.

FACTUAL AND PROCEDURAL HISTORY

In an omnibus order, issued on October 25, 2021, Judge Miller held the following:

> "Plaintiffs' Motion to Exclude Irrelevant Evidence and Testimony Regarding the Alleged Knowledge or Negligence of the Navy, (ECF No. 207), is GRANTED IN PART and DENIED IN PART. JCI cannot offer evidence of Navy negligence, as negligence is not relevant to any claim or defense. However, the government contractor defense requires JCI to demonstrate the Navy's knowledge of "asbestos-related hazards." Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 256 (4th Cir. 2017); see also Order (ECF No. 45, at 42) (defining the issue as whether "the Navy had at least as much knowledge of the dangers of asbestos as did JCI" (emphasis added)). Thus evidence of the Navy's awareness of asbestos hazards is relevant to that factor, and JCI may offer such evidence through appropriate fact and expert witnesses. Because the law does not limit this to knowledge of any specific product, but defines the hazard as asbestos, the court does not cabin JCI's evidence of Navy knowledge only to the hazards presented by

asbestos gaskets and packing material."

Oct. 25, 2021 Omnibus Order, ECF No. 389 at 2–4. On November 8, 2021, Plaintiff filed an objection to Judge Miller's ruling, arguing that by allowing Defendant, John Crane Inc. ("JCI"), to present evidence of the Navy's knowledge about the hazards of asbestos generally instead of the Navy's knowledge about the asbestos hazards presented by JCI's products, Judge Miller "essentially rewrote the third element" of the government contractor defense "to permit a much broader array of evidence than is relevant to proof of this defense." Pl.'s Mot./Obj. Order 389 at 2. JCI responded to Plaintiff's objection on November 8, 2021, contending that Judge Miller correctly "rejected such a narrow reading" of the third prong of the government contractor defense. Def's Resp. Opp., ECF No. 438 at 2. Plaintiff replied on November 29, 2021. Pl.'s Reply, ECF No. 445.

## STANDARD OF REVIEW

Upon a party's objection within 14 days of a magistrate judge's order, a judge must reconsider any non-dispositive pretrial matter where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The Court finds that Plaintiff's motion is timely.

## DISCUSSION

The Court affirms Judge Miller's ruling that JCI is barred from introducing evidence of Navy negligence. The Court finds, however, that Judge Miller's ruling and related interpretation of the third element of the government contractor defense established in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) and *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) is contrary to law. Accordingly, this Memorandum Opinion and Order discusses the Court's interpretation of the third prong of the government contractor defense only.

In *Boyle*, the Supreme Court first recognized the government contractor defense in product liability cases. The Court established the following standard for evaluating the defense:

> "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers *in the use of the equipment* that were known to the supplier but not to the United States . . . . The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability. We adopt this provision lest our effort to protect discretionary functions perversely impede them by cutting off information highly relevant to the discretionary decision."

*Boyle*, 487 U.S. at 512–13 (emphasis added). In 2017, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held that the defense was applicable to failure to warn claims and adopted the same standard for evaluating the defense in the failure to warn context:

> "The courts applying *Boyle* to failure-to-warn cases have articulated three criteria necessary to establish the immunity defense, holding that it is established when '(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers *in the equipment's use* that were known to the contractor but not to the government.' Under this formulation, which we also now adopt, the government need not prohibit the contractor from providing additional warnings . . . ."

*Sawyer*, 860 F.3d at 256 (internal citations omitted) (emphasis added).

In *Boyle*, the plaintiff was a Marine helicopter pilot who drowned when his helicopter crashed off the Virginia coast. 487 U.S. at 502. The personal representative of the plaintiff's heirs and estate sued defendant, alleging that defendant defectively designed the helicopter's copilot emergency escape-hatch system. *Id.* On remand, the Fourth Circuit held that the defendant satisfied the government contractor defense, stating the following:

3

> "Sikorsky and the Navy worked together to prepare detailed specifications for the CH-53 helicopter. One of Sikorsky's program engineering managers for the CH-53 described in some detail the back-and-forth discussions between Sikorsky and the Navy.
>
> Sikorsky then built the helicopter, and in 1970 the Navy accepted it as fully complying with specifications. The Navy thus had thirteen years of experience *with this particular helicopter* at the time of Boyle's crash. Plaintiffs point to nothing in the record that indicates there were any hazards of which Sikorsky was aware and the Navy was not. Sikorsky's duty to warn the Navy of any hazards known to it but not to the Navy was thus not brought into question."

*Boyle v. United Techs. Corp.*, No. 85-2264, 1988 U.S. App. LEXIS 20266, at *3 (4th Cir. Aug. 3, 1988) (citing *Boyle v. United Techs. Corp.*, 792 F.2d 413, 415 (4th Cir. 1986)) (emphasis added).

In *Sawyer*, the plaintiff was a shipbuilder who died of mesothelioma. *Sawyer*, 860 F.3d at 252. The plaintiff's family and the personal representative of his estate sued defendants, alleging that the plaintiff's death was caused by exposure to asbestos while assembling boilers and that defendants failed to warn him of the dangers of asbestos, which was a component of the boilers. *Id.* In holding that defendants satisfied the third element of the government contractor defense, the Fourth Circuit relied on the affidavit of a retired Navy captain and medical consultant that stated that, "'There was no information concerning any asbestos-containing hazard or danger posed by any asbestos-containing product applied to any marine boiler on a United States Navy ship known to a boiler manufacturer . . . that was not known to the United States and the United States Navy.'" *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010); *id.* at 253 (citing *Hagen*, 739 F. Supp. 2d at 784, which used the same affidavit in conjunction with other evidence to reach an analogous conclusion).

Suggesting that JCI could satisfy the third prong of the government contractor defense by only presenting evidence of the Navy's general knowledge about the hazards of asbestos without connecting that knowledge to the JCI products at issue is contrary to the plain text and application of the test in *Boyle* and *Sawyer*. In *Boyle*, the Fourth Circuit relied on the Navy's "thirteen years of experience *with [the] particular helicopter*" at issue in holding that the defendant more than satisfied the third element of the defense. *Boyle*, 1988 U.S. App. LEXIS 20266, at *3 (citing *Boyle*, 792 F.2d at 415) (emphasis added). Similarly, a reading of *Sawyer* indicates that the affidavit the Fourth Circuit relied on addressed the Navy's knowledge about asbestos *relative to boilers*, which was the product at issue in that case. *Id.* at 253 (citing *Hagen*, 739 F. Supp. 2d at 784). Thus, the defendant in *Sawyer* did not merely demonstrate that the Navy knew about the hazards of asbestos generally, it demonstrated that the Navy knew about the asbestos hazard presented by *the product at issue*. Absent evidence that the affidavit the *Sawyer* court relied on denoted the Navy's knowledge about the asbestos risks presented by gaskets and packaging, the *Sawyer* court's holdings based on that affidavit and similar testimony cannot be applied to the products in this case. For example, if JCI manufactured asbestos-containing ballpoint pens instead of asbestos-containing gaskets and packaging, the Navy would not be served at all by its knowledge about the health risks of asbestos without the Navy also being privy to the asbestos risk presented by JCI's ballpoint pens or ballpoint pens generally.

Therefore, it is JCI's burden to prove under the third prong of the defense that the Navy knew that JCI's gaskets and packaging presented an asbestos risk and the Navy proceeded to use the products without warning labels anyway. JCI could potentially meet this burden by demonstrating that the Navy was aware of the asbestos risk presented by gaskets and packaging generally, as the defendants did in *Sawyer* with respect to boilers. The inquiry, however, is still

5

tailored to the government's knowledge about how specific products or "equipment" relate to a particular hazard. Nothing in *Sawyer* supports broadening that standard beyond its plain text to include the government's knowledge about a hazard generally, unrelated to the product at issue.

## CONCLUSION

For these reasons, Plaintiff's Objection is **SUSTAINED IN PART**, and Judge Miller's order at ECF No. 389 is **VACATED IN PART**, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the parties and all counsel of record.

**IT IS SO ORDERED.**

Newport News, Virginia
May 23, 2022

Raymond A. Jackson
United States District Judge