**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| **PATRICIA E. MULLINEX,** | ) | |
| **INDIVIDUALLY AND AS THE** | ) | |
| **EXECUTOR OF THE ESTATE OF** | ) | |
| **HERBERT H. MULLINEX, JR.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 4:18-cv-00033-RAJ-DEM** |
| | ) | |
| **JOHN CRANE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT JOHN CRANE INC.'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD............................................................................................... 4

ARGUMENT ............................................................................................................ 4

   I.   PLAINTIFFS' ATTEMPT TO RESUSCITATE FORFEITED REMEDIES ON THE DAY OF TRIAL IS IN BAD FAITH. ......................................................... 4

      A.  Plaintiffs abandoned Virginia remedies in favor of maritime damages. ..................... 5

      B.  Plaintiffs' late-breaking reversal on strategically abandoned Virginia law amounts to bad faith.................................................................................................. 8

   II.  THE PROPOSED AMENDMENT TO SWITCH TO VIRGINIA REMEDIES IS FUTILE............................................................................................................... 10

      A.  The Court has already excluded the remedies Plaintiffs now seek under Virginia law. ............................................................................................................ 11

      B.  Reconsideration of the Court's earlier rulings is not warranted based on sandbagged arguments. .......................................................................................... 12

      C.  Virginia's wrongful death statute cannot circumvent remedial limits on Plaintiffs' maritime claims..................................................................................... 13

         1.  Maritime remedies control here over conflicting Virginia remedies................... 14

         2.  *Calhoun* does not support the application of conflicting Virginia remedies in this seaman's case. ........................................................................................ 17

   III. THE PROPOSED AMENDMENT WOULD PREJUDICE JCI................................... 19

CONCLUSION........................................................................................................ 21

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adbul-Mumit v. Alexandria Hyundai, LLC*,
    896 F.3d 278 (4th Cir. 2018) ........................................................................................19, 20

*In re Bertucci Contracting Co., LLC*,
    712 F.3d 245 (5th Cir. 2013) ................................................................................................16

*Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*,
    No. 1:18-cv-03133-SAG, 2021 WL 242494 (D. Md. Jan. 25, 2021) ...............................2, 8, 9

*Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Servs., Inc.*,
    974 F. Supp. 2d 64 (D.P.R. 2013) .........................................................................................14

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
    476 U.S. 858 (1986) ..............................................................................................................14

*Equal Rts. Ctr. v. Niles Bolton Assocs.*,
    602 F.3d 597 (4th Cir. 2010) ................................................................................................20

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008) ................................................................................................................6

*Fellores v. Winter*,
    No. 2:06-cv-551, 2007 WL 473727 (E.D. Va. Feb. 8, 2007) ...............................................10

*Fletcher v. Tidewater Builders Ass'n, Inc.*,
    216 F.R.D. 584 (E.D. Va. 2003) .............................................................................................4

*Foothill Cap. Corp. v. E. Coast Bldg. Supply Corp.*,
    259 B.R. 840 (E.D. Va. 2001)..................................................................................................8

*Ford Motor Co. v. Boomer*,
    285 Va. 141 (2013) ...............................................................................................................17

*Ghotra by Ghotra v. Bandila Shipping, Inc.*,
    113 F.3d 1050 (9th Cir. 1998) ..............................................................................................17

*In re Goose Creek Trawlers, Inc.*,
    972 F. Supp. 946 (E.D.N.C. 1997).........................................................................................17

*Harrison v. Watts*,
    609 F. Supp. 2d 561 (E.D. Va. 2009), *aff'd*, 350 F. App'x 835 (4th Cir. 2009)........................9

*Hays v. John Crane, Inc.*,
  No. 9:09-cv-81881, 2014 WL 10658453 (S.D. Fla. Oct. 10, 2014) ...................................16, 18

*Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*,
  No. 3:05-cv-355, 2006 WL 5908727 (E.D. Va. Feb. 10, 2006) .............................................13

*Kahumoku v. Titan Mar., LLC*,
  486 F. Supp. 2d 1144 (D. Haw. 2007) ......................................................................................14

*Kenny v. Bank of Am., N.A.*,
  No. 4:11-cv-120, 2011 WL 13234444 (E.D. Va. Dec. 22, 2011) ..............................................9

*Lindstrom v. A-C Prod. Liab. Tr.*
  424 F.3d 488 (6th Cir. 2005) ....................................................................................................17

*The Lottawanna*,
  88 U.S. 558 (1875) ...............................................................................................................13, 14

*Midgett, Tr. of Hardcastle Charitable Remained Annuity Tr.*
  *U/A Aug. 6, 2007 v. Hardcastle*,
  No. 2:17-cv-663, 2018 WL 4781178 (E.D. Va. Oct. 3, 2018) ............................................9, 10

*Miles v. Apex Marine Corp.*,
  498 U.S. 19 (1990) ...............................................................................................................15, 17

*Moore v. Equitrans, L.P.*,
  27 F.4th 211 (4th Cir. 2022) .................................................................................................2, 4

*Moragne v. States Marine Lines, Inc.*,
  398 U.S. 375 (1970) ..............................................................................................................14, 16

*Owens-Corning Fiberglas Corp. v. Watson*,
  243 Va. 128 (1992) ....................................................................................................................17

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
  148 F.3d 396 (4th Cir. 1998) ....................................................................................................12

*Peters v. Bank of Am., N.A.*,
  No. 3:14-cv-513, 2015 WL 269424 (E.D. Va. Jan. 21, 2015) .............................................8, 19

*Red Bird Egg Farms, Inc. v. Pa. Mfrs. Indem. Co.*,
  15 F. App'x 149 (4th Cir. 2001) ............................................................................................3, 20

*Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc.*,
  853 F.2d 1139 (4th Cir. 1988) ....................................................................................................9

*Savoie v. Chevron Texaco*,
  No. 2:04-cv-1302, 2005 WL 2036740 (E.D. La. July 22, 2005) ...............................................17

*Sebright v. General Electric Co.*,
   525 F. Supp. 3d 217 (D. Mass. 2021) ...............................................................15, 18

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*,
   236 Va. 419 (1988) ...........................................................................................16

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*,
   899 F.3d 236 (4th Cir. 2018) ...........................................................................12

*United States v. Boakye*,
   No. 1:11-cr-455, 2013 WL 695590 (E.D. Va. Feb. 25, 2013) ................................13

*Wells v. Liddy*,
   186 F.3d 505 (4th Cir. 1999) ............................................................................15

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996) .............................................................................14, 17, 18

**Statutes**

Va. Code Ann. § 8.01-38.1 ...................................................................................1, 6

Va. Code Ann. § 8.01-50 ........................................................................................6

Va. Code Ann. § 8.01-52 ......................................................................................13

**Other Authorities**

Fed. R. Civ. P. 1 ....................................................................................................2

Fed. R. Civ. P. 15(a)(2).........................................................................................4

## <u>INTRODUCTION</u>

Until the morning of trial, Plaintiffs pursued remedies under maritime law—not Virginia law—in what Plaintiffs call this "quintessential maritime product liability action."  Pls.' Opp. to MTD Maritime Claims 29, ECF 130 (Feb. 6, 2020).  Plaintiffs' counsel was candid about that strategy: "pain and suffering is not a recoverable item under Virginia's wrongful death statute," so "[h]istorically, we had preferred . . . to ask for the pain and suffering in the maritime law [rather] than the Virginia damages."  5/24 Tr. 4:20–21, 4:25–5:3, ECF 546-3.  (Virginia's statutory cap on punitive damages surely informed that strategic decision too.  *See* Va. Code Ann. § 8.01-38.1.)  But that strategy backfired when this Court dismissed the survival claim for pain and suffering and medical expenses, after it had excluded evidence of loss of consortium and punitive damages.  Since Plaintiffs developed no evidence of any other alleged wrongful death damages, Plaintiffs admitted that "all of the damages that we sought under maritime law have now been stricken."  5/24 Tr. 7:16-17.

When trial was scheduled to begin, however, "Plaintiff changed gears" by seeking to file a Fourth Amended Complaint to pivot to those previously spurned Virginia remedies.  Pls.' Memo. in Support of Motion for Leave to File a Fourth Amended Complaint ("Motion for Leave") 12, ECF 546 (June 14, 2022).  In Plaintiffs' telling, the operative Third Amended Complaint "already specifically alleged" a Virginia wrongful death claim, *id.* at 7, so the Fourth Amended Complaint is merely meant "to further clarify the wrongful death cause of action that she already alleged," *id.* at 8.  In particular, Plaintiffs are "simply seeking leave to amend [the] complaint and specifically cite to Virginia's wrongful death statute."  *Id.* at 13.

But adding a citation to the Virginia Code does not change the fact that Plaintiffs had already abandoned any claim for Virginia remedies.  In fact, the Motion for Leave makes that

abandonment clear: Plaintiffs' assertion that a Virginia wrongful death claim has long been in the operative complaint would only confirm that their failure to argue for Virginia damages before was a matter of strategic avoidance, not excusable neglect.  The imperative not to reward such gamesmanship is one of at least three reasons to deny the Motion for Leave.  In fact, each of the three well-established grounds for denying leave to amend—the movant's bad faith, the amendment's futility, and prejudice to the non-movant—sinks Plaintiffs' request here.  *Moore v. Equitrans, L.P.*, 27 F.4th 211, 218 (4th Cir. 2022).

*First*, Plaintiffs' bid to resuscitate those Virginia remedies at the eleventh hour is in bad faith.  As the Court noted, Plaintiffs "were not approaching this case from the standpoint of it being a wrongful death action under Virginia law," but instead "were approaching this case in terms of it being a case under maritime law."  5/24 Tr. 5:24–6:2.  Thus, in opposing JCI's motion on loss of consortium and punitive damages, Plaintiffs invoked only the maritime remedies they preferred, staying silent all the while on a backup plan to seek those same remedies under Virginia law.  And Plaintiffs' jury instructions likewise rested on maritime law's remedial scheme while keeping mum on Virginia remedies.

But "a plaintiff who treats his complaint like the game of Battleship, moving the target across the board every time it suffers a fatal blow, acts in bad faith, and should not be entitled to leave to amend."  *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, No. 1:18-cv-03133-SAG, 2021 WL 242494, at *2 (D. Md. Jan. 25, 2021).  Plaintiffs' insistence that Virginia remedies were lying in wait this whole time—awaiting a fatal blow to the maritime remedies—makes this a classic instance of bad faith.  Plaintiffs' "any port in a storm" approach to litigation will upend the "just, speedy, and inexpensive determination of every action" that federal practice should secure. Fed. R. Civ. P. 1.

*Second*, the proposed amendment is futile.  By dismissing the survival claim and granting JCI's motion *in limine* on consortium and punitive damages, the Court has already excluded the very remedies Plaintiffs now seek.  Adding a citation to Virginia's wrongful death statute will not undo those orders.  Nor is reconsideration of those orders warranted to consider Virginia-based arguments—for the same remedies—that Plaintiffs have strategically abandoned.  In any event, those Virginia remedies do not apply to this "quintessential maritime product liability action," Pls.' Opp. to MTD Maritime Claims 29, nor do Plaintiffs cite a single case applying state remedies to a case like this one.  That lack of support for extending state wrongful death remedies here is no surprise; maritime jurisdiction generally entails the application of general maritime law, and interposing state remedies would destroy the uniformity that the Supreme Court has made the polestar of maritime jurisprudence.

*Third*, the proposed eleventh-hour amendment is prejudicial to JCI.  JCI was prepared to proceed to trial—having completed discovery, brought and opposed many motions *in limine*, and invested substantial resources in trial preparation and attendance—before Plaintiffs decided to switch horses the morning of trial.  *See Red Bird Egg Farms, Inc. v. Pa. Mfrs. Indem. Co.*, 15 F. App'x 149, 154 (4th Cir. 2001) (affirming denial of leave to amend that came three days before trial on grounds of undue prejudice to defendant).  Plaintiffs' plan would require JCI to duplicate much of those expenses.  Worse still, even if Plaintiffs prevail in that trial, they will inevitably argue in a post-trial appeal that yet *another* trial is needed for survival damages under maritime law.  The better course is to deny the Motion for Leave and enter judgment now, so that an appeal can resolve all properly preserved issues without imposing piecemeal trials on the parties, the jurors, and the Court.

**LEGAL STANDARD**

After the right to amend has expired, a "party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  While leave to amend a complaint "shall be freely give[n] … when justice so requires," *id.*, a district court may deny leave to amend when (1) "there has been bad faith on the part of the moving party"; (2) "the amendment would be futile"; or (3) "when the amendment would be prejudicial to the opposing party."  *Moore*, 27 F.4th at 218; *see also Fletcher v. Tidewater Builders Ass'n, Inc.*, 216 F.R.D. 584, 587 (E.D. Va. 2003) (Jackson, J.) ("Leave to amend may be denied for undue delay, dilatory motive on the part of the moving party, futility of amendment, and undue prejudice to the nonmoving party.").

Whether to allow amendment is "committed to the sound discretion of the Court." *Fletcher*, 216 F.R.D. at 587.  That "discretion of the district court to deny leave to amend increases at later stages of litigation" because "the further a case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Moore*, 27 F.4th at 218.

**ARGUMENT**

**I.     PLAINTIFFS' ATTEMPT TO RESUSCITATE FORFEITED REMEDIES ON THE DAY OF TRIAL IS IN BAD FAITH.**

The first reason for denying the Motion for Leave is its bad faith.  Plaintiffs insist that they pled Virginia remedies, yet they abandoned state law to achieve what they thought would be more favorable damages under maritime law.  Only after the maritime strategy failed—on the morning of trial—did Plaintiffs invoke Virginia law for a second bite at the apple on damages.  Such gamesmanship is quintessential bad faith.

4

A.      **Plaintiffs abandoned Virginia remedies in favor of maritime damages.**

Even though Plaintiffs repeatedly insist that they already pleaded Virginia remedies, they dodged those remedies while litigating the maritime remedies they preferred for strategic reasons. Plaintiffs' refrain is that Virginia wrongful death remedies have been in the Third Amended Complaint all along.  *See, e.g.*, Motion for Leave 13 ("Plaintiff has already specifically alleged a right to recover the damages under Virginia's wrongful death statute."); *see also id.* at 3–5, 7–8, 12; 5/24 Tr. 5:13–14 (Plaintiffs' counsel admitted on the record that Plaintiffs had already "asked in a complaint for those damages").  So the putative point of the Motion for Leave is simply "to amend her complaint and specifically cite to Virginia's wrongful death statute."  Motion for Leave 13.

Before the morning of trial, however, Plaintiffs had abandoned Virginia's damages law and pressed only for remedies under maritime law.[1]  As the Court aptly observed, Plaintiffs did not "approach[] this case from the standpoint of it being a wrongful death action under Virginia law," and therefore the Court (and JCI) had "approach[ed] this case in terms of it being a case under maritime law."  5/24 Tr. 5:24–6:2.  Even in the last few months before trial, Plaintiffs avowed that "[t]his is a general maritime case" and reasserted that they pursued damages under maritime law without making any request for those damages under Virginia law.  Pls.' Memo. in Support of Motion to Substitute ¶¶ 1, 5–6, ECF 452 (Jan. 13, 2022).

As Plaintiffs' counsel explained on the record, there have been good reasons for that

---

[1] Although Plaintiffs abandoned Virginia remedies regardless of whether the Third Amended Complaint pleaded them, the Third Amended Complaint did not invoke Virginia remedies in any meaningful way.  The phrase "Virginia law" gets a passing reference in paragraph 9 but appears nowhere else; Plaintiffs instead relied on references to maritime liability and remedial schemes throughout.  Third Amended Complaint ¶¶ 9, 14, 16(b), 21–22, 29–30, ECF 478 (March 24, 2022). In fact, the motion for leave to file it reiterated that Plaintiffs sought damages only "under Maritime Law."  Pls.' Memo. in Support for Motion for Leave to File Third Amended Complaint 2, ECF 476 (Mar. 22, 2022).

strategy of seeking damages under maritime rather than Virginia law. In particular, "[h]istorically, in Virginia's wrongful death statute, pain and suffering is not a recoverable item."  5/24 Tr. 4:19–20 (citing Va. Code § 8.01-50).  As a result, Plaintiffs' counsel strategically "preferred to ask for the pain and suffering in the maritime law [rather] than the Virginia damages" and "planned [their] case around that issue."  *Id.* at 4:18; 5:1–2.  Moreover, Virginia law caps punitive damages at $350,000, *see* Va. Code § 8.01-38.1, while maritime law does not impose a cap on punitives.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 495–96, 501–02 (2008) (observing that some states, including Virginia, have imposed caps on punitive damages but that no statutory cap applies to punitives under maritime law).

Plaintiffs strategically avoided Virginia remedies in particular in opposing JCI's motions on punitives and loss of consortium, and on survival damages.  First, JCI sought to exclude evidence related to Plaintiffs' claims for loss of consortium and punitive damages.  *See* JCI's Motion *in Limine* to Exclude Evidence Relating to Plaintiffs' Claim for Loss of Society and Punitive Damages ("Motion to Exclude"), ECF 214 (Aug. 19, 2021).  After Plaintiffs filed the Third Amended Complaint, JCI moved to dismiss the new survival claim, including the request for pain and suffering damages and medical expenses.  *See* JCI's MTD Survival Claim, ECF 481 (Apr. 6, 2022).  Both motions explained—based on the maritime law that Plaintiffs had invoked to that point—why Plaintiffs were not entitled to those categories of damages.  *See* JCI's Memo. in Support of Motion to Exclude 1, ECF 215 (Aug. 19, 2021); JCI's Memo. in Support of MTD Survival Claim 1, ECF 482 (Apr. 6, 2022).

If Plaintiffs wanted to litigate the availability of those damages under Virginia law in good faith, the time to do it was in opposition to JCI's motions on those damages.  Plaintiffs had the perfect opportunity in observing that courts may "supplement" maritime law with "non-conflicting

state legal principles and remedies."  Pls.' Opp. to Motion to Exclude 3–4.  Yet they did not

because—as Plaintiffs have offered elsewhere—such gap filling is only possible "when confronted

with a question as to which maritime law is silent."  Pls.' Opp. to MTD Maritime Claims 13–14

n.6.  But Plaintiffs have consistently maintained that maritime law speaks directly to maritime

remedies by arguing that

- "*maritime courts* [] traditionally recognized and upheld the recovery of loss of society," *id.* at 18 (emphasis added);

- "punitive damages were available in *general maritime law*" *id.* at 20 (emphasis added);

- "all seaman's estates are permitted *under Federal Maritime law* to recover damages for pre-death pain and suffering."  Pls.' Opp. to JCI's MTD Survival Claim 4, ECF 494 (Apr. 20, 2022) (emphasis added); and

- "[e]very Federal Circuit Court that has considered the issue has recognized survival of pre-death pain and suffering in *general maritime (i.e., maritime common law) cases*." *Id.* at 10 (emphasis added).

Although Plaintiffs were wrong about how maritime law answers those remedial questions, they

were right that maritime law already provides an answer.

Even one week before trial, Plaintiffs submitted proposed jury instructions based solely on

damages under (and cases applying) maritime law.  Notably absent is any reference to Virginia

law as a source of those remedies.  Pls.' Proposed Jury Instructions 37, ECF 517 (May 17, 2022).

It was only *after* the Court conclusively rejected Plaintiffs' arguments under maritime law

that Plaintiffs pivoted to Virginia law.  First, the magistrate judge recommended excluding

Plaintiffs' claims for loss of consortium and punitive damages, and the Court adopted that

recommendation.  ECF 533 (May 20, 2022).  Then, on May 23, the Court dismissed Plaintiffs'

claim for survival damages.  Order Granting JCI's MTD Survival Claim, ECF 538 (May 23, 2022); Opinion Granting JCI's MTD Survival Claim, ECF 544 (June 10, 2022).  On May 24, immediately following these rulings and on the day trial was set to begin, Plaintiffs' counsel admitted on the record that their case "no longer has any damages that [they] can pursue."  5/24 Tr. 5:8–10.  Plaintiffs conceded that "all of the damages that [they] sought under maritime law have now been stricken."  *Id.* 7:16–17.  Only at that point—when the exclusive strategic focus on maritime remedies backfired—did Plaintiffs ask the Court for leave to amend the complaint to recite Virginia remedies.  *Id.* 5:10–18.

**B.      Plaintiffs' late-breaking reversal on strategically abandoned Virginia law amounts to bad faith.**

Plaintiffs' strategy of abandoning Virginia remedies until the exclusive focus on maritime damages had failed amounts to bad faith.  "Bad faith generally involves changing legal theories . . . or using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, and to present theories seriatim in an effort to avoid dismissal."  *Bioiberica Nebraska*, 2021 WL 242494, at *2 (alterations and quotations omitted). "[T]he further a case has progressed, the more likely it is that a court will find bad faith on the plaintiff's part."  *Peters v. Bank of Am., N.A.*, No. 3:14-cv-513, 2015 WL 269424, at *3 (E.D. Va. Jan. 21, 2015).  "[L]ate in the game pleading amendments . . . reflect a poor sportsmanship contrary to the spirit of the Rules, which is to facilitate a proper decision on the merits" so as "to secure the just, speedy, and inexpensive determination of every action."  *Id.* (quotations omitted).

Here, both the timing and the nature of the proposed amendment show Plaintiffs are trying to "blow[] hot and cold as the occasion demands."  *Foothill Cap. Corp. v. E. Coast Bldg. Supply Corp.*, 259 B.R. 840, 845 (E.D. Va. 2001) (Jackson, J.) (quotations omitted).  It was not until the morning of the jury trial that Plaintiffs asked for another opportunity to amend the complaint.  *See*

8

*generally* 5/24 Tr.; *see also Harrison v. Watts*, 609 F. Supp. 2d 561, 571 (E.D. Va. 2009), *aff'd*, 350 F. App'x 835 (4th Cir. 2009) (denying amendment where plaintiff "attempt[ed] to introduce a new theory at this [late] stage of the case"). Not only does that request come "late in the game," but it follows on the heels of rulings on JCI's Motion to Exclude and Motion to Dismiss that barred Plaintiffs from receiving the only categories of damages sought here. *See Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1149 (4th Cir. 1988) (affirming denial of leave to amend where motion "followed on the heels of appellees' well-supported joint motion for summary judgment" and thus was "possibly prompted only by the concern that [appellant] would lose on the summary judgment motion").

The proposed amendment represents an inconsistent position that Plaintiffs advance to "salvage a lost case" on the heels of the Court's unfavorable rulings. *Bioiberica Nebraska*, 2021 WL 242494, at *2. Now that maritime law no longer serves their purpose, Plaintiffs cannot seek damages under a legal framework that they purportedly pled and then chose not to pursue. *See id.* (denying leave to amend because plaintiff "simply cannot be permitted to change its legal theories in perpetuity"); *Kenny v. Bank of Am., N.A.*, No. 4:11-cv-120, 2011 WL 13234444, at *2 (E.D. Va. Dec. 22, 2011) (finding bad faith in part because plaintiff "made no effort to amend . . . until now, when he faces the potential dismissal of his action").

That gamesmanship is even worse than in another case in which this Court found bad faith. In *Midgett*, the defendant sought to amend her answer to add compulsory counterclaims during discovery, "just weeks before trial." *Midgett, Tr. of Hardcastle Charitable Remained Annuity Tr. U/A Aug. 6, 2007 v. Hardcastle*, No. 2:17-cv-663, 2018 WL 4781178, at *5 (E.D. Va. Oct. 3, 2018) (Jackson, J.). There, the defendant had "made a strategic decision" to file those claims in state court, "believing it was the more 'appropriate' forum." *Id.* The defendant later sought to add her

9

counterclaims to the federal action only because the state court proceedings had stalled, and she admitted this was the reason for her amendment.  *Id.* ("In light of this difficulty in obtaining a swift ruling in Virginia Beach, [Defendant] is willing to have her claims raised in state court heard in this action.").  She thus acted in bad faith because her motion to amend was "based on [her] own tactical choices" and made only "after it became clear she would not receive relief in a timely manner" in state court.  *Id.*

Plaintiffs' request to amend came not weeks before trial, but on the morning the trial was set to begin.  As in *Midgett*, Plaintiffs' counsel acknowledged the reason for trying to amend now: "all of the damages that [they] sought under maritime law have now been stricken."  5/24 Tr. 7:16–17.  Plaintiffs should not be permitted to "play[] fast and loose with the court[]" by changing their position to save their doomed damages claims.  *Fellores v. Winter*, No. 2:06-cv-551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007) (Jackson, J.).  By trying to do so at the eleventh hour, Plaintiffs fall squarely within the first of the three independent grounds upon which this Court can deny the amendment: a bad faith attempt to reverse legal strategy at the last minute after the initial strategy backfired.

## II.   THE PROPOSED AMENDMENT TO SWITCH TO VIRGINIA REMEDIES IS FUTILE.

For three reasons, the Motion for Leave also should be denied as futile.  First, the Court has already excluded Plaintiffs' survival, loss of consortium, and punitive damages claims, and a fourth amended complaint will not change those rulings.  Second, Plaintiffs cannot meet the high burden for reconsidering those rulings based on their own strategic decision not to make Virginia-based damages arguments when they could have.  Third, Plaintiffs' new legal theory is meritless; Virginia's damages law does not apply to Plaintiffs' maritime claims.

### A.    The Court has already excluded the remedies Plaintiffs now seek under Virginia law.

Plaintiffs' proposed amendment is futile because the Court has already issued rulings excluding the damages sought in the proposed Fourth Amended Complaint.  JCI moved to exclude Plaintiffs' survival, loss of consortium, and punitive damages claims, and the Court granted those motions.  Adding a citation to the Virginia Code in a new complaint does not change those rulings.

First, JCI's motion to dismiss sought an order "striking Plaintiff's survival claim, including her request for survival damages."  JCI's Memo. in Support of MTD Survival Claim 13, ECF 482 (Apr. 20, 2022); *see also id.* ("Plaintiff's survival claim for Mr. Mullinex's pain and suffering and medical bills must be dismissed.").  The Court granted that motion and dismissed Plaintiffs' request for survival damages, finding that Plaintiffs "failed to state a viable survival claim for Mr. Mullinex's pain and suffering and medical expenses."  Opinion Granting JCI's MTD Survival Claim 10, ECF 544 (June 10, 2022); *see also id.* at 1 ("The court FINDS that Plaintiff is not entitled to recover Mr. Mullinex's pre-death pain and suffering or medical expenses.").  Thus, at most Plaintiffs would be "entitled to the pecuniary damages resulting from Mr. Mullinex's death."  *Id.* at 10.

Second, JCI's Motion to Exclude requested an order "excluding evidence relating to [Plaintiffs'] claims for loss of society and punitive damages."  ECF 215 at 15; *see also id.* at 11 ("JCI is [] entitled to an Order excluding Plaintiffs' evidence relating to loss of society and punitive damages.").  The magistrate judge observed that JCI "moved to exclude Plaintiffs Herbert H. Mullinex, Jr., and Patricia E. Mullinex's evidence relating to their claims for loss of society and punitive damages," and recommended granting in full JCI's Motion to Exclude those two categories of damages.  Report and Recommendation on JCI's Motion to Exclude 1, 7, ECF 351

11

(Oct. 5, 2021).  Over Plaintiffs' objection, the Court adopted and affirmed that recommendation. ECF 533.

With these two rulings, the Court categorically excluded Plaintiffs' survival, loss of consortium, and punitive damages claims.  The Court did not limit that exclusion to "maritime" remedies.  Instead, by their terms, the Court's rulings apply to the remedies Plaintiffs now seek under Virginia law.  Those decisions remain the law of this case.

### B. Reconsideration of the Court's earlier rulings is not warranted based on sandbagged arguments.

Nor does the proposed Fourth Amended Complaint merit reconsidering those damages orders.  Reconsideration of such interlocutory orders is "an extraordinary remedy which should be used sparingly."  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  That sort of reconsideration is generally "cabined" to revising orders in the event of "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice."  *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256–57 (4th Cir. 2018).

Plaintiffs cannot meet that standard for the extraordinary remedy of reconsideration.  There has been no new evidence, change in applicable law, or clear error.  The only development is the failure of Plaintiffs' primary strategy of pursuing damages under maritime law.  *See* 5/24 Tr. 3:14–16 ("The Court made a ruling contrary to what you wanted, and you've indicated that it has a certain impact on your case[.]").  As a result, Plaintiffs' counsel acknowledged they have no remaining damages.  *See id.* at 7:16–17 (counsel conceding that "all of the damages that we sought under maritime law have now been stricken").

The Motion for Leave amounts to a request for reconsideration of the damages orders based on Plaintiffs' eleventh-hour theory: Virginia-based arguments (that they strategically chose not to

12

make) for the same remedies the Court has already excluded.  But even if Plaintiffs' argument for Virginia remedies had any merit (*but see* Part II.C *infra*), reconsideration is inappropriate just for a party "to present a better and more compelling argument that the party could have presented in the original briefs." *Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, No. 3:05-cv-355, 2006 WL 5908727, at *8 (E.D. Va. Feb. 10, 2006) ("a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider").  Despite claiming that they already pleaded Virginia remedies in the Third Amended Complaint, Plaintiffs made no argument for those remedies, electing instead to "proffer[ them] for the first time" in the Motion for Leave.  *United States v. Boakye*, No. 1:11-cr-455, 2013 WL 695590, at *2 (E.D. Va. Feb. 25, 2013) (refusing reconsideration based on such arguments).  The Court acknowledged that Plaintiffs' new theory invoking Virginia law was "something the Court hadn't heard before."  5/24 Tr. 6:4–5.  Thus, reconsideration is not warranted for Virginia-based arguments that could have been pursued the first time around.

## C.   Virginia's wrongful death statute cannot circumvent remedial limits on Plaintiffs' maritime claims.

In any event, the proposed Fourth Amended Complaint is futile because Virginia remedies are unavailable to evade this Court's rulings on maritime damages.  *Contra* Motion for Leave 3–6.[2]  That is because the U.S. Constitution makes maritime law a uniquely federal matter: "a system of law coextensive with, and operating uniformly in, the whole country." *The Lottawanna*, 88 U.S. 558, 575 (1875).  Maritime law thus enforces maritime remedial limits against any conflicting state-created remedies.  Yet Plaintiffs seek to pivot to Virginia remedies here *precisely because*

---

[2] Plaintiffs apparently now seek damages for loss of consortium and medical expenses, Va. Code Ann. § 8.01-52(1), (3), along with (capped) punitive damages, *id.* § 8.01-52(5).  Damages for loss of support or funeral expenses, Va. Code Ann. § 8.01-52(2), (4), are unavailable because Plaintiffs did not seek those damages even under the maritime theory, instead conceding that claim "no longer has any damages that we can pursue," 5/24 Tr. 5:9–10.

they conflict with those maritime limits.  Other courts respect the constitutional structure by rejecting the interjection of state remedies in cases exactly like this one.  But Plaintiffs offer *not one case* stitching state-law remedies to the maritime claims brought here.  And the case on which Plaintiffs rely, *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), does not apply here by its own terms.

       **1.**       **Maritime remedies control here over conflicting Virginia remedies.**

"With admiralty jurisdiction comes the application of substantive admiralty law." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).  That principle follows from our constitutional structure:  "It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States." *Lottawanna*, 88 U.S. at 575.  Such state regulation "would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." *Id.*  So "[f]ederal law, rather than state, is the more appropriate source of a remedy for violation of the federally imposed duties of maritime law." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 401 n.15 (1970); *accord Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Servs., Inc.*, 974 F. Supp. 2d 64, 86 (D.P.R. 2013) ("When causes of actions arise under admiralty law, federal law—rather than state law—controls the damages issue."); *Kahumoku v. Titan Mar., LLC*, 486 F. Supp. 2d 1144, 1150 (D. Haw. 2007) (same).

That consistent federal remedial scheme protects the uniformity implied by the constitutional structure of maritime law.  Uniform federal remedies "assure uniform vindication of federal policies, removing the tensions and discrepancies" that result when maritime courts try "to accommodate state remedial statutes" in federal maritime suits. *Moragne*, 398 U.S. at 401.

Maritime cases thus employ "uniform rule[s] applicable to *all* actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990) (emphasis added).  The Fourth Circuit accordingly holds that "state law may not . . . conflict with federal maritime law, as it would be redefining the requirements or limits of a remedy available at admiralty." *Wells v. Liddy*, 186 F.3d 505, 524–25 (4th Cir. 1999). Plaintiffs put it well: "While a court considering a case sounding in admiralty jurisdiction may turn to state law for direction when confronted with a question *as to which maritime law is silent*, state law cannot be applied in any way that conflicts with established maritime law principles."  Pls.' Opp. to MTD Maritime Claims 13–14 n.6 (emphasis added).  This Court has already recognized how those established maritime law principles apply to the damages sought here: punitive damages, survival damages, and recovery for loss of consortium are unavailable under general maritime law.  *See, e.g.*, Report and Recommendation on JCI's Motion to Exclude 3 ("[T]hese damages were not traditionally available in maritime negligence cases arising from an injury to seamen.").

Other courts have properly forbidden Plaintiffs' Frankenstein approach of grafting state-law remedies onto federal maritime claims.  For example, another former Navy machinist suing third-party manufacturers for maritime negligence because of asbestos exposure unsuccessfully invoked state remedies in *Sebright v. General Electric Co.*, 525 F. Supp. 3d 217, 223 (D. Mass. 2021).  That court held (as here) that damages for loss of consortium were unavailable under maritime law.  *Id.* at 250–51.  And the court rejected a state-law backdoor for those same damages because "if a corresponding remedy is available under state law, *it must not be applied to contradict maritime law principles*."  *Id.* at 250.  So "state law remedies are unavailable to spouses

15

and dependents of injured seamen under Massachusetts state law, *since the general maritime law does not permit them*." *Id.*

Plaintiffs' Motion for Leave tellingly cites *not one case* permitting remedies under state law for a maritime claim when those same remedies were unavailable under maritime law.  In fact, a case cited by Plaintiffs reached the same conclusion as *Sebright.  See Hays v. John Crane, Inc.*, No. 9:09-cv-81881, 2014 WL 10658453, at *3 (S.D. Fla. Oct. 10, 2014) ("[W]hen the decedent is a seaman or person engaged in the maritime trade, as [plaintiff] was in this case, federal maritime law and the remedies available under that law control."); *see also In re Bertucci Contracting Co., LLC*, 712 F.3d 245, 247 (5th Cir. 2013) ("We have clearly held that state law does not supply an alternative remedy to a claimant when its claim was already denied in its proper maritime jurisdiction. . . .  To allow state law to supply a remedy when one is denied in admiralty would serve only to circumvent the maritime law's jurisdiction.").

Plaintiffs' approach is particularly incongruous here because of the substantive differences between claims under federal maritime law and Virginia law, which confirm how ill-suited Virginia remedies are to Plaintiffs' maritime claims.  As the Supreme Court explained in *Moragne*, maritime law's remedial scheme provides the rule of decision to avoid "[t]he incongruity of forcing the States to provide the sole remedy to effectuate duties that have no basis in state policy." *Moragne*, 398 U.S. at 401 n.15.  That incongruity would be present in spades here because:

- Maritime law recognizes strict liability, but Virginia does not.  *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 424 n.4 (1988);

- Plaintiffs advance a maritime negligence claim based on a "should have known" standard of care, *see, e.g.*, Pls.' Proposed Jury Instructions 11–12, but Virginia

16

rejects that standard in favor of the "knew or had reason to know" standard. *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 136 (1992) (discussing the significant difference between those standards); and

- Maritime law follows the "substantial contributing factor" standard for causation, *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 493 (6th Cir. 2005), which has been expressly rejected in Virginia in favor of the "sufficient to have caused" standard. *Ford Motor Co. v. Boomer*, 285 Va. 141, 153–55, 158 (2013).

So the requested application of Virginia remedies not only would destroy maritime uniformity, *contra Miles*, 498 U.S. at 27, but would create a neither-fish-nor-fowl patchwork claim.

### 2.     *Calhoun* does not support the application of conflicting Virginia remedies in this seaman's case.

Plaintiffs wrongly rely on *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), for the attempted state-law backdoor. That case is inapplicable here *by its own terms* because, as Plaintiffs concede, Mr. Mullinex was a "Navy seaman" whose "work, from start to finish, was performed on ships on navigable waters." Pls.' Opp. to MTD Maritime Claims 3. *Calhoun*, however, limited its holding to "maritime wrongful-death cases in which no federal statute specifies the appropriate relief *and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade*." 516 U.S. at 202 (emphasis added). Thus, as decisions in *Calhoun's* wake make clear, only a very "narrow" class of cases escapes the constitutional mandate of uniformity in maritime remedies. *Savoie v. Chevron Texaco*, No. 2:04-cv-1302, 2005 WL 2036740, at *3–4 (E.D. La. July 22, 2005); *In re Goose Creek Trawlers, Inc.*, 972 F. Supp. 946, 950 (E.D.N.C. 1997); *accord Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1058 (9th Cir. 1998) (holding marine surveyor on vessel engaged in a maritime trade).

Courts—including those on whose decisions Plaintiffs rely—hold that the narrow band of cases covered by *Calhoun* does not include a maritime claim (like this one) arising from work by a seaman aboard Navy vessels.  In *Hays*, for example, the plaintiff sought damages from JCI under Florida law despite asserting a maritime negligence theory based on asbestos exposure aboard Navy vessels.  The court explained that "the *Yamaha* decision only concerns the remedies available under a state's wrongful death statute, and not the shape of the wrongful death action under federal general maritime law …  Since it has been determined that federal maritime law, and not state law, applies in this case, the holding of *Yamaha* is not applicable here."  *Hays*, 2014 WL 10658453, at *4; *see also Sebright*, 525 F. Supp. 3d at 251 ("[Plaintiff] cannot … be considered a 'nonseafarer,' and *Calhoun* is distinguishable from the present case on this basis.").  Even Plaintiffs distinguished *Calhoun*'s holding precisely "because none of the plaintiffs in th[at] case[] were seaman."  Pls.' Opp. to MTD Survival Claim 18.

In any event, *Calhoun* did not address a conflict between maritime law and state law.  To the contrary, the Court assumed federal maritime law provided the same remedies as state law.  *Calhoun*, 516 U.S. at 210 n.7 (assuming *Moragne* provides a wrongful-death and survival action consistent with state law).  And the Court twice reaffirmed that state law cannot contradict federal maritime law.  *Id*. at 207 (explaining that the Court has "generally refused to give effect to state laws regarded as inconsonant with the substance of federal maritime law"); *id*. at 215 n.13 ("Permissible state regulation, we have recognized, must be consistent with federal maritime principles.").  *Calhoun*—inapplicable in the first instance to a seaman's claim—does not speak to the distinct issue of what happens when state law *conflicts* with federal maritime law.

Against this backdrop, Plaintiffs overread this Court's remark about *Calhoun*, misconstruing the statement as a definitive holding on the merits "that Plaintiff may recover

damages under Virginia's wrongful death statute" in conjunction with claims under general maritime law.  Motion for Leave 13.  But the parties had not briefed that issue because, until the morning of trial, Plaintiffs had gone to great pains to avoid the application of state law.  And as detailed above, *Calhoun* expressly limits its holding to the non-seaman context in which it arose while insisting that any state remedies be consistent with federal maritime remedies.  Thus, the better reading of the Court's opinion is not a substantive resolution of an unbriefed issue, but a procedural observation: "Plaintiff *could have* pursued a wrongful death claim against Defendant under Virginia law"—but chose not to in favor of requesting that the Court apply general maritime law (and the remedies that Plaintiffs believed were available under maritime law).  Opinion Granting JCI's MTD Survival Claim 9–10 (emphasis added).  For all these reasons, Virginia wrongful death remedies are unavailable here anyway, so the proposed Fourth Amended Complaint is futile.

## III.   THE PROPOSED AMENDMENT WOULD PREJUDICE JCI.

Last, the Motion for Leave should be denied because allowing this late amendment would prejudice JCI.  JCI was prepared to begin trial on May 24, and the amendment would require JCI to duplicate the burdens of trial preparation based on a damages theory that Plaintiffs could have presented long ago—and *should have* presented, if the theory had any merit.  Compounding this prejudice, Plaintiffs will certainly argue in a post-trial appeal for reversal of the order excluding maritime pain and suffering damages, and thus that *another* trial is needed.  Rather than Plaintiffs' piecemeal approach, the Motion for Leave should be denied, and judgment should be entered for JCI.  Plaintiffs may then appeal the judgment to resolve all outstanding issues at once.

For Rule 15, prejudice means "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party."  *Peters*, 2015 WL 269424, at *3.  The further the case has progressed, the more likely an amendment will prejudice the defendant.  *Adbul-*

*Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018); *see also Red Bird Egg Farms, Inc.*, 15 F. App'x at 154 (affirming denial of leave to amend that came three days before trial).

As the Court put it, Plaintiffs' proposed amendment "throws a curve ball into a whole lot of the litigation" at this late stage.  5/24 Tr. 6:8–9; *see also Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603–04 (4th Cir. 2010) (amendment that came "belatedly" at the close of a three-year discovery process and on the eve of dispositive motions would be "unduly prejudicial").  In particular, the amendment would prejudice JCI because JCI would need to re-prepare for trial after already investing the time and resources to do so.  And worse still, the amendment would likely cause JCI to face *multiple* trials—as well as appeals.

Plaintiffs' request to amend the Third Amended Complaint came on the morning the jury trial was set to begin.  Contrary to their assertion that JCI would not be prejudiced because "a new trial date has not yet been reset," Motion for Leave 8, JCI has already devoted significant resources to preparing for a trial that was postponed at the last minute because of Plaintiffs' strategic shift.  JCI readied fact witnesses, experts, and exhibits for a three-week jury trial, which was no small undertaking.  Allowing Plaintiffs' belated change of tactics would saddle JCI with the substantial burdens of re-preparing for a trial put on hold by Plaintiffs' attempted mulligan.

Beyond the prejudice of preparing for trial again, JCI will be prejudiced because Plaintiffs will inevitably argue in any post-trial appeal that another trial is needed for pain and suffering under maritime law.  *See* 5/24 Tr. 4:25–5:3 ("Historically, we had preferred, because mesothelioma is such a horrific disease, we had preferred to ask for the pain and suffering in the maritime law than the Virginia damages.").  Indeed, Plaintiffs continue to relitigate the dismissed survival claim in the Motion for Leave (at 10–12 & n.3), even though that is not an available remedy under the

Virginia law now pursued, *see* 5/24 Tr. at 4:19–21.  That Plaintiffs continue to be "surprised by this Court's ruling" applying *Batterton*, Motion for Leave 11, confirms that the better course is to enter judgment now so that an appeal can resolve all these damages issues at once.  *See generally* JCI's Memo. in Support of Suppl. MSJ, ECF 548 (June 14, 2022).  That will avoid the need to occupy yet more of this Court's docket and the jurors' time.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Leave to File a Fourth Amended Complaint.  And for the reasons already addressed by JCI, the Court should then enter summary judgment for JCI.

Dated: July 1, 2022.

**Respectfully submitted,**
**JOHN CRANE INC.**
**Defendant**

By:    <u>/s/ Eric G. Reeves</u>
                     Counsel

Eric G. Reeves (VSB # 38149)           Brian J. Schneider (VSB #45841)
Laura May Hooe (VSB # 84170)        SPOTTS FAIN PC
Mary Louise Roberts (VSB # 34305)   411 E. Franklin Street
Lisa Moran McMurdo (VSB # 44371)  Suite 600
MORAN REEVES & CONN PC       Richmond, Virginia 23219
1211 E. Cary Street                   Telephone: (804) 921-1306
Richmond, Virginia 23219         bschneider@spottsfain.com
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
ereeves@moranreevesconn.com
lmayhooe@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com

Christopher O. Massenburg, Esq (admitted *pro hac vice*)
MANNING GROSS & MASSENBURG, LLP
14 Wall Street, 28th Floor
New York, New York 10005
Telephone: (504) 799-0504
Facsimile: (504) 535-2886
cmassenburg@mgmlaw.com

***Counsel for John Crane Inc.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 1st day of July, 2022, a true and accurate copy of the foregoing was filed electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

<u>/s/ Eric G. Reeves</u>
Eric G. Reeves (VSB # 38149)
Laura May Hooe (VSB # 84170)
Mary Louise Roberts (VSB # 34305)
Lisa Moran McMurdo (VSB # 44371)
MORAN REEVES & CONN PC
1211 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
ereeves@moranreevesconn.com
lmayhooe@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com