**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**PATRICIA E. MULLINEX,**
**Individually and as Executor of the**
**Estate of Herbert H. Mullinex, Jr.**

        **Plaintiff,**

**v.**                          **Case No. 4:18-cv-00033-RAJ-DEM**

 **JOHN CRANE, INC.,**

        **Defendant.**

**PLAINTIFF'S REPLY TO JOHN CRANE, INC.'S**
**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**FOURTH AMENDED COMPLAINT**

NOW COMES Plaintiff, by counsel, and replies to *John Crane, Inc.'s Opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint* (ECF 549). For the reasons discussed below, this Court should grant *Plaintiff's Motion for Leave to File A Fourth Amended Complaint to Conform to the Procedural Posture of this Case* (ECF 545).

## SUMMARY OF THE ARGUMENT

This Court should grant Plaintiff's motion because Plaintiff has not acted in bad faith, Plaintiff's amendment is not futile, and John Crane, Inc. ("JCI") is not prejudiced. First, Plaintiff has not acted in bad faith. Plaintiff's third amended complaint came in the wake of her decedent, Mr. Mullinex's, death, and it specifically alleged both a survival cause of action and a wrongful death cause of action. (*See* ECF 478 at ¶ 29-30). JCI never moved to dismiss Plaintiff's wrongful death cause of action. (*See* ECF 482 at 13 (moving "this Court for an Order striking Plaintiff's survival claim, including her request for survival damages")). Further, Plaintiff never abandoned her wrongful death cause of action. Instead, Plaintiff relied in good faith on the Virginia Supreme Court's decision in *John Crane, Inc. v. Hardick*, 732 S.E.2d 1, 4 (Va. 2012) ("*Hardick*

*II*") and the several state and federal court opinions that followed *Hardick II*'s reasoning, to pursue a survival cause of action under maritime law. *See, e.g.*, *Hays v. John Crane, Inc.*, Case No. 09-81881-CIV-KAM, 2014 WL 10658453, at *4-*5 (S.D. Fl. Oct. 10, 2014) (agreeing with *Hardick II* that because Plaintiff was a "seaman" Plaintiff's remedies were governed by the Jones Act, even though Plaintiff was not suing her decedent's employer, the United States Navy)).

However, following this Court's Order dismissing Plaintiff's survival cause of action, Plaintiff immediately stated at the May 24, 2022, hearing that, in light of this Court's ruling, Plaintiff could still recover damages under her wrongful death cause of action. (ECF 546-3 at 4-5). To this end, in its June 10, 2022, Memorandum Opinion, this Court explicitly held that Plaintiff may recover damages under Virginia's wrongful death statute, in accordance with the Supreme Court's decision in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), which Plaintiff specifically cited to in her third amended complaint. (*See* ECF 544 at 9 (holding that "Plaintiff could have pursued a wrongful death claim against Defendant under Virginia law") (citing *Calhoun*, 516 U.S. at 201 (holding that state remedies have not been displaced by the recognized federal maritime wrongful-death action)); *see also* ECF 478 at ¶30 (alleging a wrongful death cause of action and citing directly to *Calhoun*)). In sum, Plaintiff has not acted in bad faith here, she is simply seeking leave to amend her complaint to further clarify the wrongful death cause of action she already alleged. Indeed, even if this Court were to deny Plaintiff's motion, her wrongful death cause of action would remain viable in her third amended complaint. *See Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017) (holding that the plaintiffs did not act in bad faith where they merely sought leave to amend their complaint "in order to add additional facts supporting <u>the same basic legal argument in their existing complaint</u>") (emphasis added).

Second, this Court should grant Plaintiff's motion because Plaintiff's amendment is not futile. Plaintiff's third amended complaint came in the wake of Mr. Mullinex's death and it alleged two different causes of action – a survival cause of action, which this Court has dismissed, and a wrongful death cause of action, which this Court has not dismissed. (*See* ECF 478 at ¶¶29-30). Plaintiff's wrongful death cause of action is a completely separate and distinct cause of action from Plaintiff's survival cause of action and the personal injury action Plaintiff brought while Mr. Mullinex was alive. Accordingly, none of this Court's prior orders regarding the damages that Plaintiff could have recovered in Mr. Mullinex's prior personal injury cause of action, or in Plaintiff's survival cause of action, apply to Plaintiff's wrongful death cause of action.

For example, this Court has held that Plaintiff cannot recover damages in a survival cause of action, because maritime law only permits a survival cause of action between Jones Act seamen and their employers.[1] (*See* ECF 544 at 7) (dismissing Plaintiff's survival cause of action because the Jones Act only "permits survival damages for pre-death pain and suffering and

---

[1] Plaintiff understands the Court's ruling, but to preserve the issue should she exercise her right to appeal it, she objects for the reasons stated on the record at the May 24, 2022, pretrial hearing ( ECF 546-3), and for the reasons stated in *Plaintiff's Opposition to John Crane Inc.'s Motion to Dismiss Plaintiff's Claim for Survival Damages Under Federal Rule of Civil Procedure 12(b)(6)* (ECF 494); *Plaintiff's Memorandum in Support of Motion for Leave to File a Fourth Amended Complaint to Conform to the Procedural Posture of this Case* (ECF 546) and this reply brief. Plaintiff maintains that this Court erred in applying the Supreme Court's analysis in *The Dutra Group v. Batterton,* 139 S.Ct. 2275 (2019) to dismiss Plaintiff's survival cause of action. Maritime law recognizes a survival cause of action which allows Plaintiff to recover damages for Plaintiff's decedent, Herbert H. Mullinex, Jr.'s, pre-death pain and suffering. This is so even if Plaintiff's decedent is a "nonseafarer" entitled to recover under Virginia's wrongful death statute, consistent with *Calhoun* because the "savings to suitors" clause permits Plaintiff to recover "in all cases all other remedies to which [she is] otherwise entitled." 28 U.S.C. § 1333; *see also Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 626 (1st Cir. 1994) ("The upshot [of the "savings to suitors" clause] is that an injured party may have claims arising from a single accident both under federal maritime law and under state law, whether legislation or common law" and "[s]tate remedies under the savings to suitors clause may be pursued in state court or, where there is a basis for federal jurisdiction, in federal court" even in a case directly implicating a core admiralty concern).

medical expenses in negligence claims by seamen against their employers")). Second, this Court adopted Magistrate Judge Miller's Report and Recommendation, written while Mr. Mullinex was alive, which held that Plaintiff could not recover pre-death loss of society or punitive damages in a general maritime personal injury cause of action brought while Mr. Mullinex was still alive, and thus before Plaintiff could (consistent with *Calhoun*) supplement her maritime damages with the damages available under Virginia's wrongful death statute. (*See* ECFs 351, 533; *see also* ECF 1-4, Pl. Amended Compl., at 19, 28 (seeking recovery for Mrs. Mullinex's "spousal pre-death loss of society and consortium" and punitive damages in a general maritime personal injury cause of action brought while Mr. Mullinex was alive)).

However, this Court has never held that Plaintiff cannot recover damages under Virginia's wrongful death statute. (*See* ECF 478 at ¶30). In fact, in its June 10, 2022, Memorandum Opinion, this Court explicitly held the opposite – that Plaintiff could recover damages under Virginia's wrongful death statute. (*See* ECF 544 at 9 (holding that "Plaintiff could have pursued a wrongful death claim against Defendant under Virginia law") (citing *Calhoun*, 516 U.S. at 201 (holding that state remedies have not been displaced by the recognized federal maritime wrongful-death action)). This ruling is consistent with this Court's prior rulings because Plaintiff's decedent, Mr. Mullinex is not a "seam[a]n covered by the Jones Act." *Calhoun*, 516 U.S. at 205, n.2. Instead, he is a "nonseafarer" entitled to recover wrongful death damages under Virginia's wrongful death statue. *Id.* Allowing Plaintiff to recover these damages will not conflict with any of this Court's prior orders, because none of this Court's prior orders have held that Plaintiff cannot recover damages under Virginia's wrongful death statute. Pursuant to *Calhoun*, Plaintiff is entitled to recover all of the damages available to her under Virginia's wrongful death statute in her wrongful death cause of action, including her loss of society and punitive damages. *See* VA. Code Ann. § 8.01-52. This conclusion flows directly

from this Court's prior Order holding that Plaintiff cannot recover damages under the Jones Act, because Mr. Mullinex is not suing his employer. (*See* ECF 544 at 7). JCI's argument is that the Jones Act only applies to limit Plaintiff's damages, even though the Jones Act, by its terms, only applies to suits between seamen and their employers. *See* 46 U.S.C. § 30104. This argument should be rejected because it flies in the face of this Court's ruling that the Jones Act cannot apply to suits like this one that are not between a seaman and his employer. (*See* ECF 544 at 7).

Further, this Court's prior ruling that maritime substantive law applies to this case (ECF 154) remains unchanged because, as the Third Circuit Court of Appeals held on remand in *Calhoun*, maritime substantive law still dictates JCI's liability to Plaintiff, although she may recover damages under Virginia's wrongful death statute. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d, 338, 351 (3d Cir. 2000) (holding that "federal maritime standards govern the adjudication of a defendant's (here, Yamaha's) putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute"). JCI's opposition brief completely ignores the Third Circuit's opinion, even though Plaintiff cited it directly in her motion. (*See* ECF 546 at 4-5).

Finally, granting Plaintiff's motion will not prejudice JCI for one simple reason: even if this Court were to deny Plaintiff's motion, Plaintiff's wrongful death cause of action would still remain viable and in her third amended complaint. (*See* ECF 478 at ¶ 30). Despite JCI's apparent misunderstanding of this fact, denying Plaintiff's motion will not dismiss Plaintiff's wrongful death cause of action.

Nevertheless, JCI makes two arguments in support of its alleged "prejudice" from Plaintiff's request to amend her complaint. The first is that requiring JCI to pay the normal costs associated with litigating a case will somehow "prejudice" it. Courts in similar circumstances have permitted plaintiffs leave to amend their complaint where the amendment is simply to

support "the same basic argument that they made in their" original complaint and the amendment "raises no new legal theories, does not seek to remedy repeated pleading deficiencies, and is not for an improper purpose." *See Wilkins*, 320 F.R.D. at 128; *see also Medigen of Kentucky, Inc. v. Public Service Comm'n of West Virginia*, 985 F.2d 164, 168 (4th Cir. 1993) (affirming district court's decision to allow plaintiffs to amend their complaint "days before the commencement of trial" because the amendment did "not change the substance of the case" and did "not require additional discovery"). JCI does not request any additional discovery in its opposition to Plaintiff's motion, and JCI never requested leave to conduct any additional discovery after Plaintiff alleged her wrongful death cause of action in her third amended complaint. There cannot be any prejudice to JCI by requiring it to defend against the wrongful death damages that Plaintiff specifically alleged in her third amended complaint.

JCI's second argument regarding prejudice requires three levels of speculation. First, Plaintiff must win a verdict against JCI. Second, Plaintiff must appeal this Court's Order dismissing Plaintiff's survival cause of action. Third, Plaintiff must win her appeal and then have a second trial on her survival damages. Plaintiff's right to appeal is not a basis for prejudice to JCI; consequently, this argument should be rejected. In sum, this Court should grant Plaintiff's motion because (1) Plaintiff has not acted in bad faith; (2) Plaintiff's amendment is not futile; and (3) there is no prejudice to JCI.

## **ARGUMENT**

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend pleadings] when just so requires." *Id.* Courts have consistently held that "[l]eave to amend should be freely given 'unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.""" *Wilkins*, 320 F.R.D. at 127 (quoting *Steinburg v. Chesterfield Cnty. Planning*

*Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits"). Indeed, it is well established that pleadings may even be amended during and after trial when doing so will aid in presenting the merits and the opposing party will not be prejudiced. Fed. R. Civ. P. 15(b).

### I. Plaintiff Has Not Acted in Bad Faith and She Has Never Abandoned Her Wrongful Death Cause of Action

JCI has failed to show that Plaintiff acted in bad faith. In general, "[b]ad faith includes seeking to amend a complaint for an improper purpose . . . or seeking leave to amend after repeated 'pleading failures.'" *Wilkins*, 320 F.R.D. at 127 (citing *Peamon v. Verizon Corp.*, 581 Fed. Appx. 291, 292 (4th Cir. 2014) (holding that is was bad faith to seek to amend a complaint in order to "artificially inflate . . . damages in order to obtain subject matter jurisdiction"); and *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (holding that the district court did not abuse its discretion in denying plaintiff leave to file a fourth amended complaint after repeated dismissals for failure to sufficiently plead his claim)).

*Wilkins* provides a useful illustration of why Plaintiff has not acted in bad faith here. *See* 320 F.R.D. at 128. In *Wilkins*, the Court granted the plaintiffs' motion to amend their complaint "in order to add additional facts supporting the same basic legal argument in their existing complaint." *Id.* The Court specifically noted that the plaintiffs were not acting in bad faith, and the defendants were not prejudiced, because the plaintiffs were simply "request[ing] leave to amend their complaint in order to add additional facts supporting the same basic legal argument in their existing complaint." *Id.* (emphasis added).

*Wilkins* is very similar to this case. Plaintiff specifically alleged a wrongful death cause of action in her third amended complaint. (*See* ECF 478 at ¶ 30). Plaintiff's third amended

complaint is the first complaint she filed that acknowledged Mr. Mullinex's death and specifically sought recovery for JCI's torts in connection with Mr. Mullinex's death. (*Id.* at ¶¶ 29-30 (alleging a survival cause of action and a wrongful death cause of action)). Plaintiff's third amended complaint alleged both a survival cause of action and wrongful death cause of action, but JCI only moved to dismiss Plaintiff's survival cause of action. (ECF 482 at 13). This Court granted JCI's motion to dismiss Plaintiff's survival cause of action on May 23, 2022, the day before trial, and five days after Plaintiff had submitted her jury instructions. (*See* ECF 538). Nevertheless, following this Court's Order granting JCI's motion to dismiss Plaintiff's survival cause of action, Plaintiff appeared in Court on May 24, 2022, ready to pursue damages in her wrongful death cause of action under Virginia's wrongful death statute. (ECF 546-3 at 4-5). JCI objected, and this Court, wanting more time to consider the issue and clarify what damages Plaintiff may recover and under what theory of recovery, continued the case. (*See* ECF 543).

Plaintiff filed her *Motion for Leave to File a Fourth Amended Complaint to Conform to the Procedural Posture of this Case* in order to provide further clarity to the wrongful death cause of action she already alleged in her third amended complaint. (ECF 545). To this end, Plaintiff's proposed fourth amended complaint now includes a direct citation to Virginia's wrongful death statute, and it repeats all of the damages she may recover under that statute, which she had already listed in her third amendment complaint. (*See* ECF 546-1 at ¶¶ 30-32). However, even if this Court were to deny Plaintiff's motion, Plaintiff's third amended complaint would still include a wrongful death cause of action alleging a right to recover Virginia's wrongful death damages under *Calhoun*. (*See* ECF 478 at ¶30). Indeed, this is what makes Plaintiff's case similar to *Wilkins* – Plaintiff is simply seeking leave to further clarify and support a cause of action that she has already alleged in her third amended complaint, and Plaintiff's amendment is simply to support "the same basic legal argument in [her] existing complaint."

*Wilkins*, 320 F.R.D. at 128.

JCI argues that this Court should find bad faith because Plaintiff has "abandoned" her right to recover damages under Virginia's wrongful death statute. (*See* ECF 549 at 4-10). Notably, this is the first time that JCI has asserted this argument. JCI never moved to dismiss Plaintiff's wrongful death cause of action. (*See* ECF 482 at 13). Further, JCI completely failed to raise this "abandonment" argument in its motion for summary judgment as well. (*See* ECF 547, 548). JCI's opposition to Plaintiff's motion to amend is not the proper forum to raise this argument because even if this Court were to deny Plaintiff's motion, she would still have a valid wrongful death cause of action in her third amended complaint under *Calhoun.* (*See* ECF 478 at ¶ 30). Also, should JCI attempt to argue "abandonment" in its reply to *Plaintiff's Opposition to JCI's Supplemental Motion for Summary Judgment* (ECF 550), this Court should disregard JCI's argument because "'[t]ypically, courts will not consider an argument raised for the first time in a reply brief.'" *Zinner v. Olenych*, 108 F.Supp.3d 369, 398 (E.D. Va. 2015) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 790 F.Supp.2d 435, 446 (E.D. Va. 2011); *see also A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 369 (4th Cir. 2008) ("'[i]t is a well settled rule that contentions not raised in the argument section of the *opening brief* are abandoned'") (emphasis in original) (quoting *United States v. Al-Hamdi*, 356 F.3d 564, 571 n. 8 (4th Cir. 2004)).

In any event, JCI does not cite to a single case where a court has held that the plaintiff "abandoned" a cause of action that the plaintiff had already alleged in her complaint. Instead, most of the cases JCI cites in its opposition brief involve situations where the plaintiff sought leave to amend her complaint to assert new causes of action and legal theories that the plaintiff had never asserted before. For example, in one case that JCI cites, *Bioiberica Nebraska, Inc. v. Numtramax Manufacturing, Inc.*, the plaintiff sought leave to amend its complaint a fourth time and allege "entirely new factual allegations" after having already amended its complaint three

different times to assert new legal theories over the course of two years. Civ. Case No. 1:18-cv-03133-SAG, 2021 WL 242494, at *1-*2 (D. Md. Jan. 25, 2021). Indeed, the plaintiff's multiple amendments resulted in substantial delay and led the Court to remark that "the case has now been pending for more than two years, and has only just reached the point of discovery." *Id.* The court denied the plaintiff's motion, noting the amended complaint "contain[ed] entirely new factual allegations", and that the plaintiff's "litigation strategy amounts to bad faith. This Court has afforded it multiple opportunities to amend its complaints to assert the new legal theories it propounded, only to have it abandon each theory and propose an entirely new one." *Id.* Plaintiff is not asserting anything new here. She is simply clarifying a wrongful death cause of action that she has already alleged.

The other cases that JCI cites follow a similar pattern – plaintiffs waiting too long to assert new causes of action and legal theories that they had not previously asserted in their complaint. *See Peters v. Bank of Am., N.A.*, Civ. Act. No. 3:14-cv-513, 2015 WL 269424, at *1-*2 (E.D. Va. Jan. 21 2015) (denying plaintiff's motion "for leave to file an amended complaint . . . and add three new class claims under the Fair Debt Collection Practices Act . . . the night before a scheduled settlement conference"); *Harrison v. Watts*, 609 F.Supp.2d 561, 571 (E.D. Va. 2009) (denying *pro se* plaintiff's motion to amend complaint which sought to completely contradict the allegations in his original complaint and "introduce a new theory at this [late] stage of the case"); *Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc.*, 853 F.2d 1139, 1148-49 (4th Cir. 1988) (affirming district court's decision to deny a plaintiff's motion to amend her complaint "to include a claim for injunctive relief" eight months after filing the complaint because plaintiff "seeks merely to add a request for an additional remedy that appellant was or should have been aware of from the outset"); *Kenny v. Bank of Am., N.A.*, Civ. Act. No. 4:11-cv-120, 2011 WL 13234444 at *1-*2 (E.D. Va. Dec. 22, 2011) (denying plaintiff's motion after

the plaintiff refused to file an opposition to the defendant's motion to dismiss because he believed the "Court did not have jurisdiction over his case" and where he "fail[ed] to provide his proposed amendments"); *Midgett, Tr. of Hardcastle Charitable Remained Annuity Tr. U/A Aug. 6, 2007 v. Hardcastle*, Civ. Act. No. 2:17-cv-663, 2018 WL 4781178, at *5 (E.D. Va. Oct. 3, 2018) (Jackson, J.) (rejecting a defendant's motion to file an amended answer with additional counterclaims that she "clearly knew about . . . when she filed her Answer" but "made a strategic decision" to file in state court).

JCI also cites two other cases in support of its assertion that Plaintiff "abandoned" the wrongful death cause of action she alleged in her third amended complaint, but both of these cases involved judicial estoppel – a doctrine that JCI never asserted in its *Motion to Dismiss Plaintiffs' Claim for Survival Damages Under Federal Rule of Civil Procedure 12(b)(6)* (ECFs 481, 482), its *Supplemental Motion for Summary Judgment* (ECFs 547, 548) or in its *Opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint.* (ECF 549). *See Foothill Cap. Corp. v. E. Coast Bldg. Supply Corp.*, 259 B.R. 840, 845 (E.D. Va. 2001); *Fellores v. Winter*, Civ. Act. No. 2:06-cv-551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007).

Finally, Plaintiff's proposed jury instructions do not support a finding of bad faith. At the time Plaintiff submitted her jury instructions – five days before this Court's Order dismissing Plaintiff's survival cause of action – Plaintiff had planned her case around pursuing survival damages in accordance with the Virginia Supreme Court's decision in *Hardick II*. (*See* 546-3 at 4-5). *Hardick II* does not permit Plaintiff to recover damages under both a wrongful death cause of action, using Virginia's wrongful death statute (consistent with *Calhoun*), and a survival cause of action. *See Hardick II*, 732 S.E.2d at 4 (allowing Plaintiff to recover survival damages but vacating the award of Virginia's wrongful death damages (i.e., the award for the widow's loss of society)). Under *Hardick II*, Plaintiff may only recover maritime survival damages. Up until this

Court's ruling, every Court to consider *Hardick II*, including several federal district courts, had held that *Hardick II* was correctly decided. *See Hardick II*, 732 S.E.2d at 4; *see also, e.g., Hays*, 2014 WL 10658453, at *4-*5. However, if *Hardick II* is wrongfully decided, as this Court has held, Plaintiff must be able to recover damages under Virginia's wrongful death statute, consistent with *Calhoun*. Plaintiff never abandoned her wrongful death cause of action. Instead, Plaintiff alleged a wrongful death cause of action in her third amended complaint, cited to *Calhoun*, and requested the damages available under Virginia's wrongful death statute. (*See* ECF 478 at ¶ 30).

In summary, Plaintiff has not acted in bad faith. Plaintiff is simply seeking leave to amend her complaint to further clarify the wrongful death cause of action she has already alleged. Further, when Plaintiff submitted her jury instructions requesting survival damages, before this Court issued its opinion dismissing her survival cause of action, she did so in good faith, relying on *Hardick II* and the several federal courts that had agreed with *Hardick II*. However, in light of this Court's ruling that *Hardick II* was wrongfully decided, and that Plaintiff can recover damages under *Calhoun*, Plaintiff is simply seeking leave to amend her complaint in a way that "support[s] the same basic legal argument in [her] existing complaint" – her wrongful death cause of action. *Wilkins*, 320 F.R.D. at 128. Indeed, even if this Court were to deny Plaintiff's motion, Plaintiff's wrongful death cause of action would remain in her third amended complaint.

**II. Plaintiff's Amendment is Not Futile**

Plaintiff's amendment is not futile because Plaintiff may recover damages under Virginia's wrongful death statute, consistent with *Calhoun*. (*See* ECF 544 at 9). "[A]n amendment is futile when it 'is clearly insufficient or frivolous on its face.'" *Wilkins*, 320 F.R.D. at 127 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Accordingly,

courts should only deny a motion to amend "if it is apparent that 'the proposed amendments could not withstand a motion to dismiss.'" *Wilkins*, 320 F.R.D. at 127 (quoting *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)); *see also Knauer v. Johns-Manville Corp.*, 638 F. Supp. 1369, 1372 (D. Md. 1986) (noting that Courts should only deny a motion to amend where "it appears to a certainty that a plaintiff is not entitled to relief" because the plaintiff has "fail[ed] to state a colorable claim"). JCI never moved to dismiss Plaintiff's wrongful death cause of action. (*See* ECF 482 at 13). Further, a motion to dismiss would fail because Plaintiff may recover Virginia's wrongful damages in her wrongful death cause of action consistent with *Calhoun.* (*See* ECF 544 at 9).

Nevertheless, JCI devotes this section of its opposition brief to blurring the lines between maritime law and state law and impermissibly expanding the applicability of this Court's prior orders to Plaintiff's wrongful death cause of action. Specifically, JCI argues that Plaintiff's amendment is futile for three reasons: (1) JCI contends this Court's prior rulings prohibit Plaintiff from recovering Virginia's wrongful death damages, even though none of these rulings pertained to Plaintiff's wrongful death cause of action; (2) JCI argues Plaintiff "cannot meet the high burden for reconsidering these rulings" even though this Court does not need to reconsider any of its prior rulings to allow Plaintiff to recover Virginia's wrongful death damages in her wrongful death cause of action; and (3) JCI blurs the lines between Virginia law and maritime law, ignoring the fact that JCI's liability to Plaintiff is still governed by substantive maritime law.

### A. This Court's Prior Rulings Do Not Concern Plaintiff's Wrongful Death Cause of Action, so the Court Does Not Need to Reconsider Them

This Court has issued two rulings concerning the damages Plaintiff may recover in this case, and neither of them concern the damages that Plaintiff may recover in her wrongful death

cause of action. First, this Court's order granting JCI's motion to dismiss struck Plaintiff's survival cause of action because it held that no survival cause of action exists under general maritime law. (*See* ECF 544 at 9) (holding that the only available survival cause of action that exists under maritime law is between Jones Act seamen and their employers)). Second, this Court adopted Magistrate Judge Miller's Report and Recommendation, which was issued while Mr. Mullinex was alive, and which held that Plaintiff could not recover for her pre-death loss of society or punitive damages in a general maritime personal injury cause of action brought while Mr. Mullinex was still alive, and thus before Plaintiff could pursue damages under Virginia's wrongful death statute, consistent with *Calhoun.* (*See* ECFs 351, 533; *see also* ECF 1-4, Pl. Amended Compl., at 19, 28 (seeking recovery for Mrs. Mullinex's "spousal pre-death loss of society and consortium" and punitive damages in a general maritime negligence cause of action brought while Mr. Mullinex was alive)). In short, neither of these two rulings concerned the damages that Plaintiff could recover in her wrongful death cause of action. These damages are recoverable under Virginia's wrongful death statute, consistent with *Calhoun*, for the reasons discussed below in Section II.B.

Further, this Court also does not need to reconsider its previous order that substantive maritime law governs this case. (ECF 154). As the Third Circuit held on remand in *Calhoun*, a case that JCI completely ignores and fails to contradict in its opposition brief, federal maritime law is still the substantive law of the case where a plaintiff seeks to recover for maritime torts under a state wrongful death statute. *See Calhoun*, 216 F.3d at 351 (holding that maritime uniformity principles require "that federal maritime standards govern the adjudication of a defendant's (here, Yamaha's) putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute")). In sum, this Court should reject JCI's first two arguments because (1) this Court's prior rulings do not impact the damages Plaintiff can recover in her

wrongful death cause of action, and (2) the Third Circuit's holding on remand in *Calhoun* that maritime law is still the substantive law of this case, which JCI ignores and does not contest, demonstrates that there is no need for this Court to reconsider its prior ruling that substantive maritime law governs this case.

**B. The Supreme Court Specifically Held in *Yamaha Motor Corp. U.S.A. v. Calhoun*, that Plaintiffs May Still Recover for Maritime Torts Under State Wrongful Death Statutes**

This Court should also reject JCI's third rationale for finding that Plaintiff's amendment is futile because the Supreme Court has specifically allowed for nonseafarers, like Mr. Mullinex, to recover damages under state wrongful death statutes in "maritime wrongful-death cases in which <u>no federal statute specifies the appropriate relief</u>. . . ." *Calhoun*, 516 U.S. at 202. The fact that Plaintiff's decedent, Mr. Mullinex, was a seaman is irrelevant. The true question under *Calhoun* is whether the Plaintiff's decedent could recover damages against JCI under the Jones Act. *Id.* at 205, n.2 (holding that nonseafarers, i.e., individuals who are not "seaman covered by the Jones Act" can recover damages under state wrongful death statutes for maritime torts).

The reason why Plaintiff can recover damages under Virginia's wrongful death statute is because her decedent, Mr. Mullinex, was not a "seam[a]n covered by the Jones Act." *Id.* Indeed, the Supreme Court in *Calhoun* specifically noted that "state remedies have been applied in accident cases of this order – maritime wrongful-death cases in which <u>no federal statute specifies the appropriate relief</u>. . ." *Id.* at 202. As this Court noted in its June 10, 2022, Memorandum Opinion, Plaintiff cannot recover against JCI under the Jones Act because "'[t]he beneficiary provisions of the Jones Act are applicable only to a specific class of actions – claims by seamen against their employers . . .'" (ECF 544 at 8-9) (quoting *Moragne v. State Marine Lines, Inc.*, 398 U.S. 375, 407 (1970)). Contrary to this Court's opinion, JCI argues that Plaintiff cannot recover under *Calhoun* because Plaintiff is a "seaman." *Calhoun* is clear. Plaintiff can recover

under a state wrongful death statute where "no federal statute specifies the appropriate relief" because allowing a Plaintiff to do so does not result in a conflict between federal law and state law. *Calhoun*, 516 U.S. at 202. This is why *Calhoun* went on to define "nonseafarers" as "persons who are neither seamen covered by the Jones Act . . . nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act ("LWHCA")." *Id.* at 205, n.2. To hold otherwise would lead to the completely illogical result whereby Plaintiff's damages are limited by the Jones Act even though Plaintiff could never sue JCI under the Jones Act because JCI is not Plaintiff's employer. Indeed, taking JCI's argument to its logical conclusion would mean that if Mr. Mullinex had passed away while riding a jet ski like the little girl in *Calhoun*, Plaintiff's damages would have to be governed by the Jones Act because Mr. Mullinex meets the technical definition of a "seaman," even though such a lawsuit does not involve Mr. Mullinex's employer, the United States Navy, at all.

This Court has already rejected JCI's argument that *Calhoun* does not allow Plaintiff to recover damages under Virginia's wrongful death statute for Mr. Mullinex, who was a seaman, but not a Jones Act seaman. Other Courts have likewise rejected JCI's argument. For example, in *Matter of Marquette Transp. Comp. Gulf-Inland, LLC*, the Court allowed the estate of a self-employed commercial fisherman to recover damages under Texas's wrongful death and survival statute. 182 F.Supp.3d 607, 608 (E.D. La. 2016). The Court explained its rationale as follows:

> [I]t is significant that in defining the term 'nonseafarer' as used in the question presented for certiorari, the Supreme Court expressly tied seafarer status to coverage under federal maritime statutes. Under the definition in the *Yamaha* footnote, it clear that Jones Act seaman [(i.e., seaman covered by the Jones Act)] and longshore workers covered by the LHWCA are seafarers, while individuals who are not covered by these maritime statutes are nonseafarers.

*Id.* at 612 (emphasis added). In so holding, the Court expressly rejected two cases that JCI cites in its brief, *Savoie v. Chevron Texaco*, No. Civ.A. 04-1302, 2005 WL 2036740, at *3 (E.D. La.

2016) and *Matter of Complaint of Goose Creek Trawlers, Inc.*, 972 F.Supp. 946, 949-50 (E.D.N.C. 1997).

Indeed, other Courts have also held that the Jones Act does not preclude recovery of non-pecuniary damages in cases where the seaman in not suing his employer. *See Petition of Cleveland Tankers, Inc.*, 843 F.Supp. 1157, 1158 (E.D. Mich 1994) (holding in a pre-*Calhoun* case that "family members of a deceased Jones Act seaman may recover non-pecuniary damages in a wrongful death cause of action under the general maritime law from a defendant who was not his employer"); *Sudgen v. Puget Sound Tug & Barge Co., a Div. of Crowley Maritime Corp.*, 796 F.Supp. 455, 457 (W.D. Wash. 1992) (holding in a pre-*Calhoun* case that the plaintiff could recover "non-pecuniary damages" against "a non-employer, under general maritime law"); *In re Consolidated Coal Co.*, 228 F.Supp.2d 764, 770-71 (N.D.W.Va. 2001) (holding in a cause of action brought while plaintiff was alive against both his employer and non-employer defendants that because the plaintiffs could not sue the non-employer defendants under the Jones Act and had to maintain their claim under general maritime law, state remedies were available to supplement general maritime law, and thus non-pecuniary damages were available) *Gehlken v. McAllister Towing & Transp. Co.*, C/A No. 2:03-3935-DCN, 2007 WL 2332487, at *12 (D. S.C. Jan. 29, 2007) (holding in case brought while plaintiff was alive that "[e]ven though Gehlken may be covered under the Jones Act for claims against his employer McAllister, the Jones Act does not cover his claims against defendant and non-pecuniary damages are available").

The Supreme Court has only expanded the Jones Act's bar on nonpecuniary damages to unseaworthiness causes of action, and it did so because unseaworthiness "serves as a duplicate and substitute for a Jones Act claim." *Batterton*, 139 S.Ct. at 2282-86 (noting that "[t]he two claims are so similar that, immediately after the Jones Act's passage, we held that plaintiff could not submit both to a jury"); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990) (noting

that "[i]t would be inconsistent with [the Court's] place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault [(unseaworthiness)] than Congress has allowed" under the Jones Act).

This is the fatal flaw with the *Sebright* and *Hays* cases that JCI cites. For instance, in *Sebright v. General Electric Co.*, 525 F.Supp.3d 217, 223 (D. Mass 2021), the Court glosses over the plaintiff's argument that the plaintiff "expressly does not seek remedies under the Jones Act." *Id.* at 251. Instead, the Court says it is bound by the First Circuit's decision in *Horsley v. Mobil Oil Corp.*, 15 F.3d 200 (1st Cir. 1994). However, *Horsley* expressly stated that the plaintiff was suing his employer "assert[ing] negligence and breach of contract claims <u>under the Jones Act</u>, and unseaworthiness and maintenance and cure claims under the general maritime law." *Horsley v. Mobil Oil Corp.*, 825 F.Supp. 424, 425 (D. Mass. 1993) (emphasis added), *aff'd* 15 F.3d 200 (1st Cir. 1994). Indeed, the issue on appeal in *Horsley* was whether the plaintiff could recover loss of society or punitive damages for nonfatal injury "in an unseaworthiness action under the general maritime law." *Horsley*, 15 F.3d at 200. In short, the *Sebright* Court was incorrect that *Horsley* bound the Court's decision because the plaintiffs in *Sebright* were not suing the decedent's employer, so the Jones Act could not operate to bar the plaintiff's damages. As for *Hays*, *Hays* relied on *Hardick II*, which this Court has held was wrongfully decided, to conclude that the plaintiff in that case could recover survival damages in a general maritime survival cause of action, an argument that this Court has specifically rejected. *See Hays*, 2014 WL 10658453, at *4.

Finally, JCI cites the case *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1058 (9th Cir. 1997). (*See* ECF 549 at 17). This case is also distinguishable because the *Ghotra* case involved plaintiffs alleging a claim for "negligence under section 905(b) of the" LHWCA against the defendants. *Id.* at 1053.The essential fact in *Ghotra* is that the plaintiff <u>was</u> "covered

by the" LHWCA – a statute that does not apply to Mr. Mullinex in this case. *Calhoun*, 516 U.S. at 205, n.2 The *Calhoun* case clearly held that neither seamen covered by the Jones Act nor workers covered by the LHWCA can recover damages under state wrongful death statutes. *Id.* Accordingly, the result in *Ghotra* simply mirrors the holding in *Calhoun.* Indeed, the Court specifically noted that *Calhoun*'s rationale is based on the fact that the decedent in *Calhoun* "was not covered by any comprehensive statutory scheme [(i.e., the Jones Act or the LHWCA)] and that the interests in uniformity guiding *Moragne* were not operative to her set of facts." *Ghotra*, 113 F.3d at 1058. The same is true of the decedent in this case. Neither Mr. Mullinex, nor his widow can recover against JCI under either the Jones Act or the LHWCA. Thus, Mr. Mullinex is a nonseafarer entitled to recover Virginia's wrongful death damages, consistent with *Calhoun.* 516 U.S. at 205, n.2.

Finally, contrary to JCI's contentions, allowing Plaintiff to recover under *Calhoun* will not result in a "conflict" between Virginia state law and federal maritime law. As the Third Circuit held on remand in *Calhoun,* maritime uniformity principles require that "federal maritime standards govern the adjudication of a defendant's (here, Yamaha's) putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute." *Calhoun*, 216 F.3d at 351. To date, no Circuit Court has disagreed, and JCI completely ignores the Third Circuit's opinion in its opposition brief. JCI does not cite to any cases that contradict it. Therefore, maritime law still governs JCI's liability to Plaintiff in this case, even though she seeks to recover damages under Virginia's wrongful death statute.

### III. Plaintiff's Amendment Will Not Prejudice JCI

Plaintiff's amendment cannot prejudice JCI for one simple reason: Plaintiff already alleged a wrongful death cause of action in her third amended complaint that specifically cited to *Calhoun.* (*See* ECF 478 at ¶30). Prejudice, in the context of a motion to amend, occurs "when a

proposed amended pleading 'raises new [a] new legal theory that would require the gathering and analysis of facts not already considered by the opposing party.'" *See Wilkins*, 320 F.R.D. at 127 (quoting *Johnson*, 785 F.2d at 509-10). This is not the case here. Plaintiff alleged a wrongful death cause of action in her third amended complaint, and JCI never moved to dismiss it.

JCI argues it will be prejudiced for two reasons. First, JCI argues that it will be forced to pay costs associated with litigating this case. This argument is specious. JCI will not experience any new or different costs associated with litigating this case than it would have already experienced had this case gone to trial in May. Second, JCI argues that should the Fourth Circuit reverse this Court's opinion regarding survival damages, that JCI would be forced to endure a second trial on damages. This argument should also be rejected. It is entirely speculative because there has been no verdict for Plaintiff, and it is unknown if an appeal will ever be filed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Court grant *Plaintiff's Motion for Leave to File a Fourth Amended Complaint to Conform to the Procedural Posture of this Case* (ECF 545) and for such other relief as this Court deems just and proper.

Respectfully Submitted,

By: /s/ Hugh B. McCormick, III, Esq.
        Of Counsel

Robert R. Hatten, Esq. (VSB # 12854)
Hugh B. McCormick, III, Esq. (VSB # 37513)
Daniel R. O. Long, Esq. (VSB # 95873)
PATTEN, WORNOM, HATTEN &
DIAMONSTEIN, L.C.
12350 Jefferson Avenue - Suite 300
Newport News, VA 23602
(757) 223-4500 Telephone
(757) 249-3242 Facsimile
pleadings@pwhd.com
hughmccormick@pwhd.com
Counsel for Plaintiff

Nathan D. Finch, Esq. (VSB #34290)
MOTLEY RICE LLP
401 9th Street, NW, Suite 630
Washington DC, 20004
Phone: (202) 232-5504
Fax: (202) 232-5513
Email: nfinch@motleyrice.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July, 2022, a true and accurate copy of the foregoing was filed electronically with the United States District Court for the Eastern District of Virginia using the CM/ECF system, which automatically sends all necessary notifications of this filing to the following:

Eric G. Reeves, Esq.
Laura May Hooe, Esq.
Mary Lou Roberts, Esq.
Lisa Moran McMurdo, Esq.
**MORAN, REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, VA 23219
Counsel for John Crane, Inc.

Brian James Schneider, Esq.
**SPOTTS FAIN, PC**
411 E. Franklin St., Suite 600
Richmond, VA 23219
Counsel for John Crane, Inc.

Christopher O. Massenburg, Esq. (admitted *pro hac vice*)
**MANNING GROSS & MASSENBURG, LLP**
365 Canal Street, Suite 3000
New Orleans, LA 70130
Counsel for John Crane, Inc.

By: ___/s/ Hugh B. McCormick, III, Esq.
Attorney for Plaintiff