**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| **PATRICIA E. MULLINEX,** | ) |
| **INDIVIDUALLY AND AS THE** | ) |
| **EXECUTOR OF THE ESTATE OF** | ) |
| **HERBERT H. MULLINEX, JR.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| **v.** | )   **Case No. 4:18-cv-00033-RAJ-DEM** |
| | ) |
| **JOHN CRANE INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**REPLY IN SUPPORT OF DEFENDANT JOHN CRANE INC.'S**
**<u>SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 4

   I.   THERE IS NO DISPUTE THAT PLAINTIFFS HAVE NO MARITIME
       DAMAGES. ........................................................................................................... 4

  II.  VIRGINIA DAMAGES ARE NOT AVAILABLE TO PLAINTIFFS IN THIS
       MARITIME CASE. ............................................................................................. 4

     A.  Plaintiffs abandoned any claim for Virginia damages. ................................. 5

     B.  This Court already excluded the damages to which Plaintiffs seek to pivot
         under Virginia law. ....................................................................................... 7

     C.  Virginia's wrongful death statute does not apply to these federal maritime
         claims. ......................................................................................................... 10

        1.  Virginia remedies cannot overwrite the limits on maritime remedies here. ......... 10

        2.  *Calhoun* does not authorize the application of Virginia remedies in this
            seaman's case. ....................................................................................... 11

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*,
    No. 1:18-cv-03133-SAG, 2021 WL 242494 (D. Md. Jan 25, 2021) ......................................12

*In re Cleveland Tankers, Inc.*,
    843 F. Supp. 1157 (E.D. Mich. 1994) .........................................................................................13

*Consolidation Coal Co. v. Consolidation Coal Co., Inc.*,
    228 F. Supp. 2d 764 (N.D. W.Va. 2001) ...............................................................................13

*Davis v. Bender Shipbuilding & Repair Co.*,
    27 F.3d 426 (9th Cir. 1994) ......................................................................................................13

*Dutra Group v. Batterton*,
    139 S. Ct. 2275 (2019) ...............................................................................................................9

*Gehlken v. McAllister Towing & Transp. Co.*,
    No. 2:03-cv-03935-DCN, 2007 WL 2332487 (D.S.C. Jan. 29, 2007) ...................................13

*In re Goose Creek Trawlers, Inc.*,
    972 F. Supp. 946 (E.D.N.C. 1997) ............................................................................................14

*Hays v. John Crane, Inc.*,
    No. 9:09-cv-81881, 2014 WL 10658453 (S.D. Fla. Oct. 10, 2014) .......................................14

*John Crane, Inc. v. Hardick*,
    722 S.E.2d 610 (Va. 2012),
    *modified on reh'g on other grounds*, 732 S.E.2d 1 (Va. 2012) ..............................................14

*In re Marquette Transp. Co. Gulf-Inland, LLC*,
    182 F. Supp. 3d 607 (E.D. La. 2016) ........................................................................................13

*McClain v. South Carolina Nat'l Bank*,
    105 F.3d 898 (4th Cir. 1997) .....................................................................................................4

*Miles v. Apex Marine Corp.*,
    498 U.S. 19 (1990) .....................................................................................................................9

*Moragne v. States Marine Lines, Inc.*,
    398 U.S. 375 (1970) ..........................................................................................................9, 10, 11

*Savoie v. Chevron Texaco*,
    No. 2:04-cv-01302, 2005 WL 2036740 (E.D. La. Jul. 22, 2005) ...........................................14

*Scarborough v. Clemco Indus.*,
    391 F.3d 660 (5th Cir. 2004) ................................................................................13

*Sebright v. General Electric Co.*,
    525 F. Supp. 3d 217 (D. Mass. 2021) ........................................................3, 10, 14

*Sugden v. Puget Sound Tug & Barge Co.*,
    796 F. Supp. 455 (W.D. Wash. 1992)....................................................................13

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996).......................................................................................... *passim*

**Statutes**

Va. Code § 8.01-38.1 ...................................................................................................5

Va. Code § 8.01-50 ......................................................................................................5

## <u>INTRODUCTION</u>

JCI moved for summary judgment because Plaintiffs admitted that "all of the available potential for any damages have now been stricken from our pleadings."  5/24 Tr. 8:4–5, ECF 546-3.  That admission was apt because Plaintiffs had strategically decided to pursue only maritime remedies, and to abandon Virginia damages.  But that decision backfired when this Court dismissed Plaintiffs' survival claim and associated damages (after previously excluding evidence of punitive and loss-of-society damages).  On the sole damages theory pursued here—that is, maritime damages—Plaintiffs thus do not contest that JCI is entitled to summary judgment.

At first, Plaintiffs responded to the failure of their strategy by requesting leave to amend their complaint to pursue a Virginia damages theory.  Pls.' Memo. in Support of Motion for Leave to File a Fourth Amended Complaint ("Motion for Leave") 12, ECF 546 (June 14, 2022); 5/24 Tr. 7:19–21 (Plaintiffs moved "to continue the case so that we may amend the complaint and proceed as a Virginia wrongful death claim.").  But as JCI's Opposition to Plaintiffs' Motion for Leave explained, that proposed amendment has fatal defects, including:

- Plaintiffs' Motion for Leave was in bad faith because it sought to undo Plaintiffs' strategic abandonment of any Virginia damages claim, *see* JCI's Opp. to Motion for Leave, Part I, ECF 549 (July 1, 2022);

- The Motion for Leave was futile because the abandoned Virginia remedies had already been excluded by the Court's existing damages orders, *id.*, Part II.A–B; and

1

- The Motion for Leave was also futile because even if not otherwise abandoned, Virginia remedies cannot supplement a general maritime law death action brought on behalf of a seaman like Mr. Mullinex, *see id.*, Part II.C.[1]

So now, in response to those fatal flaws in the Motion for Leave, Plaintiffs seek yet another port in a storm by claiming entitlement to switch theories—in hopes of surviving summary judgment—*whether or not* this Court grants permission for the Fourth Amended Complaint. Pls.' MSJ Opp. 5 n.3, ECF 550 (July 5, 2022). But even if Plaintiffs did not require leave to amend, many of the same defects in the Motion for Leave likewise doom Plaintiffs' attempt to pursue Virginia damages without leave. And Plaintiffs have no persuasive response to those defects, which are just as fatal in this summary judgment context. So for at least three reasons, summary judgment is proper despite Plaintiffs' eleventh-hour invocation of Virginia remedies.

*First*, Plaintiffs already strategically abandoned Virginia remedies. As the Court noted, Plaintiffs "were not approaching this case from the standpoint of it being a wrongful death action under Virginia law," but "were approaching this case in terms of it being a case under maritime law." 5/24 Tr. 5:24–6:2. And Plaintiffs admitted that they strategically pursued maritime damages (rather than Virginia damages) because of maritime law's perceived benefits for pain and suffering damages (not to mention the lack of a cap on punitives). Yet Plaintiffs claim they did not abandon Virginia damages because (they say) those damages were hiding all along in the Third Amended Complaint, and in any event their abandonment was strategically warranted by previous case law. But that Third Amended Complaint is silent on any Virginia damages claim, and Plaintiffs'

---

[1] JCI also explained that Plaintiffs' late amendment would prejudice JCI by duplicating its trial preparation burdens for a second trial and—if Plaintiffs succeed in their inevitable appellate argument demanding to have yet another jury address pain and suffering damages—for a third trial too. *See id.*, Part III.

perception of good strategic reasons for abandoning Virginia remedies does not make that abandonment any less binding.

*Second*, the Court already excluded the remedies Plaintiffs now seek under Virginia law. JCI successfully moved to exclude evidence of punitive damages and loss of consortium, and successfully moved to dismiss Plaintiffs' survival claim and its associated damages (including medical expenses). Plaintiffs would ignore those orders granting JCI's motions so they can pursue Virginia-based damages. But the dispositive text of those orders bars the damages Plaintiffs seek here.

*Third*, Plaintiffs' theory of damages is wrong on the merits because Virginia damages do not apply to what Plaintiffs call this "quintessential maritime product liability action." Pls.' Opp. to MTD Maritime Claims 29, ECF 130 (Feb. 6, 2020). Plaintiffs' Opposition still cites *not one case* allowing remedies under state law for a maritime claim brought on behalf of a seaman like Mr. Mullinex, when those same remedies have been found unavailable under maritime law. *See, e.g.*, *Sebright v. General Electric Co.*, 525 F. Supp. 3d 217, 250 (D. Mass. 2021) ("[S]tate law remedies are unavailable to spouses and dependents of injured seamen . . . *since the general maritime law does not permit them*."). Rather, Plaintiffs hang their hat on the implausible theory that Navy sailor Mr. Mullinex was a non-seaman like the twelve-year-old girl on a jet ski in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996). But common sense, Plaintiffs' repeated admissions, and well-reasoned precedent all confirm that Mr. Mullinex was a "seaman," and so Plaintiffs cannot invoke state remedies under *Calhoun*. Virginia's wrongful death statute thus does not apply here, and summary judgment should be entered for JCI.

## ARGUMENT

## I.   THERE IS NO DISPUTE THAT PLAINTIFFS HAVE NO MARITIME DAMAGES.

JCI is entitled to summary judgment because Plaintiffs have pursued damages under maritime law exclusively yet conceded on the record—and do not dispute now—that they have no damages under maritime law: "all of the damages that we sought under maritime law have now been stricken."  5/24 Tr. 7:16–17; *id.* at 5:8–10 (admitting that their maritime claim "no longer has any damages that we can pursue").  Indeed, Plaintiffs admitted that "*all* of the available potential *for any damages* have now been stricken from our pleadings." 5/24 Tr. 8:4–5 (emphases added). Because Plaintiffs thus cannot recover the "essential element" of damages, summary judgment is proper.  *McClain v. South Carolina Nat'l Bank*, 105 F.3d 898, 901 (4th Cir. 1997).

## II.   VIRGINIA DAMAGES ARE NOT AVAILABLE TO PLAINTIFFS IN THIS MARITIME CASE.

Rather than resist summary judgment based on maritime damages, Plaintiffs insist that they have a right to a jury on a *Virginia* damages theory they supposedly pled but chose not to pursue. But the Court has already explained that "[Plaintiffs] were not approaching this case from the standpoint of it being a wrongful death action under Virginia law, as we were approaching this case in terms of it being a case under maritime law." 5/24 Tr. 5:24–6:2.  Nor has the Court granted Plaintiffs' request for leave "to switch to a wrongful death action under Virginia law."  *Id.* at 6:6–7.  To the contrary, Plaintiffs would strip that prerogative from the Court by insisting that they may switch to Virginia damages at the eleventh hour *regardless* of the Court's permission.  Pls.' MSJ Opp. 5 n.3.

Plaintiffs are wrong.  With or without leave, Virginia's remedial scheme is unavailable here because: (i) Plaintiffs have abandoned any Virginia wrongful death claim; (ii) the Court's existing damages orders already exclude the damages Plaintiffs would seek under Virginia law;

and (iii) Virginia damages are unavailable here under maritime law because those Virginia damages conflict with maritime law.  So JCI is entitled to summary judgment.

### A.        Plaintiffs abandoned any claim for Virginia damages.

First, Virginia damages are unavailable here because Plaintiffs have abandoned them.  *See* JCI's Opp. to Motion for Leave, Part I.A.  As Plaintiffs admitted on the record, they had powerful strategic reasons for shunning Virginia damages.  And they did so—repeatedly—at the most natural moments to assert them.  For the first time, Plaintiffs try to excuse that abandonment, but end up confirming that they indeed abandoned Virginia damages.

Plaintiffs candidly explained why they strategically pursued wrongful death damages under maritime law rather than Virginia law.  Under "Virginia's wrongful death statute, pain and suffering is not a recoverable item," so they "preferred to ask for the pain and suffering in the maritime law [rather] than the Virginia damages."  5/24 Tr. 4:18–20, 5:1–3 (citing Va. Code § 8.01-50).  Plus, Virginia law statutorily caps punitive damages at $350,000.  *See* Va. Code § 8.01-38.1.

Plaintiffs thus strategically abandoned Virginia remedies by never invoking Virginia's wrongful death statute *once* in the six months following Mr. Mullinex's death.  *See* JCI's Opp. to Motion for Leave 5–8.  And Plaintiffs repeatedly confirmed that they were only pursuing maritime damages.  *See, e.g.*, Pls.' Memo. in Support of Motion to Substitute 3, ECF 452 (Jan. 13, 2022) ("Patricia E. Mullinex, the Executor of the Estate of Herbert H. Mullinex, Jr., is the proper party to pursue any maritime wrongful death cause of action."); *id.* ("Patricia E. Mullinex, Executor of the Estate of Herbert H. Mullinex, Jr., is the proper party to be substituted in this case for the maritime survival and wrongful death claims now owned by Herbert H. Mullinex, Jr.'s Estate."). Thus, it was apparent (at least to the Court and JCI) that Plaintiffs were pursuing wrongful death remedies only under maritime law.  *See* Opinion Granting JCI's MTD Survival Claim 2, ECF 544

(June 10, 2022) ("On March 24, 2022, however, Plaintiff filed a Third Amended Complaint ('TAC'), seeking recovery for the wrongful death of Herbert H. Mullinex, Jr. under general maritime law."); 5/24 Tr. 5:24–6:2 ("[Y]ou were not approaching this case from the standpoint of it being a wrongful death action under Virginia law, as we were approaching this case in terms of it being a case under maritime law.").[2]

Plaintiffs nevertheless insist that the Third Amended Complaint was a Trojan horse concealing a Virginia wrongful death claim within itself. *See* Pls.' MSJ Opp. 17–18. But the Third Amended Complaint merely cited *Calhoun* after asserting that Plaintiffs' alleged injuries "are compensable under *maritime* law." ECF 478 ¶ 30 (Mar. 24, 2022) (emphasis added). They did not invoke Virginia remedies in any meaningful way—and certainly not in a way that put the Court or JCI on notice of any Virginia claim. *See* 5/24 Tr. 6:3–7 ("Now, as I understand your request this morning, you want to -- you made an argument about it being concurrent here, something the Court hadn't heard before, and you also asked the Court for an opportunity to amend this morning to switch to a wrongful death action under Virginia law."). To the contrary, Plaintiffs' Motion for Leave to file that Third Amended Complaint referenced a claim for damages *only* "under Maritime Law," with no reference to Virginia damages. ECF 476, at 2 (Mar. 22, 2022). And far from altering Plaintiffs' previous representations that they were pursuing only maritime damages, *see,*

---

[2] Plaintiffs suggest that JCI waived this abandonment argument by raising it in opposition to Plaintiffs' Motion for Leave rather than in JCI's Motion for Summary Judgment. *See* Pls.' MSJ Opp. 17. Not so. JCI's understanding is the same as the Court's: that Plaintiffs had pleaded a wrongful death claim only "under general maritime law," Opinion Granting MTD Survival Claim 2, and "were not approaching this case from the standpoint of it being a wrongful death action under Virginia law." 5/24 Tr. 5:24–6:2. JCI thus took the view reflected in the Court's comments that Plaintiffs had "asked the Court for an opportunity to amend . . . to switch to a wrongful death action under Virginia law." *Id.* at 6:3–7. Unless the Court grants that opportunity to amend, the claim for Virginia damages is not before the Court, and there was no need for JCI to move for summary judgment on a claim not before the Court at the time of JCI's submission.

*e.g.*, Motion to Substitute 3, that Motion for Leave confirmed that Plaintiffs were merely "seeking leave to amend their complaint to conform to the evidence and procedural posture of this case." *Id.*

Although Plaintiffs assert the Third Amended Complaint includes a Virginia wrongful death claim, they argue in the same breath that they had good reason to abandon that Virginia claim. In their view, they could not pursue Virginia remedies because "[t]he *Hardick II* decision does not permit Plaintiff to recover damages under both the Virginia wrongful death statute and a maritime survival cause of action." Pls.' MSJ Opp. 17. That argument in fact concedes that they had abandoned any Virginia wrongful death claim. But it does not excuse that abandonment. Nothing prevented Plaintiffs from pursuing Virginia remedies in the alternative, especially when Plaintiffs knew their maritime damages claims were in jeopardy based on JCI's then-pending motions.

### B.  This Court already excluded the damages to which Plaintiffs seek to pivot under Virginia law.

Summary judgment is also appropriate because the damages Plaintiffs now seek under Virginia law have already been excluded. JCI moved to exclude Plaintiffs' claims for loss of society, punitive damages, and medical expenses, and the Court granted those motions. *See* JCI's Opp. To Motion for Leave, Part II.A. There is no basis for reconsidering the grant of those motions based on Virginia-law arguments Plaintiffs chose not to make before. *See id.*, Part II.B.

First, JCI's successful motion to exclude evidence for loss of society and punitive damages applies to Virginia wrongful death damages because that motion was not confined to a particular theory of damages. The magistrate judge correctly observed that JCI "moved to exclude Plaintiffs Herbert H. Mullinex, Jr., and Patricia E. Mullinex's evidence relating to their claims for loss of society and punitive damages." Report and Recommendation on JCI's Motion to Exclude 1, ECF

351 (Oct. 5, 2021).  The magistrate judge "RECOMMEND[ED] the court GRANT JCI's Motion in Limine to Exclude Evidence Relating to Plaintiffs' Claim for Loss of Society and Punitive Damages," *id.* at 7, and the Court adopted and affirmed that recommendation over Plaintiffs' objection. ECF 533 (May 20, 2022); *see also* Opinion Granting JCI's MTD Survival Claims 2 n.1 ("Plaintiff also requests punitive damages and other non-pecuniary damages.  Third Am. Compl. at 15–18. The Court need not address those damages here because this Court adopted and affirmed United States Magistrate Judge Douglas E. Miller's Report and Recommendation, which denied those damages.").

Plaintiffs, though, insist that the grant of JCI's motion to exclude was limited to *pre-death* evidence of loss of society and punitive damages.  Pls.' MSJ Opp. 4, 7–8, 14.  But there is no support in the recommendation or order for that gerrymandered interpretation, and Plaintiffs cite none.  And there was ample time to apprise this Court of any new arguments against the motion to exclude based on Mr. Mullinex's death.  *See* Suggestion of Death, ECF 436 (Nov. 17, 2021).  Yet Plaintiffs sat silent on that motion for six months after his passing, including the May 19, 2022 conference at which the Court affirmed the magistrate judge's recommendation.

Second, JCI's successful motion to dismiss survival damages likewise covers the pre-death medical expenses Plaintiffs would seek under Virginia law.  JCI requested "dismissal of Plaintiff's claims for both Mr. Mullinex's pain-and-suffering damages as well Plaintiff's claim for Mr. Mullinex's pre-death medical expenses."  JCI's Memo. in Support of MTD Survival Claim 2, ECF 482 (Apr. 6, 2022).  The Court granted that motion, "find[ing] that Plaintiff is not entitled to recover Mr. Mullinex's pre-death pain and suffering or medical expenses."  Opinion Granting JCI's MTD Survival Claim 1; *see also id.* at 10 ("Plaintiff[s] [are] only entitled to the pecuniary damages resulting from Mr. Mullinex's death.").

Plaintiffs again argue that JCI's motion was too narrow to reach a claim for medical expenses under Virginia law. Pls.' MSJ Opp. 8. Again, Plaintiffs are wrong. Plaintiffs ignore the scope of JCI's motion to dismiss and the Court's express findings that cover their claim for medical expenses (without limitation to any particular legal theory). If Plaintiffs believed (as they now insist) they had a viable alternative theory to pursue medical expenses, *see, e.g.*, Pls.' MSJ Opp. 13, the burden was on them to explain why that theory required the Court to deny JCI's motion. Instead, Plaintiffs chose not to even try to meet that burden.[3]

Plaintiffs also insist that JCI needed to move to dismiss their wrongful death cause of action to exclude medical expenses. *See, e.g.*, Pls.' MSJ Opp. 1, 2 n.1, 4–5 & n.3, 8, 10, 12. But unlike their survival claim, the general maritime wrongful death action under which Plaintiffs claimed pecuniary damages is supported by Supreme Court precedent. *See* Third Amended Complaint ¶ 30; *see also Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). Plaintiffs did not disclose that they lacked any pecuniary damages until the morning of trial. 5/24 Tr. 5:8–10 ("[T]he maritime claim under the ruling that you made yesterday no longer has any damages that we can pursue."). Thus, there was no basis throughout this case to seek dismissal of the wrongful death cause of action. And since JCI successfully obtained the exclusion of evidence relating to loss of society and punitive damages before Mr. Mullinex's passing, there was no reason—and Plaintiffs point to none—to relitigate those issues after Mr. Mullinex's death.[4]

---

[3] Of course, Plaintiffs have not moved for reconsideration of those damages orders, nor would there be any basis for that motion at this late hour. *See* JCI's Opp. to Motion for Leave, Part II.B.

[4] These already-excluded damages were not somehow resuscitated when the case was converted from a personal injury to a wrongful death case, since the Supreme Court has already held that neither loss of society, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 29–30 (1990), nor punitive damages, *Dutra Group v. Batterton*, 139 S. Ct. 2275, 2287 (2019), are available remedies in general maritime law wrongful death cases.

As to medical expenses, once again additional motions practice was unnecessary because—as the Court correctly held—JCI's motion to exclude survival damages covered medical expenses. And again, there was no reason to think Plaintiffs were pursuing any Virginia damages because, as the Court observed, Plaintiffs "were not approaching this case from the standpoint of it being a wrongful death action under Virginia law." *Id.* at 5:24–25. So the Court's existing damages orders confirm that summary judgment is due even under Plaintiffs' new Virginia damages theory.

> **C.** **Virginia's wrongful death statute does not apply to these federal maritime claims.**

In any event, summary judgment is proper because Virginia remedies are unavailable on the merits here. Federal maritime remedies—not conflicting Virginia remedies—apply to these federal maritime claims. *See* JCI's Opp. to Motion for Leave, Part II.C.1. Plaintiffs try to circumvent that rule based on misinterpretations of *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), and this Court's Opinion on survival damages. But neither opinion supports applying Virginia's wrongful death statute here. *See* JCI's Opp. to Motion for Leave, Part II.C.2.

> **1.** **Virginia remedies cannot overwrite the limits on maritime remedies here.**

The constitutional structure of federal maritime law makes that uniform law—rather than state law—the "appropriate source of a remedy for violation of the federally imposed duties of maritime law." *Moragne*, 398 U.S. at 401 n.15. Thus, courts have consistently refused to graft conflicting state-law remedies onto federal maritime claims brought on behalf of self-described seamen like Mr. Mullinex. *See, e.g.*, *Sebright*, 525 F. Supp. 3d at 223 (refusing to allow state-law loss-of-consortium damages "since the general maritime law does not permit them"). And Plaintiffs offer not one case transplanting conflicting state-law remedies onto a federal maritime claim.

That transplant would be especially inappropriate here because the substantive differences between federal maritime and Virginia law make the latter ill-suited to enforce federal maritime duties.  Plaintiffs illustrate that mismatch, asserting that "should a jury find JCI negligent or strictly liable at trial, Plaintiff may recover damages under Virginia's wrongful death statute," Pls.' MSJ Opp. 12, even though Virginia rejects both strict liability torts and Plaintiffs' proposed "should have known" standard of care for maritime negligence.  *See* JCI's Opp. to Motion for Leave 16–17.  The Supreme Court has rejected that "incongruity of forcing the States to provide the sole remedy to effectuate duties that have no basis in state policy."  *Moragne*, 398 U.S. at 402 n.15.

### 2. *Calhoun* does not authorize the application of Virginia remedies in this seaman's case.

Plaintiffs' primary response is to insist that this Court has already "specifically held that Plaintiff could recover damages under Virginia's wrongful death statute, pursuant to the Supreme Court's decision in *Calhoun*."  Pls.' MSJ Opp. 2; *see also id.* at 3–4, 7–8, 10, 12–14, 16–18, 20–21, 23.  This Court made no such holding.  Indeed, the parties had not even briefed that issue because Plaintiffs dodged the application of state law throughout this case.  Nor had the Court addressed the new (and self-contradicting) argument on which Plaintiffs must prevail:  that Mr. Mullinex is a *non*-seaman like the girl riding a jet ski in *Calhoun*.  *See* Pls.' MSJ Opp. 20–21.  Thus, the single sentence that Plaintiffs rely on was not a substantive holding but merely a procedural observation:  "Plaintiff[s] *could have* pursued a wrongful death claim against Defendant under Virginia law"—but chose not to.  Opinion Granting JCI's MTD Survival Claim 9–10 (emphasis added).  That Plaintiffs *could have pursued* a Virginia wrongful death claim does not suggest that Plaintiffs *would have recovered* on that claim.

In any event, Plaintiffs misinterpret *Calhoun*, which confirms that Virginia remedies are unavailable here.  Indeed, *Calhoun* excludes resort to state remedies on behalf of a self-described

"seaman" like Mr. Mullinex.  As the Supreme Court explained, "[t]raditionally, state remedies have been applied in accident cases of this order—maritime wrongful-death cases in which no federal statute specifies the appropriate relief *and the decedent was not a seaman*, longshore worker, or person otherwise engaged in a maritime trade."  516 U.S. at 202 (emphasis added).  The Court thus "h[e]ld . . . that state remedies remain applicable *in such cases*."  *Id.* (emphasis added). The twelve-year-old vacationer in a jet ski accident fit that bill in *Calhoun* itself.  *Id.* at 201–02. But state remedies are *not* applicable in *this* case precisely because Mr. Mullinex was a "seaman" (by Plaintiffs' own admission), or at a minimum a "person otherwise engaged in a maritime trade." *Id.* at 202.

Plaintiffs thus recognize that pursuing Virginia damages under *Calhoun* requires the untenable conclusion that a Navy sailor is not a seaman or otherwise engaged in a maritime trade. Pls.' MSJ Opp. 22.  But Plaintiffs themselves have consistently described Mr. Mullinex as a seaman throughout this litigation.  *See, e.g.*, Pls.' Opp. to JCI's MTD Survival Claim 7, ECF 494 (Apr. 20, 2022) ("Mr. Mullinex was a 'seaman' under the circumstances of this case.").[5]  And this Court's June 10 Opinion continued to recognize that Mr. Mullinex was a seaman.[6]

---

[5] *See also, e.g.*, Pls.' Opp. to MTD Maritime Claims 3 ("This case is a product liability case *by a Navy seaman* who was exposed to asbestos as a machinist mate for nearly ten years on three commissioned Navy ships while they were underway and undergoing repairs and overhauls in port."); Pls.' Opp. to JCI's Motion to Exclude Evidence of Loss of Society and Punitive Damages 18, ECF 263 (Sept. 2, 2021) ("*Mr. Mullinex is a 'seaman.'*") (emphases added).  Plaintiffs' reversal on whether Mr. Mullinex is a "seaman" is yet another bad-faith instance of "treat[ing] his complaint like the game of Battleship, moving the target across the board every time it suffers a fatal blow."  *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, No. 1:18-cv-03133-SAG, 2021 WL 242494, at *2 (D. Md. Jan 25, 2021).

[6] *See, e.g.*, Opinion Granting MTD Survival Claim 6 ("Plaintiff argues that the applicable parallel statutory scheme here is the Jones Act because Plaintiff is a 'seaman.'" (quoting Pl.'s Opp. at 19)); *id.* ("Both statutory schemes are relevant to Plaintiff's claim because she alleges that Mr. Mullinex was a seaman who died due to the negligence of a third-party manufacturer."); *id.* at 7 ("Parallel

Instead, Plaintiffs seize on a *Calhoun* footnote in an effort to define "nonseafarers" subject to *Calhoun*'s holding as any "seamen [not] covered by the Jones Act." Pls.' MSJ Opp. 18–19 (quoting 516 U.S. at 205 n.2). Under Plaintiffs' absurd reading, even Navy sailors like Mr. Mullinex—whose "work, from start to finish, was performed on ships on navigable waters," Pls.' Opp. to MTD Maritime Claims 3—are "*nonseafarers*" unless they "are actually suing their employers under the Jones Act." Pls.' MSJ Opp. 19 (emphasis added). Yet Plaintiffs' Opposition cites no support for this contention because courts (including two on whose opinions Plaintiffs rely) have routinely rejected that misreading of *Calhoun*.[7]

As those courts all recognized, Mr. Mullinex does not stop being a seaman just because Plaintiffs are not suing his employer *in this case*. Rather, "the Supreme Court's use of the word

---

statutory schemes do not *require* survival damages for wrongful death claims by seaman against non-employers like Defendant."); *id.* at 8–9 ("[T]his Court cannot confidently import Congress' approach in the employment context to wrongful death claims against non-employer defendants, even if the plaintiff is a 'seaman.'").

[7] Plaintiffs cited such cases for the first time in the Reply to their Motion for Leave. ECF 551, at 16–17 (Jul. 11, 2022). But their reliance on those cases is misplaced. First, Plaintiffs' new argument is that *Mr. Mullinex's status* determines their access to state-law remedies. But their cases incorrectly turn on *the defendant's status* as a non-employer. *Sugden v. Puget Sound Tug & Barge Co.*, 796 F. Supp. 455 (W.D. Wash. 1992); *In re Cleveland Tankers, Inc.*, 843 F. Supp. 1157, 1160 (E.D. Mich. 1994) (following *Sugden*); *Consolidation Coal Co. v. Consolidation Coal Co., Inc.*, 228 F. Supp. 2d 764, 771 (N.D. W.Va. 2001) (following *Cleveland Tankers*); *Gehlken v. McAllister Towing & Transp. Co.*, No. 2:03-cv-03935-DCN, 2007 WL 2332487 (D.S.C. Jan. 29, 2007) (following *Consolidation Coal*). This Court already rejected that employer/non-employer distinction in granting JCI's Motion to Dismiss the Survival Claims, ECF 544. Two years after *Sugden*, so did the Ninth Circuit. *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 430 (9th Cir. 1994). Plaintiffs' remaining cases rely on district court decisions within the Fifth Circuit that were overruled when that court followed *Bender* and rejected the employer/non-employer distinction Plaintiffs invoke here. *See Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 n.5 (5th Cir. 2004).

The only opinion cited by Plaintiffs that makes the *Calhoun* point they advance is *In re Marquette Transp. Co. Gulf-Inland, LLC*, 182 F. Supp. 3d 607 (E.D. La. 2016). As detailed more fully below, Plaintiffs' own case law reflects *Marquette Transport's* mistaken reading of *Calhoun*. Indeed, *Marquette Transport* has been cited by no court anywhere in the country.

'covered' in footnote 2" means "a person who *would* qualify as a seaman under the Jones Act . . .

*if* the individual was suing his employer," *Hays v. John Crane, Inc.*, No. 9:09-cv-81881, 2014 WL

10658453, at *3 (S.D. Fla. Oct. 10, 2014) (emphasis added) (relied on by Plaintiffs but rejecting

their reading of footnote 2 because it "negates a significant portion of the Court's holding" in

*Calhoun*).  Thus, footnote 2 "was not intended to exclude persons who would qualify to bring suit

under those acts, but were suing persons other than their employer."  *Id.*  Rather, those courts

explain that the holding of *Calhoun* is found in the first two paragraphs of the opinion: that state

remedies only apply in that "narrow" class of cases in which "the decedent was not a seaman,

longshore worker, or person otherwise engaged in a maritime trade."  *Id.*; *John Crane, Inc. v.

Hardick*, 722 S.E.2d 610, 616 (Va. 2012) (*Hardick I*) (relied on by Plaintiffs yet rejecting their

misreading of footnote 2 and observing that a seaman's "status is hardly comparable to that of a

12-year-old girl riding a jet ski" as in *Calhoun*), *modified on reh'g on other grounds*, 732 S.E.2d

1 (Va. 2012) (*Hardick II*)[8]; *see also Sebright*, 525 F. Supp. 3d at 251 ("[B]ecause Sebright

allegedly incurred his injuries while conducting operations and maintenance on a vessel, . . .

Sebright cannot, therefore, be considered a 'nonseafarer,' and *Calhoun* is distinguishable from the

present case" involving a Navy sailor's claim against a third-party manufacturer); *Savoie v.

Chevron Texaco*, No. 2:04-cv-01302, 2005 WL 2036740, at *3 (E.D. La. Jul. 22, 2005) (rejecting

Plaintiffs' misreading of *Calhoun*); *In re Goose Creek Trawlers, Inc.*, 972 F. Supp. 946, 950

---

[8] Seeking to make lemonade out this Court's rejection of the holding in *Hardick II*, Opinion
Granting JCI's MTD Survival Claim 5 n.3, Plaintiffs misstate the *Hardick* cases.  Plaintiffs now
assert that because: (i) the ruling in *Hardick I* "prohibit[s] Plaintiff[s] from recovering Virginia's
wrongful death damages under *Calhoun*," Pls.' MSJ Opp. 18; and (ii) this Court "held the opposite
of what the Virginia Supreme Court held" in that decision, *id.* at 20, they should now be allowed
to pursue Virginia damages.  *Id.*  But neither *Hardick* decision addressed the availability of
Virginia's wrongful death statute (which the same plaintiff's counsel chose not to invoke).
*Hardick I*, 722 S.E.2d at 617.  So rejecting the *maritime* holding of *Hardick II* has nothing to do
with a *Virginia* holding that *Hardick I* never reached and this Court had no reason to address.

(E.D.N.C. 1997) (same).  So because Mr. Mullinex was a self-admitted seaman (not to mention engaged in a maritime trade), the maritime principles of uniformity in *Moragne*—and which run from *Miles* all the way to *Batterton*—control here.

## <u>CONCLUSION</u>

For these reasons, the Court should enter summary judgment for JCI.  And for the reasons in JCI's Opposition to Plaintiffs' Motion for Leave, the Court should deny Plaintiffs' request to file a Fourth Amended Complaint.  That will allow a single appeal to resolve all properly preserved damages issues, and avoid burdening the Court and multiple juries with multiple trials when Plaintiffs inevitably seek another trial for pain and suffering damages that have already been excluded.

Dated: July 15, 2022

**Respectfully submitted,**
**JOHN CRANE INC.**
**Defendant**

By:  /s/ Eric G. Reeves
                Counsel

Eric G. Reeves (VSB # 38149)
Laura May Hooe (VSB # 84170)
Mary Louise Roberts (VSB # 34305)
Lisa Moran McMurdo (VSB # 44371)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
ereeves@moranreevesconn.com
lmayhooe@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com

Brian J. Schneider (VSB #45841)
SPOTTS FAIN PC
411 E. Franklin Street
Suite 600
Richmond, Virginia 23219
Telephone: (804) 921-1306
bschneider@spottsfain.com

Christopher O. Massenburg, Esq (admitted *pro hac vice*)
MANNING GROSS & MASSENBURG, LLP
14 Wall Street, 28th Floor
New York, New York 10005

Telephone: (504) 799-0504
Facsimile: (504) 535-2886
cmassenburg@mgmlaw.com

***Counsel for John Crane Inc.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 15th day of July, 2022, a true and accurate copy of the foregoing was filed electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ Eric G. Reeves
Eric G. Reeves (VSB # 38149)
Laura May Hooe (VSB # 84170)
Mary Louise Roberts (VSB # 34305)
Lisa Moran McMurdo (VSB # 44371)
MORAN REEVES & CONN PC
1211 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
ereeves@moranreevesconn.com
lmayhooe@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com